IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | |
|---|---|
| KOCH FOODS OF ALABAMA, LLC, ) <br> an Alabama limited liability company, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> GENERAL ELECTRIC CAPITAL ) <br> CORPORATION, a Delaware corporation, ) <br> Defendant. ) | Case No. 2:07cv522-MHT |

**MOTION TO RECONSIDER
REGARDING THIS COURT'S PROTECTIVE ORDER, AND TO
<u>REOPEN DISCOVERY TO TAKE THE DEPOSITION OF MICHAEL LEONARD</u>**

Koch Foods of Alabama, LLC ("Koch"), by and through its counsel, hereby brings this motion to reconsider, this Court's protective order of December 6, 2007 regarding the deposition of Michael Leonard, and to reopen discovery to take the deposition of Mr. Leonard. In support of its motion, Koch states as follows:

1. On November 30, 2007, Koch Foods issued a deposition subpoena to Michael Leonard, President of MTL Services, Inc. Koch Foods had learned that Mr. Leonard, although not disclosed by GECC as a person with knowledge, had information regarding equipment that was and is the subject of this lawsuit.

2. On November 27, 2007, Koch's counsel, while in Atlanta, Georgia deposing two of GECC's witnesses, received GECC's deposition notice of Mr. Leonard for a deposition scheduled on November 30, 2007 in Atlanta, Georgia. Then, on November 28, while still in Atlanta, Koch's counsel received an e-mail from Ann Pille, counsel for GECC, cancelling Mr. Leonard's deposition. Not having yet seen GECC's deposition notice of Mr. Leonard, Koch's counsel was not aware that Mr. Leonard's deposition had been scheduled by GECC or the purpose of his deposition, so counsel did not respond to the e-mail cancelling the deposition.

3. Upon returning to Chicago on November 30, 2007, and for the first time seeing GECC's notice of Mr. Leonard's deposition, Koch called Mr. Leonard to determine the information he had regarding GECC and immediately issued a subpoena for Mr. Leonard's deposition for December 4, 2007, the last day set for discovery in this case. Koch notified GECC of the deposition the next business day.

4. On December 4, 2007, General Electric Capital Corporation ("GECC") filed Objection to Plaintiff's Deposition Notice of Michael Leonard and Emergency Motion for Protective Order (Docket No. 41). (the "Motion").

5. In its Motion, GECC asserted that it attempted to serve Mr. Leonard with a deposition subpoena on or about November 20, 2007, in order to take Leonard's deposition on November 30, 2007, in Atlanta, Georgia. (Motion, ¶ 3).

6. GECC went on to claim in its Motion that:

> On November 26, 2007, GE learned that Leonard no longer lived at the address it had for Leonard, and, as a result thereof, GE was unable to serve Leonard with his deposition subpoena. Accordingly, GE cancelled Leonard's deposition because it could not timely serve Leonard with his deposition subpoena before the November 30, 2007, deposition date.

(Motion, ¶ 4).

7. This Court held an emergency hearing on GECC's Motion on December 6, 2007, after which this Court entered its order granting the Motion and denying Koch the right to depose Michael Leonard (Docket No. 43). (the "Order").

8. After this Court entered its Order, counsel for Koch called Mr. Leonard to notify him that his deposition would not occur on December 7, informing him that GECC had represented to the Court in its Motion that GECC had learned on November 26, 2007 that it did not have Mr. Leonard's correct address and had therefore cancelled his previously scheduled GECC deposition.

9. Mr. Leonard responded to this information with shock, stating that Ms. Pille had called him for the first time *on November 27, 2007* (one day *after* GECC represented in its Motion that it had determined that it did not have Mr. Leonard's address and was cancelling his deposition). (See Affidavit of Michael Leonard, attached as Ex. A, ¶ 6.)

10. When Ms. Pille called Mr. Leonard, she discussed with him the value of the Spiral Freezer, one of the pieces of equipment that is the subject of this lawsuit. Mr. Leonard informed Ms. Pille that he was aware of an appraisal of the Spiral Freezer by Robert Breakstone (GECC's retained expert), and he informed Ms. Pille that GECC's expert had excessively overstated the Spiral Freezer's value at $280,000. (Ex. A, ¶ 7.)

