UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KOCH FOODS OF ALABAMA, LLC,<br>an Alabama limited liability company, | ) ) ) | |
| Plaintiff and Counter-<br>Defendant, | ) ) ) | |
| vs. | ) ) | CIVIL ACTION NO.<br>2:07 CV 522-MHT |
| GENERAL ELECTRIC CAPITAL<br>CORPORATION, a Delaware corporation, | ) ) ) | |
| Defendant and Counter-<br>Plaintiff, | ) ) ) ) | |

**RESPONSE OF GENERAL ELECTRIC CAPITAL
CORPORATION TO MOTION TO RECONSIDER THIS
COURT'S PROTECTIVE ORDER, AND TO REOPEN DISCOVERY
TO TAKE THE DEPOSITION OF MICHAEL LEONARD**

General Electric Capital Corporation ("GE Capital"), by its undersigned counsel, responds to Koch Foods of Alabama, LLC's ("Koch"), above-referenced Motion to Reconsider (the "Motion to Reconsider") (Doc. 49), as follows:

1.    In its Motion to Reconsider, Koch accuses:

- GE Capital of attempted subornation of perjury, *i.e.* "buy[ing] a witness." Motion to Reconsider, ¶ 15; and

- GE Capital, and by extension its counsel, of making deliberate misrepresentations to this Court. *See, generally* Motion to Reconsider.

Put charitably, Koch's allegations are untrue and outrageous. Moreover, Koch's allegations are simply a "red herring" that do not change the fact that Koch never issued a deposition subpoena or deposition notice for Michael Leonard ("Mr. Leonard") before November 30, 2007 (four consecutive days and two business days before the December 4, 2007, discovery deadline), and, in fact, had never previously expressed any interest in taking Mr.

Leonard's deposition, despite Koch listing Mr. Leonard in its own Supplemental Disclosures in mid-October (plenty of time before the discovery deadline) and clearly having the ability to contact and communicate with Mr. Leonard, as demonstrated by the affidavit that Koch attached to its Motion to Reconsider.

2.      Koch's shrill rhetoric likely results from Koch's desire to escape the consequences of an earlier omission. In the District Court, GE Capital and Koch have filed summary judgment motions, discovery having closed. Koch has apparently realized that it failed to disclose a rebuttal expert and such expert's report regarding the value of the equipment at issue at the time of conversion. The time to do so, pursuant to the Scheduling Order (Doc. 14), has long since passed, and Koch's frantic efforts to depose Mr. Leonard after the close of discovery are nothing more than a wrong-headed attempt to vitiate the effects of this failure.[1]

3.      In its Objection to Plaintiff's Deposition Notice of Michael Leonard and Emergency Motion for Protective Order ("GE's Motion") (Doc. 41), GE Capital accurately stated:

> On November 26, 2007, GE learned that Leonard no longer lived at the address it had for Leonard, and as a result thereof, GE was unable to serve Leonard with his deposition subpoena.

GE's Motion, ¶ 4.

4.      In Paragraph 9 of its Motion to Reconsider, Koch states that "Mr. Leonard responded to this information with shock, stating that Ms. Pille had called him for the first time on *November 27, 2007* (one day after GECC represented in its Motion that it had determined that it did not have Mr. Leonard's address and was cancelling his deposition.)"

---

[1] Mr. Leonard has not been disclosed as an expert, nor have any of his opinions been disclosed. Therefore, the time for such disclosure having passed, no opinions Mr. Leonard might offer are admissible.

5.    The process server retained by GE Capital to serve Mr. Leonard reported his failure to do so because of an outdated address to GE Capital's counsel on November 26, 2007. Jacob Glenn's affidavit is attached hereto as <u>Exhibit A</u>.  GE Capital's statement in GE's Motion was precisely correct and no salient fact was omitted, contrary to Koch's suggestion in its Motion to Reconsider.

6.    Ann Pille ("Ms. Pille") spoke to Mr. Leonard once and that conversation is reported fairly accurately in Mr. Leonard's affidavit with the exception that Ms. Pille did ask for and obtain Mr. Leonard's new address. Ms. Pille's affidavit is attached hereto as <u>Exhibit B</u>.

7.    From these events, Koch alleges that:  GE Capital failed "to disclose the whole truth to this Court" and "attempt[ed] to buy a witness." Motion to Reconsider, ¶ 15.

8.    The conclusion Koch dramatically urges simply does not follow for many reasons, to wit:

- Mr. Leonard is a witness timely identified by Koch, not GE Capital.

- Documents detailing transactions and proposed transactions between GE Capital and Mr. Leonard relating to the Spiral Freezer and stating the price to be $50,000 were produced by GE Capital long ago (*see*, <u>Exhibit C</u> attached hereto), *i.e.* GE Capital and Koch have both known for months about Mr. Leonard's potential position on valuation of the Spiral Freezer.[2]

---

[2] GE Capital is constrained to point out that Mr. Leonard's alleged "damaging testimony" is hardly worth the attorney and judicial time with which Koch's actions mandate in this procedural dispute. GE Capital's properly disclosed expert, Mr. Breakstone, valued the Spiral Freezer at $280,000, which is an "in place, in use" value. Mr. Leonard's $50,000 number concedes a removal cost of $100,000 and speaks not at all to installation cost. Since Mr. Leonard bought the Spiral Freezer for $25,000, refurbished it and sold it, installed, to GE Capital, at the instance of Sylvest Farms, Inc. for $430,000, then Mr. Leonard is either a very shrewd businessman, or the cost of installation is high. *See*, Proposal, attached hereto as <u>Exhibit D</u>. The point is that Koch's Motion to Reconsider has a great deal more to do with vilifying GE Capital than obtaining evidence.

- Koch has obtained, apparently without difficulty, an extensive affidavit from Mr. Leonard setting forth his factual and untimely expert opinions, and he has voluntarily cooperated with Koch.

