UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KOCH FOODS OF ALABAMA, LLC, an Alabama limited liability company, <br><br> Plaintiff and Counter-Defendant, <br><br> vs. <br><br> GENERAL ELECTRIC CAPITAL CORPORATION, a Delaware corporation, <br><br> Defendant and Counter-Plaintiff, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )  CIVIL ACTION NO. <br> )  2:07 CV 522-MHT <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

GENERAL ELECTRIC CAPITAL CORPORATION'S
RESPONSE TO KOCH FOODS OF ALABAMA LLC'S
MOTION FOR SUMMARY JUDGMENT

For its response to Koch Foods' Motion for Summary Judgment with Respect to GECC's Counterclaim for Conversion (the "Motion") (Doc. 46), General Electric Capital Corporation ("GE Capital"), through its attorneys, states as follows:

**INTRODUCTION**

1.     Koch Foods of Alabama, LLC ("Koch") asserts it is entitled to summary judgment because GE Capital never demanded possession and Koch never exercised dominion and control over the chicken deboning equipment (the "Deboning Equipment") and the spiral freezer (the "Spiral Freezer"). Koch is wrong. Demand was not required, demand was futile, and Koch undoubtedly exercised dominion and control over the Deboning Equipment and the Spiral Freezer.

**ARGUMENT**

2.     From June 2006 through April 2007, Koch deboned roughly twenty-nine million (29,000,000) chickens using the Deboning Equipment. During the forty-four (44) weeks, Koch used the Deboning Equipment sixteen (16) hours a day, five (5) days a week, and deboned approximately six hundred and seventy-four thousand (674,000) chickens per week. *See Koch's*

*First Set of Discovery Responses,* pp. 7-8, a copy of which is attached to *GE Capital's Brief and Evidentiary Submissions in Support of its Motion for Summary Judgment as to all Claims and Counterclaims* (the "*GE Capital Memorandum*") as Exhibit K; *Kaminsky Dep. Transcript,* 85:8-12, a copy of which is attached to the *GE Capital Memorandum* as Exhibit E.

3.   Koch has paid GE Capital nothing for use of the Deboning Equipment or the Spiral Freezer.  *See Koch's First Set of Discovery Responses,* pp. 22-23.

4.   In his deposition, Koch's Chief Financial Officer, Mark Kaminsky, testified that he was the person at Koch with the "most knowledge of this lawsuit" and was also the individual acting as the "point man" with respect to the lawsuit.[1]   He testified unequivocally that Koch currently owns both the Deboning Equipment and the Spiral Freezer, and has owned both the Deboning Equipment and the Spiral Freezer since approximately the end of May 2006:

> Q:   Does Koch Foods currently claim ownership of the deboner line?
> A:   Yes.
> Q:   Does it currently claim ownership of the spiral freezer?
> A:   Yes.

*Kaminsky Dep. Transcript,* 29:1-6.

> Q:   And on what date did Koch gain ownership of the equipment? And when I say the equipment, in this instance I mean only the deboner and the spiral freezer.
>
> A:   Upon closing of the deal for Sylvest, which was approximately the end of May 2006.

*Id.*, 80:16-22.

---

[1] Q: Who at Koch Foods has the most knowledge of this lawsuit? Would that be you?
  A: Yes.
  Q: And are you the person most in contact with Koch Foods' attorneys regarding this lawsuit?
  A: I am.
  Q: So you're the point man?
  A: I am.

*Kaminsky Dep. Transcript*, 37:11-18.

> Q:  Now, in Count I, as I read Count I of this complaint, Koch Foods is asserting ownership of all of the equipment including all of the deboner line, is that correct?
>
> A:  Less the Ossid equipment, yes.
>
> Q:  Understood. Is that claim of ownership still in existence today?
>
> A:  Yes.

*Id.,* 55:7-14. The pleading formulated by Koch's attorneys takes exactly the same position – that Koch has owned the Deboning Equipment and the Spiral Freezer since June 2006 and owns this personal property today.[2] *See Complaint,* a copy of which is attached to the *GE Capital Memorandum* as Exhibit G, ¶ 17 ("Koch Foods . . . owns the Equipment as the fixtures of the Plant.").

