UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KOCH FOODS OF ALABAMA, LLC,<br>an Alabama limited liability company,<br><br>        Plaintiff and Counter-<br>        Defendant,<br><br>vs.<br><br>GENERAL ELECTRIC CAPITAL<br>CORPORATION, a Delaware corporation,<br><br>        Defendant, and Counter-<br>        Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO.<br>)  2:07 CV 522-MHT<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## GE CAPITAL'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO ALL CLAIMS AND COUNTERCLAIMS

General Electric Capital Corporation ("GE Capital"), through its undersigned counsel, in further support of GE Capital's Motion for Summary Judgment as to all Claims and Counterclaims ("GE Capital's Summary Judgment Motion") (Doc. Nos. 44 and 45), and in further opposition to Koch Food's Motion for Summary Judgment With Respect to GECC's Counterclaim for Conversion ("Koch's Summary Judgment Motion") (Doc. No. 46), hereby states as follows:

## I. INTRODUCTION

Koch Foods' Brief and Evidentiary Materials in Opposition to GECC's Motion for Summary Judgment (the "Opposition") (Doc. No. 67) is noteworthy, above all, for its recitation of many, many facts.[1]   Reciting facts, however, does not make them material to the issue presented for decision, nor does presenting "facts" not in the record allow the Court to consider

---

[1]   All capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in General Electric Capital Corporation's Response to Koch Foods of Alabama LLC's Motion for Summary Judgment ("GE Capital's Response") (Doc. No. 68).

the same.  Below, GE Capital points out that neither Koch's multitude of facts, nor the law it presents, should deter this Court from granting summary judgment in GE Capital's favor.

## II.  ARGUMENT

### 1.    Almost None of the Facts Recited by Koch in the Opposition are Material.

In its Opposition, Koch recites a great number of new "undisputed facts."  Almost none of the facts recited by Koch, however, are material.  GE Capital's case for liability is simple:

A.    Koch knew that GE Capital owned the Deboning Equipment and the Spiral Freezer when Koch bought the Facility.

B.    Koch asserted an unlawful ownership interest in the Deboning Equipment and the Spiral Freezer from the day Koch bought the Facility, and continues to do so today.

C.    Koch used the Deboning Equipment from the day it bought the Facility until the time, approximately ten months later, that replacement equipment arrived.

D.    The Deboning Equipment is now in Koch's parking lot, having been put there by Koch without GE Capital's knowledge.  The Spiral Freezer is still in the Facility.

E.    Koch has paid GE Capital nothing for its use of any of the equipment.

F.    Koch made an offer to return this equipment for the first time on February 14, 2007, and, at that time, conditioned return of the Deboning Equipment and the Spiral Freezer on GE Capital giving Koch a general release.

G.    Koch's first arguably unconditional offer to return the equipment was made contemporaneously with the arrival of replacement equipment and Koch's moving the Deboning Equipment to the parking lot.

Koch offers no material evidence to challenge any of the above.  Rather, Koch says that Sylvest had a record year in 2005 and purchased the poultry processing operation from ConAgra, except that ConAgra sold the real estate to Hodges Bonded Warehouse which then leased it back to Sylvest.  Koch also tells us Sylvest's written agreement with GE Capital that the equipment

would remain personal property and not become fixtures is not really an agreement because it was just "boilerplate."[2] Koch cites no law to exclude "boilerplate" from a written contract. Koch goes on to point out that GE Capital did not treat the equipment as fixtures by making a "fixture filing" or getting a "landlord's waiver" showing, we can only suppose, that GE Capital thought all along that the boilerplate was a part of the written contract, and that the equipment was not fixtures. Since these sort of facts so plainly have nothing to do with the issues presented for decision (*Opposition*, ¶¶ 1, 2, 8, and 14), this Court could safely conclude that it is being distracted.

