IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

KOCH FOODS OF ALABAMA LLC,    )
an Alabama Limited            )
Liability Co.,                )
                              )
        Plaintiff,            )
                              )        CIVIL ACTION NO.
        v.                    )        2:07cv522-MHT
                              )          (WO)
GENERAL ELECTRIC CAPITAL      )
CORPORATION, a Delaware       )
Corporation,                  )
                              )
        Defendant.            )

OPINION AND ORDER

Plaintiff Koch Foods of Alabama, LLC (Koch Foods)
brought this lawsuit, concerning the ownership of certain
poultry processing equipment, against defendant General
Electric Capital Corporation (GE Capital).  GE Capital,
in removing this suit from state court, invoked this
court's diversity-of-citizenship jurisdiction under 28
U.S.C. § 1332.  The case is currently before the court on
a discovery dispute arising from Koch Foods' inadvertent
disclosure of a privileged document.  The United States
Magistrate Judge granted Koch Foods' motion for a

protective order, and GE Capital filed objections.  For the reasons that follow, GE Capital's objections will be overruled.

## I. STANDARD OF REVIEW

A district court reviewing a magistrate judge's discovery order is, in general, limited by statute and rule to reversing that order only if it is "clearly erroneous or contrary to law," 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  Put another way, in the absence of a legal error, the district court may reverse only if there was an "abuse of discretion" by the magistrate judge.  Cf. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 401 (1990) ("When an appellate court reviews a district court's factual findings, the abuse-of-discretion and clearly erroneous standards are indistinguishable: A court of appeals would be justified in concluding that a district court had abused its

discretion in making a factual finding only if the finding were clearly erroneous.").

## II. FACTS

On September 7, 2007, Koch Foods produced 3,758 pages of documents pursuant to discovery requests. Upon reading the documents, GE Capital discovered, tucked in the middle of a 37-page lease agreement, the second page of a three-page email exchange between the Chief Financial Officer of Koch Foods and Koch Foods' counsel. Koch Foods learned that the email had been produced when GE Capital presented it at the October 19, 2007, deposition of Koch Foods' Chief Financial Officer.

Koch Foods immediately objected that the document was privileged and should be returned, contending that the two brief emails in the document had both been specifically identified in its privilege log. Additionally, Koch Foods' counsel avers that he did not intend to produce the document, did not see it despite

several reviews of the discovery package, and would have removed it had he seen it.  All other non-privileged emails in the produced documents were bundled together and separated from the lease.

The United States Magistrate Judge granted Koch Foods' motion for a protective order.  GE Capital contests the order on five grounds, four of which concern the proper standard for inadvertent disclosure under Alabama law.  The fifth ground is that, even if the order adopted the correct standard for inadvertent disclosure, Koch Foods nevertheless has failed to establish that it did not waive the privilege.


## III. DISCUSSION

### A. Debate Over Proper Standard for Inadvertent Waiver of Attorney-Client Privilege

The parties do not dispute that the document is privileged.  The question concerns solely the proper standard for determining whether inadvertent waiver of attorney-client privilege has occurred.  Because the

4

court has diversity jurisdiction, it must apply Alabama substantive law and federal procedural law, see Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), and the substantive nature of privilege therefore requires that Alabama law determine the question of unintentional waiver of attorney-client privilege.  See Somer v. Johnson, 704 F.2d 1473, 1479 (11th Cir. 1983) (state statute protecting certain records from discovery or introduction into evidence is substantive, not procedural).  Alabama law, however, does not clearly specify this standard.  It is therefore useful to map out the existing legal landscape.

In considering the contentious issue of inadvertent waiver, three general lines of authority have emerged.[1]

---

1.  Although the instant case is controlled by state law, federal cases are quoted because "the bulk of the debate" on inadvertent waiver of privilege "has occurred in federal courts."  John T. Hundley, "Inadvertent Waiver" of Evidentiary Privileges: Can Reformulating the Issue Lead to More Sensible Decisions? 19 S. Ill. U. L.J. 263, 268-29 (1995).  It should also be noted that many cases consider whether an attorney's inadvertent disclosure waives the client's privilege, but that (continued...)