11. Mr. Leonard also recounted to Ms. Pille an agreement he had reached with GECC to purchase the Spiral Freezer for $50,000, its true value. (Ex. A, ¶ 6.)

12. Upon learning of this information that was detrimental to GECC's case, Ms. Pille did not inform Mr. Leonard of the deposition subpoena (or deposition notice) that GECC had already issued for Mr. Leonard's November 30 deposition (just three days away), but simply stated that GECC "may consider deposing" Mr. Leonard. (Ex. A, ¶ 8.)

13. Remarkably, despite GECC's representation to this Court that it cancelled its subpoena and deposition of Mr. Leonard because it did not have Mr. Leonard's address as of

November 26, Ms. Pille did not ask Mr. Leonard for his address. In fact, Ms. Pille never called Mr. Leonard back again regarding the deposition GECC had issued a subpoena for. (Ex. A, ¶ 9.)

14. In its Motion to prevent Mr. Leonard's deposition, GECC did not reveal to this Court (or to Koch) that Ms. Pille had contacted Mr. Leonard on November 27, that she had not disclosed to Mr. Leonard that he had already been subpoenaed by GECC, that Mr. Leonard disclosed information detrimental to GECC, or that Ms. Pille had not even attempted to get Mr. Leonard's address, although she spoke to him on the phone and Mr. Leonard gave her all the information she requested.

15. It is clear from GECC's failure to disclose the whole truth to this Court and to Koch regarding Mr. Leonard, that GECC is attempting to buy a witness whose testimony is detrimental to GECC. If GECC had truly not had Mr. Leonard's address, as it has represented, GECC would have asked Mr. Leonard for his address. Obviously, upon learning of Mr. Leonard's damaging testimony, GECC and its counsel decided to do what it could to block Mr. Leonard's testimony.

16. The Federal Rules of Civil Procedure are designed to promote the search for the truth, not the concealment of relevant evidence. Shoen v. Shoen, 5 F.3d 1289, 1292 (9th Cir. 1991) ("this broad right of discovery is based on the general principle that litigants have a right to 'every man's evidence' [citation omitted], and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for truth"); Malautea v. Suzuki Motor Corp., 987 F.2d 1536, 1546 (11th Cir. 1993) ("the discovery rules in particular were intended to promote the search for truth that is the heart of our judicial system").

17. Fairness and the search for truth would be fostered by this Court reconsidering and vacating its Order quashing the deposition subpoena of Mr. Leonard that was issued by Koch.

18. There would be no harm or unfairness to GECC if Mr. Leonard's deposition is allowed to proceed, especially because Koch expects the deposition to take less than an hour, and will take the deposition by telephone. Fact discovery just ended on December 4, 2006, and Koch has sought no previous extensions of the discovery cutoff date.

**WHEREFORE**, Koch respectfully requests that this court enter an order:

    a. Reconsidering its Order preventing the deposition of Michael Leonard;

    b. Extending discovery to allow the deposition of Mr. Leonard to proceed on a date mutually convenient to the witness and counsel for the parties; and

    c. Granting such other relief as is just and proper.

**Dated: December 11, 2007**                    KOCH FOODS OF ALABAMA, LLC

                                                                             By: \_Zhiyuan Xu_____
                                                                                 One of Its Attorneys

Eugene J. Geekie, Jr. (ARDC # 6195060)
Zhiyuan "Mike" Xu (ARDC # 6292094)
**SCHIFF HARDIN LLP**
6600 Sears Tower
Chicago, Illinois 60606-6473
(312) 258-5500 (phone)
(312) 258-5700 (fax)

-and-

Thomas G. Mancuso
Haskell Slaughter Young & Gallion, LLC
305 South Lawrence Street
Montgomery, Alabama 36104
Telephone: 334-265-8573
Facsimile: 334-264-7945
Email: tgm@hsy.com
**Counsel for Koch Foods of Alabama, LLC**

CERTIFCATE OF SERVICE

The undersigned, an attorney, certifies that copies of the forgoing were caused to be served upon counsel of record addressed as follows by email and the ECF system on this 11th day December, 2007.