- Koch remains free to ask Mr. Leonard to appear voluntarily at the trial of this case.

9.     Apparently, Koch would have had GE Capital, in GE's Motion, advise this Court that it had cancelled Mr. Leonard's deposition because of his alleged "damaging testimony." The *ratio decidendi* of the Order Koch asks this Court to reconsider in no way turns on the nature of Mr. Leonard's testimony (or the reasons that GE Capital decided not to depose Mr. Leonard), but rather on the "authority [of the Court] to control the pace of litigation." Order (Doc. 43), ¶ 1.

10.    More importantly had GE Capital advised this Court that the reason it had cancelled Mr. Leonard's deposition was because his testimony could be "damaging," GE Capital would have been telling this Court a bold face lie.

11.    Without conceding that the matters stated below have, or should have, any relevance to the issue before this Court,[3] GE Capital's decision to cancel the deposition of Mr. Leonard was made for the reasons and on the schedule stated below:

---

[3] A pedantic recitation of the chronology of counsel's deliberations and decisions is doubtless anathema to any court forced to supervise discovery and, in most cases, imprudent. GE Capital chose to place these matters of record here solely because Koch accuses it of criminal conduct. In light of the accusations made by Koch's counsel in its Motion to Reconsider, counsel for GE Capital, in the interest of candor, has provided details regarding communications among its lawyers with respect to Mr. Leonard's deposition and the subsequent cancellation of it. In doing so, GE Capital does not waive and expressly preserves any of the attorney-client, work product, or other applicable privileges and doctrines that may apply to these or any other such communications.

- On Monday, November 26, 2007, Rusha Smith learned and communicated to Ms. Pille that Mr. Leonard had not been served because of an outdated address. *See* Exh. A, ¶ 5; Exh. B, ¶ 9.

- On Tuesday, November 27, 2007, Ms. Pille advised Alexander Terras ("Mr. Terras"), the lead lawyer and GE Capital engagement partner of the fact that Mr. Leonard had not been served and would likely be unavailable for deposition during Tim Harris's ("Mr. Harris") trip to Atlanta to defend the depositions of GE Capital employees, and that deposing Mr. Leonard would require a second trip to Atlanta before the close of discovery on December 4, 2007. *See* Exh. B, ¶ 13.

- Also, on Tuesday, November 27, 2007, Mr. Terras decided to cancel the deposition of Mr. Leonard on two grounds: first, that GE Capital should not have to bear the expense of a second trip to Atlanta to discover the evidence of a witness he did not deem key; and second, because further diversion of Mr. Harris's time would impair Reed Smith's ability to prepare a motion for summary judgment in this matter due on December 7, 2007, as well as to attend to other, unrelated matters. *See* Exh. B, ¶ 13.

- On Wednesday, November 28, 2007, Mr. Terras and Ms. Pille communicated Mr. Terras's decision to Mr. Harris by contacting him on his cell phone in the Montgomery, Alabama airport. After discussing the same with Mr. Harris, Mr. Terras did not change his decision. *See* Exh. B, ¶ 14.

12.    The foregoing recitation in minute detail is wholly consistent with the statements made by GE Capital in GE's Motion.

13.    Finally, Koch alleges that "GECC and its counsel decided to do what it could to block Mr. Leonard's testimony." Motion to Reconsider, ¶ 15. This is nonsense for at least the following reasons:

- Koch had ample and endless opportunities to timely depose Mr. Leonard and availed itself of none of them.

- Koch has obtained an extensive affidavit from Mr. Leonard and has apparently interviewed him at length.

- Koch remains free to ask Mr. Leonard to appear as a trial witness.

- By cancelling Mr. Leonard's deposition, GE Capital deprived Koch of nothing and deprived only itself of the opportunity to depose Mr. Leonard and did so on grounds of time and expense.

- GE Capital, in GE's Motion, sought and obtained relief because Koch attempted to reinstate the very time and expense GE Capital sought to avoid, by improperly scheduling Mr. Leonard's deposition on the very date Mr. Harris's full attention was required to complete GE Capital's motion for summary judgment in this case.

14.    Finally, Koch cites the axiom that the Federal Rules of Civil Procedure are designed to promote the search for truth, not the concealment of relevant evidence. This unquestionable principle, however, does not stand for the corollary that discovery should go on endlessly or in an abusive or harassing way, or that litigants should be relieved of their own decisions, tactical mistakes, procrastination or sloth in the discovery process.

15.    Returning to Koch's allegation that GE Capital is "attempting to buy a witness," nowhere in the Motion to Reconsider, GE's Motion or in this response is there so much of a shred of allegation much less evidence that GE Capital attempted to suborn perjury. The best that can be said is that Koch is reckless in filing a pleading containing inflammatory allegations unsupported by any evidence and unrelated to the real discovery issue brought forth in GE's Motion.

For the reasons stated above, the Motion to Reconsider should be denied.

Dated: December 14, 2007.                    Respectfully submitted,


                                             By:    /s/ Timothy S. Harris
                                                    Attorney for General Electric Capital
                                                    Corporation


                                                    /s/ Rusha C. Smith
                                                    Attorney for General Electric Capital
                                                    Corporation

OF COUNSEL:
Rusha C. Smith
Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

OF COUNSEL:
Alexander Terras
Timothy S. Harris
Reed Smith Sachnoff & Weaver
10 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 14, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Thomas G. Mancuso, Esq.
Mancuso & Franco, P.C.
7515 Halcyon Summit Drive
Suite 301
Montgomery, AL 36177

Eugene J. Geekie, Jr., Esq.
Mike Xu, Esq.
Schiff Hardin LLP
6600 Sears Tower
Chicago IL 60606

/s/ Rusha C. Smith
COUNSEL

# EXHIBIT A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KOCH FOODS OF ALABAMA, LLC,<br>an Alabama limited liability company, | ) ) ) | |
| Plaintiff and Counter-<br>Defendant, | ) ) ) | |
| vs. | ) ) | CIVIL ACTION NO.<br>2:07 CV 522-MHT |
| GENERAL ELECTRIC CAPITAL<br>CORPORATION, a Delaware corporation, | ) ) ) | |
| Defendant and Counter-<br>Plaintiff, | ) ) ) ) | |

STATE OF ALABAMA          )

COUNTY OF JEFFERSON     )

## AFFIDAVIT OF JACOB GLENN

Before me, the undersigned authority in and for said county and state, personally appeared Jacob Glenn who, first duly sworn, deposes and says on oath, as follows:

1.      My name is Jacob Glenn.  I am over 21 years old, I am of sound mind and body, and I have personal knowledge of the facts below, all of which are true and accurate.