5.  After using the Deboning Equipment from June 2006 until February 2007 – processing nearly twenty-five million (25,000,000) chickens – Koch refused to return the Deboning Equipment and the Spiral Freezer unless it received a <u>full release from GE Capital</u>. Koch's Attorney Geekie wrote to GE Capital's Attorney Terras on February 14, 2007, as follows:

> If GE is unwilling to accept Koch's premium price for the deboning line, however, Koch will purchase other equipment and will gladly allow GE to enter Koch's plant at a reasonable and mutually agreeable time to remove the equipment, and <u>if GE agrees to a mutual release</u> and to indemnify Koch for any damage caused to the plant by GE's removal of the equipment.

*See E-mail from E. Geekie to A. Terras, February 14, 2007,* a copy of which is attached to the *GE Capital Memorandum* as Exhibit T (emphasis added).

6.  On April 18, 2007, contemporaneously with arrival of replacement equipment and Koch's tossing of the Deboning Equipment into its parking lot, Attorney Geekie sent a second e-

---

[2] In its Counterclaim, GE Capital asserts that the Deboning Equipment was converted. Koch's unequivocal claims of ownership over both the Deboning Equipment and the Spiral Freezer now compel the conclusion that Koch also converted the Spiral Freezer.

- 3 -

mail which did not reference and did not withdraw the demand for a mutual release. *See E-Mail from E. Geekie to A. Terras, April 18, 2007,* a copy of which is attached to the *GE Capital Memorandum* as Exhibit U.

7. Even if Koch could demonstrate that it dropped its demand for a full release, Koch did so only after holding GE Capital off until replacement equipment arrived and Koch had tossed the Deboning Equipment into its parking lot without notice to GE Capital. The best that can be said is that Koch behaved as the absolute owner of the Deboning Equipment and the Spiral Freezer from May 2006 until it no longer needed the Deboning Equipment, had junked it, and ten months later sought to manufacture a litigation position by sending the second e-mail. Koch's behavior has been precisely consistent with the position of absolute ownership it takes in this lawsuit.

8. GE Capital told Koch in writing in January 2007 – after Koch had processed approximately twenty-one million (21,000,000) chickens and had paid GE Capital nothing in return – to either pay rent for the equipment GE Capital owned or be sued for conversion. *See Letter from A. Pille to E. Geekie, January 2, 2007,* a copy of which is attached to the Motion as Exhibit 9. Koch's response was to refuse to return the equipment unless it received a full release. *See supra, E-mail from E. Geekie to A. Terras, February 14, 2007.*

9. In the Motion, Koch suggests that it must escape liability, notwithstanding that its claim of ownership on a "fixture" theory is wholly unsustainable in law or fact, because, Koch maintains, demand and refusal are required.

10. In the Motion, Koch makes no mention, and offers no support, of its assertions that it owns the Deboning Equipment and the Spiral Freezer, yet Koch asserts that it is entitled to summary judgment on the conversion claim. Koch is wrong for these compelling reasons:

- In the presence of a claim of ownership or behavior by the tort-feasor consistent with ownership (i.e. treating or using the property as his own), no demand by the rightful owner is required.

- GE Capital consistently and from the beginning advised Koch of its rights as owner[3] and Koch continued to assert domain, control, and ownership over the equipment by using the property as its own and refusing to surrender the equipment except on condition of it receiving a full release, precisely the kind of unreasonable condition for return of the property that does not purge the tort.

- When demand is futile, either because already refused as Koch did here or because the property has been used, altered, or devalued as it was here, demand is not required.

A. **Even Absent Demand and Refusal, Koch Has Converted GE Capital's Property.**

11. The very precedent Koch cites in the Motion undermines Koch's position. Koch ignores controlling Alabama precedent and long-established United States Supreme Court jurisprudence. No demand was required.