Almost everything else in Koch's lengthy factual recitation is equally immaterial to the issue of conversion to be decided, with the exception of a few facts that are just plain misstatements or inadmissible. To wit, Koch states that it continuously demanded that GE Capital remove the Deboning Equipment and the Spiral Freezer, "subject only to the condition that GECC would reimburse Koch for any damages caused by the removal of the Equipment." *Opposition*, ¶ 23. This is just plain wrong. Koch's first "demand" came eight months after it began using the Deboning Equipment and was not unconditional – Koch demanded a general release from GE Capital. *See Email from E. Geekie to A. Terras, February 14, 2007*, a copy of which is attached to GE Capital's Brief and Evidentiary Submission in Support of its Motion for Summary Judgment as to all Claims and Counterclaims ("GE Capital's Memorandum") (Doc. No. 45) as Exhibit T. Koch's second demand came when Koch was finished with the Deboning Equipment, had installed replacement equipment, and placed the Deboning Equipment in the parking lot. *See Email from E. Geekie to A. Terras, April 18, 2007*, a copy of which is attached to the GE Capital's Memorandum (Doc. No. 45) as Exhibit U. On

---

[2] Going on about the "boilerplate" question, Koch tells the Court that the "representatives of GECC and Sylvest never discussed or negotiated any substance contained in this provision during their negotiation of the Equipment Lease." *Opposition*, ¶ 8. Since there is no statute or precedent in Alabama, or any jurisdiction, that even suggests that a provision in a written contract someone deems to be "boilerplate" is not enforceable in a commercial contract, the point of Koch's considerable factual recitations on the subject is mysterious. This is just one of many efforts to misdirect, overstate and generalize in the Opposition, which are not deserving or susceptible of individual objection.

another apparently critical point, whether GE Capital consented to Koch's use of the Deboning Equipment, the Opposition is liberally sprinkled with oblique references to GE Capital's consent, which belies the fact that there is not one scrap of evidence in the record that GE Capital in fact consented to Koch's use.

After cutting through that which is not material, the undisputed and material facts demonstrate that Koch needed the Deboning Equipment to run its processing plant, did not want to pay for it, asserted without legal basis that it owned it, and then used it until its own business convenience was served by the installation of replacement equipment. Only at this point did Koch become willing to abandon its claims of ownership and cease to care what happened to the remnants in the parking lot.

### 2.    Koch's Denials That It Asserted Ownership Ring Hollow.

Koch states that it "never claimed any ownership of the Deboner before this lawsuit was filed." *Opposition,* p. 13. This is a truly remarkable statement for two reasons:

- First, Koch's Chief Financial Officer's testimony is exactly the opposite. *See, e.g., GE Capital's Response,* ¶ 4.

- Second, were Koch correct, then the equipment, apparently, became fixtures not when Koch bought the Facility, but when it filed this lawsuit, a legal position that would appear frivolous.

Koch goes on to say that its assertions of ownership did not constitute conversion because it "in no way injure[d]" GE Capital. Koch cites no Alabama case to support this qualification, but instead cites two cases that involve assertions of ownership made by a defendant who never deprived the true owner of possession and a plaintiff who had sold the goods allegedly converted on credit under a written contract and did not get paid. *See Union State Bank v. Woell,* 434 N.W.2d 712 (N.D. 1989) (summary judgment entered in favor of creditor on debtor's claim of conversion because disputed funds were under control of the court); *Desbien v. Penokee Farmers Union Coop. Assoc.,* 220 Kan. 358, 552 P.2d 917 (1976) (no conversion occurred where owner

of property maintained possession of the property consistently, and defendant did not interfere with control of the owner).  Both of these cases are a far cry indeed from processing twenty-nine million chickens and then removing the property to the parking lot as soon as your business convenience dictates you no longer need it.

Koch suggests, perhaps, that the law of Alabama should be that no conversion occurs until the defendant "seriously interferes" with the true owner's rights, or that "a temporary use which does not damage the chattel or inconvenience the owner and is not intended as a defiance of the owner's rights may not be enough for conversion." *Opposition*, p. 14.  To support this proposition, Koch cites to the Restatement (Second) of Torts § 227.  In doing so, however, Koch fails to note that § 227 of the Restatement also provides the following illustration of when a conversion claim – resulting from use – should lie:

1.   A owns a desk, which is his private property.  On one occasion, without A's consent, B uses the desk to write his wife.  This is not a conversion of the desk.