A traditional, strict-liability approach holds a party responsible for maintaining the confidentiality of its information and, as such, that party will pay the price of waiver if it accidentally discloses a privileged document.  See, e.g., In re Sealed Case, 877 F.2d 976, 980 (D.C. Cir. 1989) ("The courts will grant no greater protection to those who assert the privilege than their own precautions warrant."); FDIC v. Singh, 140 F.R.D. 252, 253 (D. Me. 1992) (Carter, J.) ("One cannot 'unring' a bell ... [A]lthough Plaintiff produced the memorandum inadvertently, it waived its privilege.").

The most lenient standard takes an intent-based approach, treating waiver of attorney-client privilege like the relinquishment of other known rights, such that a "waiver" cannot possibly be "inadvertent." See, e.g., Mendenhall v. Barber-Greene Co., 531 F.Supp. 951, 954 (N.D. Ill. 1982) (Shadur, J.) ("The better-reasoned rule is that mere inadvertent production does not waive the

---

1.  (...continued)
question is not at issue here.

6

privilege."); <u>Conn. Mutual Life Ins. Co. v. Shields</u>, 18 F.R.D. 448 (S.D.N.Y. 1955) (Dimock, J.) (documents are privileged where "there is no evidence that defendants intended to waive any privilege").

Between these two extremes lies a balancing-test approach that considers the totality of the circumstances surrounding the disclosure rather than applying a per se waiver rule. One oft-cited case for this position is <u>Alldread v. City of Grenada</u>, 988 F.2d 1425 (5th Cir. 1993), which upheld the use of a five-part test considering "(1) the reasonableness of precautions taken to prevent disclosure; (2) the amount of time taken to remedy the error; (3) the scope of discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness." <u>Id</u>. at 1433. The Fifth Circuit Court of Appeals explained:

> "In our view, an analysis which permits the court to consider the circumstances surrounding a disclosure on a case-by-case basis is preferable to a per se rule of waiver. This analysis serves the purpose of the attorney

> client privilege, the protection of communications which the client fully intended would remain confidential, yet at the same time will not relieve those claiming the privilege of the consequences of their carelessness if the circumstances surrounding the disclosure do not clearly demonstrate that continued protection is warranted."

Id. at 1434. In some instances, the intent-based approach and the totality-of-the-circumstances approach appear to merge. See, e.g., Stratagem Dev. Corp. v. Heron Intern. N.V., 153 F.R.D. 535, 544 (S.D.N.Y. 1994) (Kram, J.) (stating that a waiver "must be intentional ... to be effective," then considering precautions taken to avoid disclosure).


B. Alabama Standard for Inadvertent Waiver

Alabama law does not fall neatly into any of these categories. Neither the rules of evidence, case law, nor bar opinions offer any decisive resolution.

8

## 1. Ala. R. Evid. 510

First, the relevant rule of evidence, Ala. R. Evid. 510, offers no meaningful guidance.  It states that a person waives the privilege if he "voluntarily discloses or consents to disclosure of any significant part of the privileged matter," but it does not explicate the meaning of "voluntary," which can assume the substantially different meanings of "intentional" or "uncoerced."[2] Black's Law Dictionary (8th ed. 2004).  A definition meaning "intentional" would correspond with the intent-based approach, while "uncoerced" suggests the strict

_____

2.  GE Capital's statement that Rule 510 "focus[es] on whether the <u>act of disclosure</u> was voluntary, not whether the disclosing party intended his or her act of disclosure to effect a waiver of any otherwise applicable privilege," Def.'s Supp. Br. (Doc. No. 29), at 5, fails to resolve the definitional question.  GE Capital's apparent conclusion that waiver should be analyzed with reference to coercion, rather than intention, does not make it so.  It is therefore not possible to conclude, as GE Capital does from the affidavit of Koch Foods' attorney, Zhiyuan Xu, that "Koch's disclosure here was plainly voluntary."  <u>Id</u>.  Xu, apparently using an intent-based approach, plainly states "I never intended to produce [the document] and would have removed it had I seen it in the document production before delivery."  Pl.'s Ex. D (Doc. No. 22), at 3.