>Alexander Terras
>Timothy Scott Harris
>Reed Smith Sachnoff & Weaver
>10 South Wacker Drive
>Chicago, IL 60606
>312-207-1000
>Fax: 312-207-6400
>tharris@reedsmith.com
>aterras@reedsmith.com
>
>Rusha Christina Smith
>Bradley Arant Rose & White LLP
>One Federal Place
>1819 Fifth Avenue North
>Birmingham, AL 35203-2104
>205-521-8010
>Fax: 205-488-6010
>Email: rsmith@bradleyarant.com

    /s/ Zhiyuan Xu
    Zhiyuan Xu

CH2\2217951.2

# Exhibit A

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | |
|---|---|
| KOCH FOODS OF ALABAMA, LLC, an Alabama limited liability company, ) ) ) Plaintiff, ) ) v. ) GENERAL ELECTRIC CAPITAL ) CORPORATION, a Delaware corporation, ) Defendant. ) | Case No. 2:07cv522-MHT |

## AFFIDAVIT OF MICHAEL LEONARD

Michael Leonard, being duly sworn, do hereby state that if called as a witness, I would testify as follows:

1. I am President of MTL Services, Inc., which is in the business of buying and selling food freezing equipment, including poultry processing equipment. I have 15 years experience in the food freezing equipment business.

2. In May 2007, I entered into an agreement with General Electric Capital Corporation ("GE") to purchase for $50,000.00 a spiral freezer located at the former Sylvest Farms facility in Montgomery, Alabama (the "Spiral Freezer"). I promptly sent a $5,000.00 check to GE as a deposit, which GE cashed.

3. Shortly thereafter, GE informed me that they could not sell me the Spiral Freezer because it was the subject of litigation with Koch Foods. GE refunded my deposit when I asked them to do so.

4. I was familiar with the Spiral Freezer because I had previously purchased that very same Spiral Freezer for $25,000, then refurbished it and installed it at Sylvest's facility in early 2006.

5. I reviewed the appraisal of the Spiral Freezer prepared on October 1, 2007 for GE by Robert Breakstone of Equipment Exchange Co., which reflected the Spiral Freezer's fair market value as $280,000. In my opinion that valuation by Mr. Breakstone was excessive and grossly overstated the value of the Spiral Freezer.

6. On or about November 27th, I received a call from Ann Pille. She stated that she was a lawyer representing GE in Chicago. She wanted to discuss the Spiral Freezer and I explained that I had an agreement to purchase the disputed Spiral Freezer, paid a deposit and asked for the deposit to be refunded pending the results of the lawsuit, which GE obliged. I told her the purchase price agreed to with GE at $50,000 and the fact that I had originally paid $25,000 for the freezer. The customer I purchased the Spiral Freezer from had felt that it was a great deal because the original manufacturer was going to charge them $100,000 for the removal Spiral Freezer, which meant they had just saved them $125,000.

7. I also explained to Ms. Pille that I had originally sold this Spiral Freezer to Sylvest and my business was buying, removing, refurbishing and installing these types of spiral freezers, and that the Breakstone appraisal of the spiral at $280,000 was excessive, and that even the lower appraisal value too high. If I had to pay close to the Breakstone appraisal price for the used Spiral Freezer, removed and reinstalled with a new enclosure, it would cost as much or more than a new one.

8. Ms. Pille mentioned that they may consider deposing me, and I said I did not really want to get involved because I liked and worked with both companies, but I would appear if subpoenaed. Ms. Pille did not inform me that she had already sent a notice to Koch's lawyers that scheduled my deposition in Atlanta on November 30, 2007.

9. Ms. Pille never asked me for my address in our phone call, nor did she ever call me back to get my address to send me the deposition subpoena we discussed. In fact, Ms. Pille never called me back to inform me that she was not going to take my deposition. If Ms. Pille would have asked me, I would have given her my address.

By: _____
Michael Leonard

Subscribed and sworn to before me
this 10th day of DEC, 2007.

_____
Notary Public