2.      I am employed as a process server by Expedius Envoy ("Expedius"), a private courier service.  From time-to-time, Bradley Arant Rose & White LLP ("Bradley Arant") retains Expedius to serve subpoenas for it, among other service of process assignments.

3.    On November 20, 2007, Bradley Arant retained Expedius to serve a subpoena upon Michael Leonard in this case, a true and correct copy of the subpoena is attached hereto.  The address on Mr. Leonard's subpoena is 2301 Towne Lake Heights, Woodstock, Georgia, 30189.

4.    On the evening of November 21, 2007, I attempted service of the subpoena upon Mr. Leonard at the above-referenced address.  However, I was informed by the front desk attendant of the apartment complex that Mr. Leonard no longer resided at the address.

5.    According to my understanding, on November 26, 2007, Expedius informed Bradley Arant of its inability to serve the subpoena on Mr. Leonard.

Jacob Glenn

STATE OF ALABAMA                )

COUNTY OF JEFFERSON         )

Before me, the undersigned authority in and for said county and state, personally appeared Jacob Glenn, who is known to me, and who being by me first duly sworn, acknowledged before me that he has read the foregoing, he is authorized to execute the foregoing, and being fully informed of the contents thereof, he did execute the same voluntarily on this date.

Given under my hand and seal this the _14ᵗ_ day of December, 2007.

[SEAL]

_____
NOTARY PUBLIC, STATE AT LARGE

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Apr 23, 2011
BONDED THRU NOTARY PUBLIC UNDERWRITERS

My Commission expires: _____

3

AO88  (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

NORTHERN                     DISTRICT OF                     GEORGIA

Koch Foods of Alabama, LLC

V.

General Electric Capital Corporation

**SUBPOENA IN A CIVIL CASE**
UNITED STATES DISTRICT COURT
OF ALABAMA
MIDDLE DISTRICT

Case Number:[1] 2:07 CV 522-MHT

TO:    Michael Leonard
       2301 Towne Lake Heights
       Woodstock, GA  30189

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Morris, Manning & Martin, LLP, 1600 Atlanta Financial Center, 3343 Peachtree Road NE, Atlanta, Georgia, 30326 | 11/30/2007 9:00 am EST |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

All documents in your possession, including, but not limited to, e-mails, correspondence, facsimiles, valuations, records, or notes, related in any way to any equipment located at the facility owned by Koch Foods of Alabama LLC, with an address of 4530 Moblie Highway in Montgomery, Alabama.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Rusha C. Smith  Attorney for Defendant | Nov 20, 2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev.  12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | 11/20/2007 | 2301 Towne Lake Heights<br>Woodstock, GA  30189 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Michael Leonard | Hand Delivery |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises—or to producing electronically stored information in the form or forms requested.  If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling.  Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved.  A receiving party may promptly present the information to the court under seal for a determination of the claim.  If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it.  The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued.  An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# CERTIFICATE OF RETENTION OF ORIGINAL AFFIDAVIT

As attorney for the filer of the affidavit of Jacob Glenn, I hereby certify that the filer or the filer's attorney currently holds the original signature document with any required formalities, will make the same available upon request of this Court or of a party, and will retain the hard copy of the same for one year after the expiration of all time periods for appeals, or resolution of appeals, whichever is later.

Dated:  December 14, 2007

s/ Rusha C. Smith<br>
One of the Attorneys for Defendant<br>
General Electric Capital Corporation

OF COUNSEL:

BRADLEY ARANT ROSE & WHITE LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL  35203-2104
Telephone:  (205) 521-8000
Facsimile:  (205) 521-8800

OF COUNSEL:

Alexander Terras
Timothy S. Harris
REED SMITH SACHNOFF & WEAVER
10 South Wacker Drive
Chicago, IL  60606
Telephone:  (312) 207-1000
Facsimile:  (312) 207-6400

# EXHIBIT B

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KOCH FOODS OF ALABAMA, LLC,<br>an Alabama limited liability company,<br><br>   Plaintiff and Counter-<br>   Defendant,<br><br>vs.<br><br>GENERAL ELECTRIC CAPITAL<br>CORPORATION, a Delaware corporation,<br><br>   Defendant and Counter-<br>   Plaintiff, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO.<br>2:07 CV 522-MHT |

## AFFIDAVIT OF ANN E. PILLE

| | |
|---|---|
| STATE OF ILLINOIS | ) |
| | ) SS: |
| COUNTY OF COOK | ) |

Ann E. Pille, being duly sworn, deposes and says:

1.   I am an associate at the law firm of Reed Smith LLP ("Reed Smith"), and work in that firm's office located in Chicago, Illinois.

2.   I have been assisting my colleagues at Reed Smith in the representation of General Electric Capital Corporation ("GE Capital"), in respect to the above-captioned proceeding (the "Proceeding") filed by Koch Foods of Alabama, LLC ("Koch").

3.   In conjunction therewith, I have had multiple communications with counsel for Koch, and have been responsible for scheduling certain depositions in relation to the Proceeding.