12. It is well-settled under Alabama law that the elements of conversion do not, except in one instance out of four, require demand and refusal. Under Alabama law, "[A] conversion is said to consist either in the appropriation of a thing to the party's own use and beneficial enjoyment, or its destruction, or in exercising dominion over it, in exclusion or defiance of the plaintiff's right, or in withholding the possession from the plaintiff, under a claim of title inconsistent with his own." *White v. Drivas*, 954 So. 2d 1119, 1123 (Ala. Civ. App. 2006) (internal citations omitted). Four different actions give rise to conversion: an illegal

---

[3] As part of the due diligence process related to Sylvest's sale of the deboning facility (the "Facility"), and prior to the contemplated sale of its assets, Sylvest established on a website a data room. *See Campbell Dep. Transcript,* 66:18-67:5, a copy of which is attached to the *GE Capital Memorandum* as Exhibit B. The Lease, which unequivocally establishes GE Capital's ownership of the equipment, was included in the data room, along with other financial statements, contracts, and documents relating to Sylvest's assets and financial obligations. *Id.* Koch does not allege that it was unaware of the Lease at the time of the purchase of the Facility from

Continued on following page

assumption of ownership, an illegal use or misuse, a wrongful taking, or a wrongful detention. *White*, 954 So. 2d at 1123; *see also Ott v. Fox*, 362 So. 2d 836, 839 (Ala. 1978) ("[T]o constitute a conversion, there must be a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse.") (emphasis added).

13.   Where there has been an illegal assumption of ownership, or an illegal use or misuse, or a wrongful taking, demand and refusal are not required. *White*, 954 So. 2d at 1123. In contrast, in the case of a wrongful detention, a demand and refusal is required. *Id.; see also The Citizens Bank v. The Coffee County Bank*, 431 So. 2d 1203, 1207 (Ala. 1983) ("A demand and refusal is but one means of proving a conversion. A demand is not necessary when there has been a wrongful taking or an exercise of dominion and control over the property inconsistent with the rights of the owner.") (emphasis added); *Southeastern Mach. & Equip. Co, Inc. v. Tarpley*, 398 So. 2d 700, 702 (Ala. Civ. App. 1981) ("There was sufficient evidence as to [plaintiff's] ownership and right to possession and to [defendant's] exercise of dominion over his property in exclusion or defiance of his rights to provide a scintilla of conversion. No demand and refusal were necessary.") (emphasis added).

14.   In its Motion, Koch ignores that it: (a) has asserted and continues to assert ownership of the Deboning Equipment and the Spiral Freezer (illegal assumption of ownership); (b) used the Deboning Equipment sixteen (16) hours a day, every business day, for approximately ten (10) months (use of another's property); and (c) as soon as its replacement equipment arrived, tossed the Deboning Equipment out into its parking lot without notice to GE

---

Continued from previous page
  Sylvest. To the contrary, Koch states that it reviewed the Lease in conjunction with its decision to direct Sylvest to reject the same. *See Kaminsky Dep. Transcript,* 144:5-16.

Capital (misuse of another's property). These actions alone, without more and without demand or refusal, constitute conversion.

      **B.**    **Koch's Offer to Surrender GE Capital's Property on Condition of a Release Renders Koch's Offer a Nullity.**

    15.    Assuming *arguendo* that demand and refusal were required, GE Capital consistently and from the beginning advised Koch of GE Capital's rights as owner of the Deboning Equipment and the Spiral Freezer. Koch disregarded GE Capital's interests in the equipment, and continued to assert dominion, control, and ownership over the equipment by using the property as its own, and refusing to surrender the equipment except on condition of receiving a release.

    16.    When GE Capital requested that Koch compensate it for Koch's use of the Deboning Equipment, Koch responded by stating that it would "allow GE to enter Koch's plant at a reasonable and mutually agreeable time to remove the equipment," but only "if GE agrees to a mutual release." *See supra, E-mail from E. Geekie to A. Terras, February 14, 2007.* This demand is unreasonable, and therefore not sufficient to purge Koch of the tort of conversion.