2.   The same facts as in Illustration 1, except that B uses the desk daily for six months.  This is a conversion.

3.   The same facts as in Illustration 1, except that B uses the desk with the assertion of a claim that it is his own.  This is a conversion.

4.   The same facts as in Illustration 1, except that, with or without negligence on the part of B, the desk is seriously damaged by its use.  This is a conversion.

*Restatement (Second) of Torts, § 227* (1965); *see also Miller v. Uhl*, 37 Ohio App. 276, 174 N.E. 591 (Ohio App. 1929) (defendant guilty of conversion as a matter of law after driving bus that came rightfully into his possession 2000 miles over a period of five weeks).  In this case:

- the "temporary use" by Koch of the equipment was for ten months, 29,000,000 chickens, and just until Koch's business convenience was to remove the equipment.  *See GE Capital's Response*, ¶ 2.

- Koch's asserted "willing[ness] to surrender the Deboner at any time" is a concoction, when the undisputed record shows that Koch's first expression of willingness to surrender the equipment came on February 14, 2007, and then only on the condition that Koch receive a general release.

More importantly, by the time conditions for return of the Deboning Equipment even became an issue, Koch's use had been substantial and continuous for ten months.

Koch further argues that GE Capital's conversion arguments are "nonsensical" because GE Capital "would inevitably have a conversion claim . . . no matter what Koch had done." *Opposition,* pp. 16-17. In reality, of course, Koch's alternative would have been obvious to any businessman -- to tell GE Capital up front that it needed to use the equipment for ten months until new equipment arrived to continue production and then ask what the price for that might be. Instead, Koch cooked up an utterly specious claim of ownership based on the "fixture" theory, used the equipment as its own and as it pleased, and figured that a big institution of "renowned reputation" would just back down in the face of litigation, take the pieces out of the parking lot, and call it a day. Koch dissembles in its vehement characterization of itself as a hapless victim.

### 3.    GE Capital's Evidence of Value as of the Date of the Conversion is Uncontested.

It is well-settled under Alabama law that the appropriate measure of damages with regard to a conversion claim is the value of the equipment at the time of the conversion. *See, e.g., Charter Hosp. of Mobile v. Weinberg,* 558 So. 2d 909, 912 (Ala. 1990) (allowing damages in the amount of the value of the property at the time of conversion, or up until the time of trial, whichever is greater, plus 6% interest from the date of the conversion to the date of the trial). In the instant case, GE Capital's properly designated expert – Robert Breakstone – offers the only evidence of the value of the equipment at the time of the conversion.

Koch's designated expert, David Dalfonso, falls short by offering opinions only as to the value of the equipment as of October 2007 – about a year and a half after the date of the

conversion.[3]  The time for Mr. Dalfonso to offer new opinions has long since passed.  *See*

*Uniform Scheduling Order,* filed on July 17, 2007 (Doc. No. 14), Section 8.

Recognizing the deficiencies in its evidence, Koch tries to circumvent this shortcoming

by offering the testimony of its own Senior Vice President, Wayne Jones.  In its Opposition,

Koch alleges that the testimony of Mr. Jones was that, "the Deboner's value was about 25 to 35

cents on the dollar of the capital cost of the Deboner.  This means that the value of the Deboner

in early 2006 was between approximately $202,000 and $283,735, based on the original

capitalized cost of $810,672.50." *Opposition,* ¶ 28, p. 10 (internal citations omitted).

This is a misrepresentation of Mr. Jones's testimony.  In reality, Mr. Jones testified that

he had no knowledge of the value of the equipment at the time of the conversion:

> Q:  Do you, yourself, have any knowledge with respect to the value of the
>      deboner equipment at the time that Koch Foods assumed ownership of the
>      facility in 2006?
>
> A:  No.