approach.  GE Capital, presumably, defines "voluntary" as "uncoerced," while Koch Foods defines it as "intentional."  No Alabama cases have interpreted this rule with reference to the three general approaches to inadvertent waiver of attorney-client privilege, so the rule cannot provide definitive guidance.

It should be noted, however, that, in at least one State, the word "voluntary" in a privilege-waiver statute has been construed as referring to intent, not coercion. It therefore forbids the strict approach to waiver, in that the idea that inadvertent production can produce waiver is the "antithesis" of the principle that "the waiver of a privilege imports the intentional relinquishment of a known right." Abamar Housing & Dev., Inc. v. Lisa Daly Lady Decor, Inc., 698 So.2d 276, 278 (Fla. Dist. Ct. App. 1997).  The Abamar court then applied the totality-of-the-circumstances test, which it deemed the majority rule, and not the pure intent-based approach.  Id. at 279.  The Florida Supreme Court

recently upheld the application of the totality-of-the-circumstances test in <u>Lightbourne v. McCollum</u>, 969 So.2d 326 (Fla. 2007) (page numbers unavailable).

### 2. Alabama case law

Alabama cases are unhelpful in determining the proper state standard for inadvertent disclosure. The primary two Alabama cases on the subject, <u>Bassett v. Newton</u>, 658 So.2d 398 (Ala. 1995), and <u>Ex parte Bettis</u>, 549 So.2d 23 (Ala. 1989) (Maddox, J., dissenting in part), have both been described as "deal[ing] with the inadvertent-disclosure issue curtly or in ways that do not fit any of the [usual] methods of analysis." John T. Hundley, Annotation, <u>Waiver of Evidentiary Privilege by Inadvertent Disclosure--State Law</u>, 51 A.L.R. 5th 603 (1997).

While <u>Bassett</u> does "directly address voluntary disclosure and waiver," Def.'s Objections to Order (Doc. No. 33), at 1, it does so in circumstances that are

factually distinct from this case. In Bassett, a state representative sued the Legislative Reference Service, seeking copies of a proposed bill after the bill's sponsor had already published notice of it. The Legislative Reference Service refused the request, "claiming that [it] has an attorney-client relationship with legislators and that release of the bill's details would violate the attorney-client privilege." 658 So.2d at 400. The Alabama Supreme Court found attorney-client relationship that would create privilege, as the Legal Reference Service issued no legal advice; instead, it found only a requirement of confidentiality. Id. at 401. See also Ex parte Taylor Coal Co., Inc., 401 So.2d 1, 8 (Ala. 1981) ("A substantial difference in the law is made between the attorney's ethical responsibility with reference to disclosure of confidential information and his privilege not to testify in court concerning his client's secrets."). Moreover, the court in Bassett had no doubt that the "client," the bill's sponsor, "did

12

decide to waive the requirement of confidentiality," as he made statements that were "intended to be communicated to third persons."  658 So.2d at 401.

Despite GE Capital's contentions, to the extent that Bassett suggests support for any of the three main approaches, it seems to lean not toward the strict approach urged by GE Capital but toward the more lenient, intent-based approach or the totality-of-the-circumstances approach.  Crucially, the court noted that "[t]raditionally, waiver is described as an intentional relinquishment of a known right."  Id. at 402.  By framing waiver of attorney-client privilege with reference to waiver of other rights, the court implicitly aligned itself with the camp holding that waiver, by definition, cannot be accidental.  See Mendenhall, 531 F.Supp. at 955 ("We are taught from first year law school that waiver imports 'the intentional relinquishment or abandonment of a known right.'").  GE Capital emphasizes Bassett's statements regarding how "voluntary disclosure"