4.   Koch identified Michael Leonard ("Mr. Leonard") as a potential witness in Koch's Supplemental Disclosures, served upon GE Capital on or about October 16, 2007. Koch identified Mr. Leonard as someone who may have discoverable information "relating to the installation, the use, the value, and/or the operation of the equipment at issue." See *Koch Food's*

*Supplemental Disclosures* (the "Supplemental Disclosures"), a copy of which is attached to *Defendant's Objections to Plaintiff's Deposition Notice of Michael Leonard and Emergency Motion for Protective Order* (Docket No. 41) (the "Motion for Protective Order") as Exhibit A.

5.     Koch's Supplemental Disclosures provided only a phone number, and not an address, for Mr. Leonard. *Id.* From a review of certain documents in my possession, I was able to locate an address for Mr. Leonard at 2301 Towne Lake Heights, in Woodstock, Georgia.

6.     On or about November 20, 2007, I asked Alabama counsel, Rusha Smith ("Ms. Smith"), to serve a subpoena on Mr. Leonard at that address.[1]   The subpoena noticed a deposition of Mr. Leonard for Friday, November 30, 2007 at 9:00 a.m. in Atlanta, Georgia (the "Subpoena").   See *Letter to Michael Leonard dated November 20, 2007,* a copy of which is attached to the Motion for Protective Order as Exhibit B.

7.     The November 30, 2007 date was selected because Koch had, on November 19, 2007, sent amended notices of the depositions of John Sutehall and William Perry, and had acknowledged that those depositions were scheduled to occur on November 29, 2007 in Atlanta, Georgia.  GE Capital wished to coordinate the deposition of Mr. Leonard with Timothy Harris's ("Mr Harris") trip for these previously scheduled depositions.

8.     I understand that Ms. Smith served a copy of the Subpoena on counsel to Koch on November 20, 2007 - the same date that she delivered a copy of the Subpoena to a process server to be served on Mr. Leonard.  See *Letter to Michael Leonard dated November 20, 2007.*

---

[1] In light of the accusations made by Koch's counsel in its Motion to Reconsider Regarding this Court's Protective Order, and to Reopen Discovery to Take the Deposition of Michael Leonard (Doc. 49), counsel for GE Capital, in the interest of candor, has provided details regarding communications among its lawyers with respect to Mr. Leonard's deposition and the subsequent cancellation of it.  In doing so, GE Capital does not waive and expressly preserves any of the attorney-client, work product, or other applicable privileges and doctrines that may apply to these or any other such communications.

CHILIB-2126993.1-AEPILLE

9.      On November 26, 2007, Ms. Smith informed me that she had been advised by the process server that the address we had located for Mr. Leonard was outdated. On that date, I attempted to phone Mr. Leonard to locate a current address for him, but I was unable to reach him at the number provided in the Supplemental Disclosures. I did, however, leave a voicemail for Mr. Leonard on that date.

10.     On November 27, 2007, I again attempted to reach Mr. Leonard and was able to speak with him over the phone.

11.     Near the end of our conversation, I asked for, and received a correct address for Mr. Leonard. After receiving his address, I asked Mr. Leonard if he would be amenable to sitting for a deposition in relation to the Proceeding. I asked this question because, knowing the brief period of time before the scheduled deposition date of November 30, 2007, and the fact that we had not yet been able to serve Mr. Leonard with the Subpoena, I believed that the short time period remaining before the scheduled deposition did not provide sufficient time to require his involuntary attendance.

12.     In response, Mr. Leonard informed me that he would prefer to avoid going on the record with respect to the details of the Proceeding. He further stated that he had done business in the past with both GE Capital and Koch, and had a particularly long-standing relationship with Koch. As such, he indicated he would be more than happy to answer any questions we had, but would prefer not to be formally deposed. I have reviewed the Affidavit of Michael Leonard filed in this case, and find it to be substantially correct except as I specifically state in paragraph 11, above.

13.     Following my conversation with Mr. Leonard, and also on November 27, 2007, I advised Alexander Terras ("Mr. Terras"), the lead lawyer on this case and Reed Smith's GE

- 3 -

Capital engagement partner, of the fact that Mr. Leonard had not been served and likely could not be deposed in Atlanta while Mr. Harris was in that city to defend the depositions of Messrs Sutehall and Perry. I also informed Mr. Terras of my conversation with Mr. Leonard. Mr. Terras then directed me to cancel Mr. Leonard's deposition because a second trip to Atlanta by Mr. Harris would be too expensive and disruptive of Mr. Harris's work schedule to complete a motion for summary judgment in this case, as well as other briefs.

14.     On November 28, 2007, Mr. Terras and I contacted Mr. Harris on his cellular phone at the Montgomery, Alabama airport to, *inter alia*, advise him of Mr. Terras's decision to cancel the deposition of Mr. Leonard. After discussing the same with Mr. Harris, Mr. Terras did not change his decision.

15.     I informed counsel to Koch about this decision on November 28, 2007 via e-mail. *See E-mail from A. Pille to M. Xu on November 28, 2007*, a copy of which is attached to the Motion for Protective Order as Exhibit C.

CHILIB-2126993.1-AEPILLE

16.     I received no objection from counsel for Koch at that time.   In fact, I heard nothing about Koch's reaction to the cancellation of the Mr. Leonard deposition until the afternoon of Monday, December 3, 2007, when counsel to Koch sent an e-mail enclosing their December 4, 2007 deposition subpoena for Mr. Leonard. *See, E-Mail from M. Xu to A. Pille and T. Harris dated December 3, 2007*, a copy of which is attached to the Motion for Protective Order as Exhibit D.

_____
ANN E. PILLE

SWORN to before me
on this 14th day of December 2007.

_____
Notary Public

```
"OFFICIAL  SEAL"
CRYSTAL L. DORSEY
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 3/10/2010
```

- 5 -

# CERTIFICATE OF RETENTION OF ORIGINAL AFFIDAVIT

As attorney for the filer of the affidavit of Ann E. Pille, I hereby certify that the filer or the filer's attorney currently holds the original signature document with any required formalities, will make the same available upon request of this Court or of a party, and will retain the hard copy of the same for one year after the expiration of all time periods for appeals, or resolution of appeals, whichever is later.