    17.    Under Alabama law, "[a] limited or qualified refusal to surrender . . . property is not *per se* a conversion. But the refusal must be a reasonable qualification or requirement and stated in good faith." *Gabrielson v. Healthcorp of Eufaula, Inc., et al.*, 628 So. 2d 411, 414 (Ala. 1993) (granting summary judgment to plaintiff on its conversion claim against defendant for the refusal to return certain medical records); *see also White*, 954 So. 2d at 1123. After using GE Capital's equipment without permission in order to debone tens of millions of chickens, and after paying GE Capital exactly nothing for that use, Koch conditioned its return of the equipment on a mutual release, thereby requiring GE Capital to forego any redress for Koch's unauthorized appropriation of GE Capital's property. Such a condition is unreasonable under Alabama law.

### C. GE Capital Was Not Required to Make a Demand for Return of the Equipment Since a Demand Would Have Been Futile.

18. Finally, in addition to the grounds stated above, demand is not required where it would be futile, either because already refused as Koch did here or because the property has been used, altered, or devalued as it was here. *See, e.g., Union Naval Stores Co. v. United States*, 240 U.S. 284, 293 (1916) (instruction given to jury that demand for possession of personal property, after property had been sold by defendant, was futile and therefore unnecessary).[4]

19. In the instant case, Koch had extensively used the Deboning Equipment, devalued it, and set unreasonable conditions for its return months later. Koch's extensive and continuing use of the Deboning Equipment and Koch's unequivocal assertions of ownership of GE Capital's property demonstrates that the conversion occurred in May 2006. Koch's February 2007 insistence on a mutual release was a refusal, and not sufficient to purge the tort. Koch's April 2007 attempt to return the junked equipment was nothing more than a litigation strategy. In all these circumstances, demand would have been futile.

### CONCLUSION

20. GE Capital, in its motion for summary judgment, cogently establishes that Koch's claim of ownership is unsustainable, thereby establishing Koch's liability for conversion. Regarding damages, Koch, remarkably, has failed in discovery to address or disclose any competent and admissible evidence on the measure of damages Alabama law mandates – in place, in use value as of the date of conversion. Tellingly, Koch does not seek summary judgment on the claim of ownership it states as the principal count of its Complaint.

---

[4] *See also Surplec, Inc. v. Maine Pub. Serv. Co.*, 501 F. Supp. 2d 195, 199 (D. Me. 2007) (noting that, under Maine law, demand for the return of personal property would have been futile – and was therefore unnecessary – once defendant had already informed plaintiff it intended to keep using the equipment); *Auscape Intern. v. Nat'l Geographic Soc.*, 461 F. Supp. 2d 174, 189 (S.D.N.Y. 2006) (under California law, an exception to the general rule that a plaintiff must demand return of the converted property before a conversion claim will arise includes circumstances in which demand would be futile because, for example, it has already been sold or destroyed).

- 9 -

21.     Knowing that GE Capital owned it, Koch first did what it pleased with GE Capital's property, then held it hostage to obtain a full release months after the conversion, and finally brought this action on an unsustainable legal theory.  The Motion should be denied, GE Capital's Motion granted, and Koch held to account for the value of the property it most assuredly converted.

Dated:  January 4, 2008.                    Respectfully submitted,


                                            By:     /s/ Rusha C. Smith
                                                    Attorney for General Electric Capital
                                                    Corporation

OF COUNSEL:
Rusha C. Smith
Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

OF COUNSEL:
Alexander Terras
Timothy S. Harris
Reed Smith Sachnoff & Weaver
10 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400

CERTIFICATE OF SERVICE

 I hereby certify that on January 4, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Thomas G. Mancuso, Esq.
Mancuso & Franco, P.C.
7515 Halcyon Summit Drive
Suite 301
Montgomery, AL 36177

Eugene J. Geekie, Jr., Esq.
Mike Xu, Esq.
Schiff Hardin LLP
6600 Sears Tower
Chicago IL 60606

            /s/ Rusha C. Smith
            COUNSEL