*Jones Dep. Transcript,* 37:21-38:2, a copy of which is attached to the Opposition (Doc. No. 67)

as Exhibit 22.  Mr. Jones's opinion of the value of the equipment, as included in the Opposition,

relates to the value of the equipment <u>as of the date of his deposition</u>, November 28, 2007:

> Q:  Do you have any knowledge of its value <u>today</u>?
>
> A:  Not from a professional.
>
> Q:  Some other way though?
>
> A:  Just an opinion.

---

[3] Koch is unable to manufacture any evidence to rebut Mr. Breakstone's established appraisal value.  In its original Opposition, Koch misstated the evidence provided by Mr. Dalfonso, stating that he provided an appraisal of the equipment "In Place as of Day 1 Year 1" which was less than that established by Mr. Breakstone.  *Opposition,* ¶ 27.  Upon demand and request by counsel for GE Capital, Koch withdrew this misstatement, filing the Amendment to Koch Food's Brief and Evidentiary Materials in Opposition to GECC's Motion for Summary Judgment, in which Koch now concedes that Mr. Dalfonso's appraisals are effective as of October 2007 – roughly eighteen months after the conversion occurred.  *Opposition,* ¶ 27.

Q: What would that be?

A: 25 to 35 cents on the dollar.

Q: The dollar being what, the capital cost?

A: The dollar of the purchase price.

*Jones Dep. Transcript* (Doc. No. 67, Ex. 22), 38:3-10 (emphasis added). Mr. Jones went on to acknowledge that use of the equipment caused it to lose value. *See Jones Dep. Transcript* (Doc. No. 67, Ex. 22), 38:13-15. The last may not be pertinent as to the value of the equipment as of the date it was converted, but certainly is pertinent to Koch's assertion that it was doing GE Capital a favor by using the equipment. *See, e.g., Opposition*, ¶ 19. Consequently, in contrast to Koch's assertions in its Opposition, Mr. Jones testified that, as of November 28, 2007, at a time when the Deboning Equipment was sitting in Koch's parking lot and after Koch had devalued the Deboning Equipment by using the same for approximately ten months, the Deboning Equipment was worth between $202,000 and $283,735.[4]

Similarly, the Expert Report of David Dalfonso of Rosen Systems, Inc. for Schiff Hardin LLP in the Matter of Koch Foods of Alabama, LLC v. General Electric Capital Corporation (the "Dalfonso Expert Report") provides that the Fair Market Value In Place for the appraised equipment was effective <u>as of the date of his inspection</u>, October 19, 2007. *Dalfonso Expert Report*, p. 2, a copy of which is attached to the GE Capital's Memorandum (Doc. No. 45) as Exhibit R.

With respect to the Dalfonso testimony, in a letter to Koch's counsel on October 30, 2007, a copy of which is attached hereto as Exhibit W, Mr. Dalfonso acknowledges that:

---

[4] The testimony of Michael Leonard cited by Koch is also misleading. Koch notes that Mr. Leonard originally paid $25,000 for the Spiral Freezer when he purchased the Spiral Freezer before selling it to Sylvest. *Opposition*, ¶ 29. It does not, however, state that Mr. Leonard then sold the Spiral Freezer to Sylvest, including delivery and installation, to Sylvest for $430,000. *Leonard Dep. Transcript*, 9:18-21, a copy of which is attached hereto as Exhibit X.

> The Fair Market Value In Place values assume the equipment will continue to be used at its current location. It adds value for transportation and installation. The fact that the deboning line has been dismantled limits its additional value under this concept.

*See Letter to M. Xu from D. Dalfonso* (Ex. W), October 30, 2007, paragraph 4. For these reasons, Koch has failed to offer any testimony regarding the value of the equipment at the time of the conversion. The actual testimony of both Mr. Jones and Mr. Dalfonso relates to the value of the equipment in late 2007, after the Deboning Equipment had been removed from the Facility, after Koch's extensive use of the Deboning Equipment, and after the exposure of the same to the elements for six months. It is unsurprising, therefore, that variations between the testimony of Mr. Breakstone and Mssrs. Dalfonso and Jones exist, but this simply buttresses the fact that the testimony of the latter is not probative of value on the date of conversion, leaving Mr. Breakstone's testimony unrebutted.[5]