bars an assertion of privilege but fails to consider that
<u>Bassett</u>, unlike the instant case, concerns a disclosure
that was undeniably voluntary and intended.  Def.'s
Objections to Order (Doc. No. 33), at 3.  GE Capital
seems to assume that the opposite of "voluntary" is
"coerced,"--i.e. Koch Foods' disclosure was voluntary
because it was not compelled--when the proper dichotomy
is between "voluntary" and "unintended."  The word does
have both meanings, but in the context of <u>Bassett</u> it
clearly refers to intention, even if the court declined
to announce explicitly its allegiance to the intent-based
approach.[3]  <u>See</u> 658 So.2d at 401 ("We have held that the
attorney-client privilege does not cover statements that
are <u>intended</u> to be communicated to third persons.  That
<u>intent</u> divests from the statement any confidential
status.") (emphasis added).

---

        3.  Black's Law Dictionary defines "voluntary" as "1.
Done by design or intention <voluntary act>" and "2.
Unconstrained by interference; not impelled by outside
influence <voluntary statement>."

Bassett offers only a hint of the Alabama Supreme Court's preferred approach to inadvertent disclosure, but Ex parte Bettis offers even less. The only written opinion in the case is the dissent, which neither has precedential value, nor is on point as to inadvertent disclosure. Justice Maddox argues that the trial court erred in allowing a certain document to come into evidence against some of the defendants and that mandamus therefore should have been granted. 549 So.2d at 23. He lists the defendants' multiple reasons for why the relevant document should be inadmissible--one of which is "that the inadvertent disclosure of the letter did not work as a waiver of the right to claim [attorney-client] privilege"--after which he simply states "I agree with the arguments of the defendants." Id. at 26. But when he continues on to a more in-depth analysis, he discusses only the work-product doctrine and concludes that the letter is protected as "the mental impressions and legal opinions of the attorneys involved," which are protected

15

under Ala. R. Civ. P. 26(b)(3) and not by rules of privilege.  <u>Id</u>.

### 3. Opinions of the Alabama State Bar and American Bar Association

Finally, the last authorities relied on by the parties, two opinions from the Alabama State Bar and two from the American Bar Association (ABA), all fail to direct the inquiry into the correct standard for inadvertent waiver of attorney-client privilege.  Indeed, not one of the four opinions directly turns on the issue of waiver.  Instead, they concern the ethical duties of attorneys upon receipt of a document inadvertently sent by opposing counsel.  Both Alabama opinions, dated April 8, 1996, and April 12, 1996, discuss a 1992 ABA opinion recommending that lawyers in this situation should "refrain from examining the materials," "notify the sending lawyer of the receipt of the materials," and "abide by the instructions of the sending lawyer."  The ABA opinion also includes a statement regarding waiver

16

that endorses the totality-of-the-circumstances approach, as described in <u>Hartman v. El Paso Natural Gas Co.</u>, 763 P.2d 1144, 1152 (N.M. 1988), and states that a "review of the relevant cases demonstrates, with few exceptions, an unwillingness to permit mere inadvertence to constitute a waiver." Something more, the ABA opinion continued, "like a failure of counsel to spend any time reviewing the documents to be produced in discovery, is required before a waiver is found."

The April 12 Alabama opinion uses the ABA opinion to conclude that the receiver of an inadvertent fax should destroy it and not report its contents to his client. The April 8 opinion, however, responds to a situation where a party inadvertently provided its adversary with a letter from its attorney among other discovery documents, and the opinion concluded that "there would be no <u>ethical impropriety</u> in your using the document in question to support your client's position." (emphasis added). While GE Capital relies on this opinion's

17

statement of the "obvious" distinction between "the failure of the opposing party to adequately review the documents provided" and "a facsimile transmission inadvertently received by the wrong party," this unexplained distinction (which, incidentally, the court finds bizarre) seems to concern only ethical confidentiality and not waiver. The opinion further confuses confidentiality and waiver by citing to the ABA opinion's statement regarding waiver without noticing that the ABA opinion uses inadvertent waiver of attorney-client privilege only as an analogy to the ethical duty of confidentiality.