Dated: December 14, 2007

s/ Rusha C. Smith
One of the Attorneys for Defendant
General Electric Capital Corporation

OF COUNSEL:

BRADLEY ARANT ROSE & WHITE LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL  35203-2104
Telephone:  (205) 521-8000
Facsimile:  (205) 521-8800

OF COUNSEL:

Alexander Terras
Timothy S. Harris
REED SMITH SACHNOFF & WEAVER
10 South Wacker Drive
Chicago, IL  60606
Telephone:  (312) 207-1000
Facsimile:  (312) 207-6400

# EXHIBIT C



May 18, 2007


GE Commercial Equipment Financing
44 Old Ridgebury Road
Danbury, CT 06810


Attn: Joe DiSalvo


Dear Joe,

Thank you for the continued updates and conversation regarding the GYRoCOMPACT GCM76 spiral located at Koch Foods plant in Montgomery, AL.

Please find enclosed the deposit of $5000 for the unit along with two signed Bill of Sale documents generated by your company. I changed the Invoice date from May 11 to May 18th with your approval. Please initial the date changes, sign both and return one copy to me in the self-addressed stamped envelope.

It is a pleasure doing business with you and we, at MTL Services, hope to have the opportunity to work together in the future. I will be developing the financing and will pay the remaining $45,000 balance on or before the deadline of June 18, 2007.

Sincerely,

Michael Leonard
MTL Services
404-386-6011
www.mtlservices.net


**GE 0651**

2301 Towne Lake Heights • Woodstock, GA 30189 • Phone 404-386-6011 • Fax 770-591-0420

## EQUIPMENT PURCHASE INVOICE AND BILL OF SALE

Account Number:4171238-001
Invoice Number: AMO-
RSC: DE

Invoice Date: May 11, 2007
Terms: Due June 11, 2007

BUYER:
Michael Leonard, Inc.
2301 Town Lake Hgts.
Woodstock, GA 30189

SELLER:
GE Commercial Equipment Financing
44 Old Ridgebury Road
Danbury, CT 06810

Selling Price:          $50,000.00
Sales Tax:              Need Exemption Cert.
Deposit                 $5000.00
Balance                 $45,000.00

REMIT TO:
GE Commercial Equipment Financing
44 Old Ridgebury Road
Danbury, CT. 06810
Attn:    Joe DiSalvo

### Equipment Description
**1 Spiral Freezer Model GCM76-08-40-26  s/n 00530143
Located at Former Sylvest Farms, Inc.**

By its signature below, Buyer hereby acknowledges receipt and acceptance of the above-described equipment pursuant to the terms of this Invoice.

GE Commercial Equipment Financing hereby represents, warrants and covenants that GE Commercial Equipment Financing is the lawful owner of said goods, that they are free from all encumbrances, that GE Commercial Equipment Financing has good right to sell the same as aforesaid, and that GE Commercial Equipment Financing will warrant and defend the same against the lawful claims and demands of all persons.

Buyer additionally agrees that it shall save and hold harmless Seller from and against any and all federal, state, municipal and local license fees and taxes personal property, use and sales taxes, and from and against any and all liabilities, obligations, losses, damages, penalties, claims, actions and suits resulting there from and imposed upon, incurred by or asserted as a consequence of, the sale of the Equipment to, or the ownership, possession, operation or use of the Equipment by, Buyer.

BUYER ACKNOWLEDGES THAT THE ITEMS SOLD HEREUNDER ARE USED AND THAT SELLER IS OR WAS THE LESSOR THEREOF AND DID NOT USE, MAINTAIN OR HAVE OPERATIONAL CONTROL OF THE EQUIPMENT. BUYER ACKNOWLEDGES THAT IT HAS NOT RELIED AND IS NOT RELYING ON ANY REPRESENTATION OR STATEMENT OF CONDITION OF THE EQUIPMENT MADE BY SELLER IN CONNECTION WITH BUYER'S PURCHASE OF THE EQUIPMENT.

*If the collateral securing the above-referenced account does not secure any other account(s) that you have with GE Commercial Equipment Financing, then Certified funds (wire transfer, bank or certified check) are required if you would like to have any liens/titles released within a commercially reasonable time. Providing that any and all amounts paid have been recognized as good and available funds, liens/titles will be released thirty days after receipt of your company check.*

BUYER:
Michael Leonard, Inc

By: _____

Title: _____

Date: _____5/18/07_____

SELLER:
GE Commercial Equipment Financing

By: _____

Title: _____

Date: _____

GE 0652

## EQUIPMENT PURCHASE INVOICE AND BILL OF SALE

**Account Number:** 4171238-001
Invoice Number: AMO-
RSC: DE

Invoice Date: May 11, 2007
**Terms:** Due June 11, 2007

**BUYER:**
Michael Leonard, Inc.
2301 Town Lake Hgts.
Woodstock, GA 30189

**SELLER:**
GE Commercial Equipment Financing
44 Old Ridgebury Road
Danbury, CT 06810

| | |
|---|---|
| Selling Price: | $50,000.00 |
| Sales Tax: | Need Exemption Cert. |
| Deposit | $5000.00 |
| **Balance** | **$45,000.00** |

**REMIT TO:**
GE Commercial Equipment Financing
44 Old Ridgebury Road
Danbury, CT. 06810
Attn:    Joe DiSalvo

### Equipment Description
**1 Spiral Freezer Model GCM76-08-40-26  s/n 00530143
Located at Former Sylvest Farms, Inc.**

By its signature below, Buyer hereby acknowledges receipt and acceptance of the above-described equipment pursuant to the terms of this Invoice.

GE Commercial Equipment Financing hereby represents, warrants and covenants that GE Commercial Equipment Financing is the lawful owner of said goods, that they are free from all encumbrances, that GE Commercial Equipment Financing has good right to sell the same as aforesaid, and that GE Commercial Equipment Financing will warrant and defend the same against the lawful claims and demands of all persons.

Buyer additionally agrees that it shall save and hold harmless Seller from and against any and all federal, state, municipal and local license fees and taxes personal property, use and sales taxes, and from and against any and all liabilities, obligations, losses, damages, penalties, claims, actions and suits resulting there from and imposed upon, incurred by or asserted as a consequence of, the sale of the Equipment to, or the ownership, possession, operation or use of the Equipment by, Buyer.

BUYER ACKNOWLEDGES THAT THE ITEMS SOLD HEREUNDER ARE USED AND THAT SELLER IS OR WAS THE LESSOR THEREOF AND DID NOT USE, MAINTAIN OR HAVE OPERATIONAL CONTROL OF THE EQUIPMENT. BUYER ACKNOWLEDGES THAT IT HAS NOT RELIED AND IS NOT RELYING ON ANY REPRESENTATION OR STATEMENT OF CONDITION OF THE EQUIPMENT MADE BY SELLER IN CONNECTION WITH BUYER'S PURCHASE OF THE EQUIPMENT.

*If the collateral securing the above-referenced account does not secure any other account(s) that you have with GE Commercial Equipment Financing, then Certified funds (wire transfer, bank or certified check) are required if you would like to have any liens/titles released within a commercially reasonable time. Providing that any and all amounts paid have been recognized as good and available funds, liens/titles will be released thirty days after receipt of your company check.*

**BUYER:**
Michael Leonard, Inc
By: _____
Title: _____
Date: _____

**SELLER:**
GE Commercial Equipment Financing
By: _____
Title: _____
Date: _____

**GE 0653**

## EQUIPMENT PURCHASE INVOICE AND BILL OF SALE

Account Number:4171238-001
Invoice Number: AMO-
RSC: DE

*Refunded 6-19-07*

Invoice Date: May 11, 2007
Terms: Due June 11, 2007

BUYER:
Michael Leonard, Inc.
2301 Town Lake Hgts.
Woodstock, GA 30189

SELLER:
GE Commercial Equipment Financing
44 Old Ridgebury Road
Danbury, CT 06810

|  |  |
|---|---|
| Selling Price: | $50,000.00 |
| Sales Tax: | Need Exemption Cert. |
| Deposit | $5000.00 |
| Balance | $45,000.00 |

REMIT TO:
GE Commercial Equipment Financing
44 Old Ridgebury Road
Danbury, CT. 06810
Attn:    Joe DiSalvo

### Equipment Description
1 Spiral Freezer Model GCM76-08-40-26  s/n 00530143
Located at Former Sylvest Farms, Inc.

...s signature below, Buyer hereby acknowledges receipt and acceptance of the above-described
...ent pursuant to the terms of this Invoice.

...mmercial Equipment Financing hereby represents, warrants and covenants that GE Commercial
...nt Financing is the lawful owner of said goods, that they are free from all encumbrances, that GE
...cial Equipment Financing has good right to sell the same as aforesaid, and that GE Commercial

MTL SERVICES
2301 Towne Lake Heights
Woodstock, GA 30189
Ph: 404-386-6013

1245
64-22/610
BRANCH 77321

Date *5/18/07*

Pay to the
Order of   *GE Commercial Equipment Financing*          $ *5000.00*

*Five Thousand & No* Dollars

WACHOVIA
Wachovia Bank, N.A.

For *Deposit - GCM76 s/n Bill of Sale*

⑈001245⑈ ⑆061000227⑆ 2000027535718⑆

|  |  |
|---|---|
| Michael Leonard, Inc. | GE Commercial Equipment Financing |
| *[signature]* | By: _____ |
| *President* | Title: _____ |
| *5/18/07* | Date: _____ |

*V#3383468*

GE 0654

# EXHIBIT D

NOV-07-2005  16:27        GE CAPITAL                                    P.06

# MTL INstallation Services

Proposal for one (1)

Refurbished GYRoCOMPACT ®
MODEL GCM76-08-40-26 NS CCR SPIRAL FREEZER

for

## Sylvest Farms



$430K

Project: Refurbished Spiral freezer
Quote No.: 051014B
Date:     October 22, 2005
Contact:  Dean Falk
Phone No.: (334) 281-0400 x200
Fax No.:  (334) 288-5915
Email:    dean_f@sylvestfarms.com

GYRoCOMPACT, FRIGoBELT & FRIGoSCAN are registered trademarks of FMC Foodtech
INC.                                                                        1

GE 0499

NOV-07-2005  16:27        GE CAPITAL                              P.07

*MTL INstallation Services* is pleased to submit this proposal for a refurbished GYRoCOMPACT Model GCM76-08-40-26 NS CCR Spiral Freezing System, with a 30" wide belt and 40 active tiers.

*MTL INstallation Services* specializes in refurbished GYRoCOMPACT spirals. Michael Leonard worked with Frigoscandia for 8 ½ years and will provide project management.. Site supervision is provided by one of Frigoscandia's retired premier servicemen. Installation work is provided by Professional Fabrication, an installer & fabrication group for Northfield for over 15 years and provider of spiral installation, move and service work. Through this collaboration, we offer the best solution with experienced professionals in moving and refurbishing GYRoCOMPACT spirals.

## EQUIPMENT EXTENT OF DELIVERY

The following items are included in the extent of delivery:

- Complete GCM76-08-40-26 spiral freezer
- 40 tiers of FRIGoBELT ® stackable belting with 80 mm side link for 2.5" vertical product clearance
- M13-1.5 belt mesh
- 2600 m2 evaporator rated for 130 tons.
- 4" insulated enclosure with stainless steel interior & exterior.
- Interior lighting for the above insulated enclosure.
- Three modular floor sections with stainless steel finish
- Front two floor sections and outside section on plenum will be reskinned in stainless steel
- Change from NN to NS layout for straight through design.
- Main drive gear boxes & motors will be rebuilt as necessary
- Aluminum diamond plate mezzanine deck.
- FRIGoSCAN ® control system & NEMA 4X stainless steel control panel, complete with all controls
- Safety systems.
- Installation labor and site supervision including necessary tools, etc.
- Crane, forklift, highlift and manlift rental costs for unloading trucks and setting and assembling equipment.
- Start-up supervision.
- 3-month warranty.
- Freight to Jobsite.

GYRoCOMPACT, FRIGoBELT & FRIGoSCAN are registered trademarks of FMC Foodtech INC.                    2

GE 0500

NOV-07-2005  16:27    GE CAPITAL    P.08

**SPIRAL TECHNICAL SPECIFICATIONS:**
Spiral model number: 76-08-40-26NS CCR
Materials of construction: stainless steel.
Number of tiers: 40.
Belt width: 30".
Useable belt width: 28".
Belt spec: M13-1.5 grid type stainless steel belt.
Active belt length: 1,720 linear feet.
Total belt length: approx.1,800 linear feet.
Infeed elevation: 30".
Discharge elevation: 13' 9".
Side Link spacing: 80 mm.
Product clearance: 2.5".
Dwell time: ?? minutes.
Design belt speed: ?? fpm
Product weight per square foot: 1.2 lbs.
Overall Dimensions: 15' 9" wide x 28' 3" long x 16' 6" tall

**COIL TECHNICAL SPECIFICATIONS:**
Evaporator model number: one (1) model 2600m2.
Refrigerant type and feed: R-717 pumped.
Total Coil Capacity: 130.0 TR.
Base load: 20.0 TR.
Evaporator temperature: -40° F.
Defrost type and quantity: water (135 gpm)
Total fan horsepower: 40.0 hp.

**FOR INSTALLED SPIRAL FREEZING SYSTEM** ------------------- $ 375,000

| Options | Price |
| --- | --- |
| Complete Air Defrost (ADF) System | $22,000 |
| Complete Clean-In-Place (CIP) System | $25,000 |
| 10 gauge stainless steel (SS) welded to ss floor screed and up the wall to the top of the doors | $18,000 |

**All Options accepted......$10,000 Discount ........................... $55,000**

**Total with All Options................................................ $430,000**

**CUSTOMER REPONSIBILITIES FOR SPIRAL SYSTEM:**

- Main power connection to control panel.
- Complete access to spiral area and staging area during installation
- All field wiring of such devices as motors, VFD's, control valves, safety switches, interior lights and door heaters.
- Flat concrete foundation or foundation heating
- Water supply and drain lines for belt washer and evaporator defrost, defrost water valves, and enclosure drains. Defrost water requirement is 135 GPM for 20 minutes. Minimum water temperature is 60 deg. F.

GYRoCOMPACT, FRIGoBELT & FRIGoSCAN are registered trademarks of FMC Foodtech INC.    3

GE 0501

- Refrigeration system, piping and controls sized for a minimum of 130.0 TR at -40° F evaporator temperature.
- Fees, permits, sales tax, import duties, import fees and licenses to comply with local regulation.
- Overtime labor, if requested.
- Removal of construction debris.
- Infeed and discharge conveyors.

## INSTALLATION:

**MTL INstallation Services** has included the services of an installation supervisor and installation crew to install the system for an approximate three (3) week period. We require complete site access, a staging area, temporary lighting, electrical power, etc. from the customer during installation period. We request the use of a telephone and fax during installation and start-up. In the event complete site access is not available 10 hours per day, 6 days per week, installation costs will be increased to accommodate delays based on $50/hour per man for the allotted time.

## START-UP TECHNICIAN:

**MTL INstallation Services** has included a supervisor for two (2) days of start-up. The supervisor will start-up the equipment, when notified that the system is ready for operation and product is readily available to create a system load.

## DELIVERY:

Work under this proposal will begin on the date that both the purchase order and the down payment have been received, and it is estimated that the equipment and apparatus will be ready for shipment in four weeks after that date. Delivery estimates will be confirmed with receipt of order and down payment.

## WARRANTY:

The warranty period is three (3) months from the date of start-up but not more than fifteen (5) months from date of delivery, if start-up is delayed. Any extended warranty by suppliers will be passed on to customer. This warranty includes all parts and parts shipment during the warranty period. Labor is the responsibility of customer.

## PAYMENT TERMS:

Fifty percent (50%) down payment. Twenty five percent (25%) is due when all equipment is ready for shipment to site. Twenty five percent (25%) is due within ten (10) days from the date of startup or maximum 30 days from date of delivery, whichever occurs first. MTL INstallation Services will retain equipment ownership until paid in full.

## TERMS AND CONDITIONS:

Price does not include any sales or other type of tax and is firm for ninety (90) days. See our "Standard Terms and Conditions" below.

## STANDARD TERMS AND CONDITIONS:

I.    GUARANTEE, DISCLAIMER AND REMEDY ON DEFAULT:

A.   Performance Specifications: Seller guarantees that the goods quoted will achieve the performance output specified in this quotation, provided purchaser's product is as quoted, is in the stated condition, and the goods are properly installed, operated and maintained. Seller will have met the performance guarantee if performance can be maintained for eight (8) hours of normal operation. Seller shall be given reasonable opportunity to observe and measure the performance of the goods before purchaser shall have any rights under this Section I.

GYRoCOMPACT, FRIGoBELT & FRIGoSCAN are registered trademarks of FMC Foodtech INC.        4

GE 0502

B. **Assurance of Performance:** If the goods supplied fail to meet the performance level quoted, purchaser must notify seller in writing within thirty (30) days after the goods have been placed in operation. Seller will be given a reasonable time to perform tests and make any modifications seller deems necessary. Purchaser will furnish for such tests, at its cost, all necessary purchaser's product in the condition stated in the quotation, utilities, refrigeration capacity as specified, labor and materials required to perform the tests properly. Direct costs of any modifications made to the goods by seller will be at seller's expense up to a maximum of five percent (5%) of the sales price. If the goods, after testing and modification, do not meet the performance level quoted, seller will refund to purchaser a portion of the sales price, less cost of modifications, equal to the percentage that actual performance of the goods falls below the specified level of performance but in no case shall any refund exceed ten percent (10%) of the sales price.

C. **Defects of Material and Workmanship:** Seller warrants the goods manufactured by it to be free of defects in material and workmanship. Should any part be found defective under normal use and service within three (3) months from date of start-up or five (5) months from date of shipment, whichever is first, purchaser may, with seller's prior consent, return the part, freight prepaid, to seller's plant for inspection. If seller finds the part defective, seller will, at its option, repair or replace the part free of charge, delivered FOB purchaser's plant. Seller's liability is limited to repair or replacement and seller will not be liable for any damages, losses or expenses arising in connection with use or inability to use seller's goods for any purpose. Seller will not be responsible or liable for labor installation costs, for delay or loss of production or sales occasioned by failure of any part. Seller will not be responsible for any damage resulting from improper storage or handling prior to placing the equipment in service and will not be responsible for repairs made outside seller's factory without consent of seller.

D. **Disclaimer of Implied Warranties:** SELLER'S WARRANTIES IN CONNECTION WITH THE GOODS ARE LIMITED TO THOSE EXPRESSED IN THIS QUOTATION. WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE AND ANY IMPLIED WARRANTIES ARISING FROM A COURSE OF DEALING, USAGE OR TRADE, BY STATUTE OR OTHERWISE, ARE HEREBY DISCLAIMED.

E. **Exclusive Remedy:** In the event of breach of any warranties, purchaser's sole and exclusive remedy shall be modification of the equipment, repair or replacement of defective parts, or adjustment of refund of the purchase price as provided in this quotation. THE SELLER SHALL NOT BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL OR CONTINGENT DAMAGES OF ANY KIND. Purchaser understands that seller has anticipated purchaser's acceptance of the performance warranty and remedy limitations set forth in this quotation and that seller has relied on such acceptance in quoting the sales price(s) offered herein.

II. **PATENTS:**
If purchaser is sued on a claim that the goods or any part thereof furnished by seller constitute any infringement of any patent of the United States, seller, upon prompt written notice and authorization and assistance by purchaser, will defend the suit and pay any expenses and costs awarded against purchaser. In the event purchaser has assisted in the defense and the goods, or any part, are held to constitute infringement and their use is enjoined; seller, in lieu of all further liability, will at its own expense either procure for purchaser the right of continued use of the goods or replacement with no infringing goods, or modify them so they are not infringing, or remove the goods and refund the purchase price, but seller's liability shall in no case exceed the purchase price of any infringing goods.

III. **DELIVERY:**
Shipping dates are approximate only. No form of acceptance specifying a particular shipping date will be binding on seller unless countersigned or otherwise agreed to in writing by seller's authorized representative.  Shipments shall be FOB purchaser's factory, with title passing to purchaser on delivery to the purchaser's factory.

IV. **PARTIAL SHIPMENT:**
Of purchaser's order, partial payment shall be made in accordance with the quotation. If purchaser causes delay in shipment or does any other act affecting time of payment, the full-unpaid invoice price shall become due and payable as if shipment had been made. If purchaser requests or causes a delay in shipment, a reasonable storage charge may be made by seller. Storage will be at purchaser's risk.

VI. **CANCELLATION:**
In the event purchaser cancels this order, seller may charge and purchaser agrees to pay a cancellation fee of either ten percent (10%) of the sales price or, alternatively, seller's accrued costs of the order plus forty percent (40%), whichever is greater. Seller's cancellation fee will in no way be construed or interpreted to be a penalty, and is established solely for the purpose if determining with reasonable certainty seller's out-of-pocket costs and expenses which would otherwise be difficult to determine.

VII. **BREACH:**
In the event of breach by either party of any condition or provision of this quotation and suit is brought, in addition to any remedy available, the prevailing party shall recover its costs of litigation, including reasonable attorney's fees.

VIII.    **Indemnification**

Customer further agrees that it will defend, indemnify and hold MTL Installation Services harmless from any and all claims of customers representatives, associates, employees, agents, contractors and customers, and of the employees, representatives and associates of each of the foregoing parties, which such claim or claims have any connection with the services and materials provided by Company

**MTL INstallation Services**                         **Sylvest Farms**

_____ Date: _____              _____ Date: _____
(SELLER)                                           (PURCHASER) – (TITLE)


GYRoCOMPACT, FRIGoBELT & FRIGoSCAN are registered trademarks of FMC Foodtech INC.          5

<u>Sylvest Farms Quick PIC Notes</u>

- Been in business as a C-Corp for 15 yrs

- Six locations in AL consisting of feedmills, further processing, distribution facilities and hatcheries.

- Customer and Industry breakdown:
    1. Grocery 30% - Piggly Wiggly, Western, Super Value
    2. Institution 30% - Sysco, US Food Service, Frosty Acres, Eutem; 2 yr contracts
    3. Fast Food 30% - Churches, Popey's, Hooters, Outback, Logans; 2-4yr contracts
    4. Misc.    10% - Export

- Business and Product focus for 2003
    1. Individually quick frozen products
    2. Retail tray packs – boneless, skinless, marinated, wings
    3. Discontinuing export business – past 1lb .24 now .17
    4. Continuing to cut expenses through automated equipment, process controls and renovations.
    5. Double shifting three facilities

- Sold College Park, GA facility to Wayne Farms 09/02 – amount undisclosed

- New President and CEO – Dean Faulk former Pres. and CEO of Buterball Turkey

**GE 0504**