### 4.    The Spiral Freezer and the Deboning Equipment are Not Fixtures.

Koch declares that GE Capital "was neither the tenant nor the landlord of the Facility though, and thus cannot rely on the trade-fixture exception." *Opposition*, p. 22. This is patently false and made up of whole cloth. In *Moco Inc. v. Gaines*, Moco, Inc. sought return of gas pumps and tanks it had installed at a mini mart and paid for. *Moco Inc. v. Gaines, Moco, Inc.,*

---

[5] In addition, even if Mr. Jones's testimony related to the appropriate time frame, that opinion testimony should be stricken from Koch's Response based on Koch's failure to comply with Section 8 of the Uniform Scheduling Order (Doc. No. 14), which provides the procedural requirements applicable to expert or opinion testimony in the current proceeding. In the Opposition, Koch repeatedly asserts that Mr. Jones conducted a "valuation" of the equipment. *See Opposition*, p. 17 ("based on the proximity of the valuations conducted by . . . Wayne Jones."), pp. 18-19 (noting that the "valuation" of Wayne Jones "using the Fair Market Value- Remove approach" is $202,000), p. 19 ("Mr. Jones's testimony that [the Deboning Equipment] was worth 25 to 35 cents on the dollar with the dollar referring to the purchase price"). However, the sole disclosure made by Koch to GE Capital regarding Mr. Jones was in Koch Food's Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1), and stated that Mr. Jones has or may have "information relating to the installation, the use, and the operation of the equipment at issue." *See Koch's Initial Disclosures*, p. 2, a copy of which is attached hereto as Exhibit Y. By failing to disclose Mr. Jones as an expert, Koch is barred from attempting to use his testimony as expert testimony.

484 So. 2d 470, 474 (Ala. Civ. App. 1985). The court found in favor of *Moco*, and against the successors in interest to the original tenant and the original landlord, and extended the "trade fixture doctrine" to "licensees, tenants, or tenants-at-will." *Id.* Here, Koch is a successor to either the landlord or the tenant of the Facility with full knowledge of GE Capital's ownership of the equipment. The Spiral Freezer and the Deboning Equipment are unquestionably trade fixtures, and Koch's standing argument simply finds no basis in law. There being no law to support Koch's position, Koch cites none.

This aside, GE Capital's conversion claim is not premised solely on the characterization of the Deboning Equipment and the Spiral Freezer as trade fixtures. Under Alabama law, it is well settled that:

> A lessor of chattels, intended by both the lessor and lessee for annexation to the freehold, but with an agreement for return of the chattels to the lessor at the termination of the lease agreement, the chattels being annexed to the freehold, as was contemplated, can assert and maintain his title against a subsequent bona fide purchaser of the freehold, upon a present consideration, without notice of the right and title of the lessor.

*Mobile Cab and Baggage Co. Inc. v. The Texas Co.,* 261 Ala. 242, 74 So. 2d 498 (1954). In this way, despite Koch's unsupported claims to the contrary, GE Capital owned the Spiral Freezer and the Deboning Equipment prior to the sale of the Facility to Koch, and owned the Spiral Freezer and the Deboning Equipment after the sale of the Facility to Koch. Koch's claims of ownership are unsupportable under any applicable law.

Finally, Koch's catch-all argument is that "the facts clearly demonstrate that both Sylvest and GECC intended and knew that the Equipment would and did become fixtures." *Opposition,* p. 26. In support, Koch advances: (a) a written contract between Sylvest and GE Capital which provided exactly the opposite; (b) the fact that GE Capital concluded that the equipment was not fixtures, and did not make a fixture filing; and (c) another contract, the Facility Lease, to which

GE Capital was not a party.[6]  On these points, as on all the others, this Court must determine whether any finder of fact could rationally conclude that the mouse in the courtroom is, in fact, an elephant.

   5.    **GE Capital's Conversion Claim Extends to the Spiral Freezer.**

Finally, Koch argues that, despite its Chief Financial Officer's testimony that Koch has asserted ownership of the Spiral Freezer since May 2006, GE Capital's conversion claim should be confined to the Deboning Equipment because the Spiral Freezer is not referenced in GE Capital's Counterclaim.  This argument ignores the well-established rule in federal court that the pleadings shall be deemed to conform to the proofs.  *See FED. R. CIV. P.* 15(b).

## III.  CONCLUSION

For the reasons stated herein, in GE Capital's Summary Judgment Motion, GE Capital's Memorandum, and GE Capital's Response, the Court should grant summary judgment in GE Capital's favor.  The only disputed facts that Koch has been able to allege are those that have no impact on the outcome of the proceeding.  As such, summary judgment is appropriate.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.").

---

[6] On the point of the Facility Lease to which GE Capital was not a party, Koch also ignores established Alabama law which provides that "[a] tenant can remove trade fixtures at the end of a lease term even when the lease states that improvements and fixtures are not to be removed."  *LaFarge Building Materials, Inc. v. Stribling*, 880 So. 2d 415, 419 (2003) (provisions of a lease which indicate that fixtures can not be removed do not apply to trade fixtures) (emphasis in original).

Dated:  January 11, 2008.                    Respectfully submitted,


                                       By:    /s/ Rusha C. Smith
                                              Attorney for General Electric Capital
                                              Corporation

OF COUNSEL:
Rusha C. Smith
Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

OF COUNSEL:
Alexander Terras
Timothy S. Harris
Reed Smith Sachnoff & Weaver
10 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400

### CERTIFICATE OF SERVICE

        I hereby certify that on January 11, 2008, I electronically filed the foregoing with the
Clerk of the Court using the CM/ECF system, which will send notification of such filing to the
following:

        Thomas G. Mancuso, Esq.
        Haskell Slaughter Young & Gallion, LLC
        305 South Lawrence Street
        Montgomery, AL  36103-4660

        Eugene J. Geekie, Jr., Esq.
        Mike Xu, Esq.
        Schiff Hardin LLP
        6600 Sears Tower
        Chicago IL 60606


                                              /s/ Rusha C. Smith
                                              COUNSEL

# EXHIBIT W



**R Rosen Systems, Inc.**

17744 Preston Road, Suite 100
Dallas, Texas 75252-5758
Office: 972-248-2266
800-527-3134
Fax: 972-248-6667
http://www.rosensys.com

October 30, 2007

Mr. Mike Zhiyuan Xu
Schiff Hardin, LLP
6600 Sears Tower
Chicago, IL 60606

      Re:    Selected Assets of Koch Foods

Dear Mr. Xu,

      This letter will serve as an addendum to the machinery and equipment appraisal of selected assets of the above referenced company recently performed by Rosen Systems, Inc. The values presented in the appraisal report are an objective opinion of values based on market research, sales comparisons (where possible) and the current condition of the assets under appraisement. We reviewed trade publications and conferred with industry professionals during the course of our research.

      The chicken breast deboning line is currently disassembled and stored in the Koch Foods yard in Montgomery, Alabama. The spiral freezer is currently partially installed inside the company's plant. It lacks all the necessary piping to the ammonia compressors and the related electrics. The spiral freezer has never been in operation according to company personnel. The values presented in the report are based on the current status of these assets.

      According to the same company personnel the chicken breast deboning line was purchased new and installed in late 2005. It remained in operation until May 2007, when it was dismantled and stored in the yard. We valued this as a complete line as it is our opinion that is how it would be sold to maximize its value.

      The Fair Market Value In Place values assume the equipment will continue to be used at its current location. It adds value for transportation and installation. The fact that the deboning line has been dismantled limits its additional value under this concept. The Fair Market Value assumes that the equipment will be dismantled and transported to another location and is valued accordingly.

      In addition to the work I performed in calculating the values, the appraisal was reviewed by Michael Rosen, President of Rosen Systems, Inc. and a past president of the AMEA. Our firm also conducts public auction sales and liquidations of many types of machinery and equipment in various industries including food processing.

For further information about this appraisal, please read carefully the appraisal report, particularly the Statement of Limiting Conditions, Definitions and Qualifications pages. If you have any further questions, please do not hesitate to call me.

Thank you for the opportunity to be of service in this matter.

Respectfully submitted,

ROSEN SYSTEMS INC.

David A. Dalfonso, CEA
Vice President

# EXHIBIT X

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE MIDDLE DISTRICT OF ALABAMA
 2

 3
        KOCH FOODS OF ALABAMA, LLC,          )
 4      an Alabama Limited Liability         )
        company,                             )
 5                                           )
                     Plaintiff and           )
 6                   Counterclaim-defendant, )
                                             )
 7              vs.                          )
                                             )  CASE NO.:
 8                                           )  07-cv-522-MHT
        GENERAL ELECTRIC CAPITAL             )
 9      CORPORATION, a Delaware              )
        corporation,                         )
10                                           )
                     Defendant and           )
11                   Counterclaim-plaintiff. )

12                          - - -

13

14              Deposition of MICHAEL T. LEONARD, taken

15      on behalf of the Plaintiff and Counterclaim-

16      Defendant, pursuant to the stipulations agreed

17      to herein, before Steve S. Huseby, Registered

18      Professional Reporter and Notary Public, at

19      Schiff Hardin, LLP, One Atlantic Center, Suite

20      2300, 1201 West Peachtree Street, Atlanta,

21      Georgia, on the 3rd day of January, 2008,

22      commencing at the hour of 10:03 a.m.

23

24

25
```

Koch Foods of Alabama, LLC v. General Electric Capital Corporation
Michael T. Leonard

07-cv-522-MHT
January 3, 2008

Page 9

```
 1    GE 503.

 2         A.    Okay, I've got it.

 3         Q.    Can you identify that document for me,

 4    Mr. Leonard?

 5         A.    Yes, that's my document.

 6         Q.    When you say it's your document, is

 7    this the proposal that you sent to Sylvest

 8    Farms for the refurbished freezer?

 9         A.    That's correct.

10         Q.    And is this then the proposal

11    regarding the freezer that you had repurchased

12    from -- or purchased from Brakebush for

13    $25,000?

14         A.    That's correct.

15         Q.    And if you turn to the third page

16    that's marked GE 0501.

17         A.    Okay.

18         Q.    I see a price total with all options

19    of $430,000.  Is that the price that the

20    freezer was then sold to Sylvest Farms for?

21         A.    That's correct.

22         Q.    And that seems to be a significant

23    price above and beyond what you had paid for

24    it.  Can you describe for me what went into

25    the price sold to Sylvest Farms that added or
```

# EXHIBIT Y

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| KOCH FOODS OF ALABMA, LLC, An Alabama Limited Liability company | ) ) ) | Case No. 07-cv-522-MHT |
| Plaintiff and Counterclaim-defendant, | ) ) ) | Honorable Myron H. Thompson |
| v. | ) ) | Honorable Terry F. Moorer |
| GENERAL ELECTRIC CAPITAL CORPORATION, A Delaware corporation, | ) ) ) ) ) | |
| Defendant and Counterclaim-plaintiff. | ) | |

## KOCH FOODS' INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Plaintiff and Counterclaim-defendant Koch Foods of Alabama LLC ("Koch Foods") discloses the following to Defendant and Counterclaim-plaintiff General Electric Capital Corporation ("GE Capital"):

## GENERAL LIMITATIONS AND EXCEPTIONS

1.  This initial disclosure is made upon a good faith review of information reasonably available to Koch Foods at this time and address claims currently asserted in this action. Koch Foods reserves the right to make subsequent disclosures in the course of discovery and/or asserts any applicable objection to the disclosure of any such additional information or documents.

2.  Koch Foods will withhold information protected from disclosure by any applicable privilege, including without limitation, the attorney-client privilege and/or work-product immunity doctrine.

3.    Koch Foods, in making these initial disclosures, does not waive any objections it may later has to discovery propounded by GE Capital based on relevance, overbreadth, burdensomeness, materiality, competence, or other grounds.

4.    Koch Foods, in making these initial disclosures, does not consent to, or waives any objection to, any attempt by GE Capital to contact the employees of the corporate defendants.  Such contacts must be made through undersigned counsel.

## INITIAL DISCLOSURES

### A.    Individuals Possessing Discoverable Information

Pursuant to Fed. R. Civ. P. 26(a)(1)(A), set forth below are individuals who may have discoverable information relevant to the issues raised in Koch Foods' Complaint ("Complaint") and its Answer ("Answer") to GE Capital's Counterclaim or that may be relied upon or introduced into evidence:

| Name | Subjects of Possible Discoverable Information |
| --- | --- |
| Mark Kaminsky<br>Wayne Jones<br>Gary Davis<br>Lyman Campbell<br>Koch Foods, Inc.<br><br>c/o Eugene J. Geekie, Jr., Esq.<br>Schiff Hardin LLP<br>6600 Sears Tower<br>Chicago, Illinois 60606<br>(312) 258-5500 | Mr. Kaminsky has or may have information relating to the purchase of all the assets of Sylvest Farms, the interactions with GE Capital, the equipment, the lease, and the lawsuit.<br><br>Mr. Jones, Mr. Davis, and Mr. Campbell have or may have information relating to the installation, the use, and the operation of the equipment at issue. |
| Dean Falk,<br>a former Sylvest Farms employee<br>(address unknown) | Mr. Falk has or may have information relating to the equipment and the lease. |

Koch Foods reserves the right to supplement the foregoing list as additional individuals with specific knowledge are identified.

**B.    Documents, Data Compilations and Tangible Things**

Pursuant to Fed. R. Civ. P. 26(a)(1)(B), listed below are descriptions, by category of documents, data compilations and tangible things in the possession, custody or control of Koch Foods that may be relevant to the issues raised in the Complaint or the Answer or may be relied upon or introduced into evidence:

To the extent they exist, all hard copy or electronic documents in Koch Foods' possession concerning any of Koch Foods' interactions with Sylvest Farms regarding the Equipment.

To the extent they exist, all hard copy or electronic documents in Koch Foods' possession concerning any of Koch Foods' interactions with GE Capital regarding the Equipment.

Koch Foods is gathering these documents and will produce them when such process is complete. Koch Foods reserves the right to supplement the foregoing list if additional relevant documents are identified.

**C.    Computation of Damages**

Koch Foods is seeking either a declaratory judgment that Koch Foods owns the Equipment or has a possessory lien on the equipment, or damages based on unjust enrichment for a fair value of costs incurred in storing the Equipment. Pursuant to Fed. R. Civ. P. 26(a)(1)(C), Koch Foods states that the calculation of the storage costs is based on $100 per day from May 30, 2006, when Koch Foods purchased all the assets of Sylvest Farms to present. The total amount of the storage costs based on this calculation is approximately $42,600 as of August 1, 2007.

**D.    Insurance Agreement**

Koch Foods is not aware of any insurance coverage for part or all of any judgment that may be rendered.

Dated:
     August 4 , 2007

Respectfully submitted,

Koch Foods of Alabama LLC

By: /s/ _____

    Eugene J. Geekie, Jr. (ARDC #6195060)
    Zhiyuan Xu (ARDC #6292094)
    SCHIFF HARDIN LLP
    6600 Sears Tower
    Chicago, Illinois 60606
    (312) 258-5500 (telephone)
    (312) 258-5600 (facsimile)

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that copies of *Koch Foods' Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1)* were served by e-mail and were mailed, first class U.S. mail, postage prepaid, this 0th day of August, 2007 to the following:

Alexander Terras
Timothy Scott Harris
Reed Smith Sachnoff & Weaver
10 South Wacker Drive
Chicago, IL 60606
312-207-1000
Fax: 312-207-6400
Email: tharris@reedsmith.com

*Counsel For Defendant*

Rusha Christina Smith
Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
205-521-8010
Fax: 205-488-6010
Email: rsmith@bradleyarant.com

*Counsel For Defendant*

/s/ _____
      Zhiyuan Xu

CH2\ 1982767.2

-5-