The utility of the two Alabama State Bar opinions is further muddled by the ABA's withdrawal of its 1992 opinion in 2005. Notably, the 2005 opinion directly changes only the ethical duties of attorneys who receive inadvertently misdirected documents. It refers to ABA Model Rule of Professional Conduct 4.4(b)'s narrowing of a receiving lawyer's obligations by requiring only that

she notify the sender, therefore relieving her of the obligation to avoid reading the materials and abide by the directions of the sending lawyer.  The 2005 opinion nevertheless undercuts the 1992 opinion's statement about waiver, as it quotes Comment 2 to Rule 4.4, which clarifies that "whether the privileged status of a document has been waived" is "a matter of law beyond the scope of these Rules."  All in all, the court is reluctant to conclude that the four ethical opinions have any bearing on the question of inadvertent waiver of attorney-client privilege.

### 4. Determination and Application of Alabama Standard for Inadvertent Waiver

The United States Magistrate Judge, observing that "the Alabama Supreme Court has not specifically provided a rule relating to the effect of inadvertent disclosure on privileged information," Order (Doc. No. 32), at 4, used the totality-of-the-circumstances approach from Alldread.  In doing so, he reasoned:

19

> "In the case at hand, Koch Foods
> produced approximately 3,758 pages of
> documents in response to GE Capital's
> document requests. It was clear that
> Koch Foods intended to assert the
> privilege as the document at issue is
> listed on the privilege log. There is
> no indication counsel for Koch Foods
> failed to spend <u>any time</u> reviewing the
> documents, and the fact that a single
> piece of paper was inadvertently
> disclosed does not, in the eyes of this
> Court, rise to a failure of the opposing
> party to adequately review the documents
> disclosed. As such, the Court
> determines the privilege has not been
> waived and thus, the document is
> privileged and protected."

<u>Id</u>. This analysis correctly determines that, under the balancing approach, Koch Foods has successfully established that it did not waive attorney-client privilege as to the document at issue.

The Alabama Supreme Court in <u>Bassett</u> appeared to rule out the strict approach to waiver, but it offered no clear guidance as to the choice between the pure intent-based approach and the totality-of-the-circumstances approach. The magistrate judge adopted the totality-of-

the-circumstances approach.  This court agrees with the
magistrate judge.

The totality-of-the-circumstances approach, rather
than a per se intent-based approach, appears to be the
modern trend.  See Abamar, 698 So.2d at 278.  But, more
importantly, the totality-of-the-circumstances approach
allows for a more comprehensive and sensitive assessment
of the often complex and sensitive concerns presented in
inadvertent waivers.  As the Fifth Circuit Court of
Appeals explained in Alldread,  the approach "serves the
purpose of the attorney client privilege, the protection
of communications which the client fully intended would
remain confidential, yet at the same time will not
relieve those claiming the privilege of the consequences
of their carelessness if the circumstances surrounding
the disclosure do not clearly demonstrate that continued
protection is warranted."  988 F.2d at 1434.

This court therefore holds that, if the Alabama
Supreme Court were to confront the issue of inadvertent

21

waiver, it would likely adopt the more comprehensive and sensitive totality-of-the-circumstances analysis; this court further holds that the magistrate judge correctly adopted and applied that approach here.  As such, the magistrate judge's protective order cannot be deemed "clearly erroneous and contrary to the law."  Fed. R. Civ. P. 72(a).

***

For the foregoing reasons, the magistrate judge properly found the document at issue to be privileged, and it is ORDERED that defendant General Electric Capital Corp.'s objections (Doc. No. 33) are overruled.

DONE, this the 17th day of January, 2008.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE