**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| **KOCH FOODS OF ALABAMA, LLC,** ) | |
| **an Alabama Limited Liability Company,** ) | **Case No. 07-cv-522-MHT** |
| ) | |
| Plaintiff and Counterclaim-defendant, ) | |
| ) | Honorable Myron H. Thompson |
| v. ) | |
| ) | Jury Trial Requested |
| GENERAL ELECTRIC CAPITAL ) | |
| CORPORATION, a Delaware corporation, ) | |
| ) | |
| Defendant and Counterclaim-plaintiff**.** ) | |

## ORDER ON PRETRIAL HEARING

A pretrial hearing was held in this case on February 20, 2008, wherein the following proceedings were held and actions taken:

**1.   PARTIES AND TRIAL COUNSEL:**

Appearing at the conference were: Thomas G. Mancuso, Eugene J. Geekie, Jr. and Constance C. Walker for Plaintiff; and Alexander Terras and Rusha C. Smith for Defendant.

The attorneys appearing at trial will be: Eugene J. Geekie, Jr., Jonathan P. Friedland, Thomas G. Mancuso, and Constance C. Walker for Plaintiff; and Alexander Terras, Timothy S. Harris, Ann E. Pille, and Rusha C. Smith for Defendant.

**2.   JURISDICTION AND VENUE:**

Subject matter jurisdiction exists under 28 U.S.C. Section 1332.  Personal jurisdiction and venue are not contested.

**3.   PLEADINGS:**

The following pleadings were allowed:

- Plaintiff's Complaint filed May 25, 2007; and
- Defendant's answer and counterclaim filed June 13, 2007.

No amendments to any pleadings were allowed.

4.     **CONTENTIONS OF THE PARTIES:**

   (a)    **The Plaintiff(s)/Counter-Defendants**

GE Capital entered into an equipment lease with Sylvest Farms, Inc. (the "Equipment Lease") in December, 2005. Sylvest Farms ("Sylvest") filed for protection under the Bankruptcy Code just a few months later in April, 2006. The equipment subject to the equipment lease included deboning lines (the "Deboner"), a spiral freezer (the "Freezer"), and two Ossid shrink-wrap lines (the "Ossid Lines," collectively with the Freezer and Deboner, the "Equipment"). The Equipment was delivered, the Freezer and Deboner were installed, and the Deboner used by Sylvest at its food processing facility located at 4530 Mobile Highway, Montgomery, Alabama (the "Facility").

The Facility was leased to Sylvest by Hodges Bonded Warehouse ("Hodges") pursuant to an August, 2005 facility lease (the "Facility Lease"). The Facility Lease provided that upon termination of the Facility Lease, any improvements, alterations, or modifications of the Facility would be treated as part of the Facility and thus became the property of the Facility's owner.

Sylvest intended to install, and did install, the Freezer and Deboner in a way that would make it difficult and costly for them to be removed. Sylvest did this so that, at the end of the Equipment Lease, Sylvest would be in a strong bargaining position vis a vis GE Capital, thereby gaining ownership of the Equipment at little or no cost. GE Capital failed, in contravention of its own standard practices, to do a fixture filing or to obtain from Hodges a landlord waiver regarding the Equipment. In fact, GE Capital failed to send anyone, contrary to its standard practices, to inspect the Equipment to determine whether or not it was installed at the Facility. As a consequence of these actions by Sylvest and the inaction by GE Capital, the Freezer and the Deboner became

fixtures of the Facility.    On May 26, 2006, Koch purchased substantially all of Sylvest's assets in a bankruptcy sale, including the Facility (after Sylvest exercised its purchase option), but did not assume the Equipment Lease. GE Capital asked Koch for permission to keep the Equipment at the Facility while GE Capital sought to remarket it. Koch agreed to this request to accommodate GE Capital, especially because Koch was using the Deboner**,** a fact which GE Capital was aware of virtually from the date Koch purchased Sylvest's assets.    GE Capital and Koch discussed the possibility of Koch agreeing to acquire the Equipment, but they never came to terms. Koch at all times acted reasonably, including agreeing to return the Ossid Lines to GE Capital so that GE Capital could sell them in late 2006. After GE Capital demanded, in early 2007, that Koch pay seven months of full rent under the Equipment Lease and agree to assume the Equipment Lease- - despite the fact that Koch had returned the Ossid Lines, had not used the Freezer, and had used the Deboner with GEEC's knowledge and consent- - Koch demanded that GE Capital remove the Equipment. GE Capital has refused to comply with that demand. GE Capital, in contrast, has never requested that Koch surrender the Freezer or the Deboner, or that Koch stop using the Deboner.

The reason for GE Capital's behavior is simple. First, the removal, transportation, installation, and other soft costs GE Capital would have to incur to remove the Freezer and Deboner were enormous- - possibly exceeding their value. Second, removed equipment stored in a warehouse would be worth much less and generate much less interest among potential buyers than if the Freezer and Deboner remained installed and operational at the Facility. Third, GE Capital could not find a buyer (or lessee) for the Deboner, at least not at a price it found acceptable

GE Capital in fact abandoned the Freezer and Deboner. And, even if GE Capital's conduct is not properly viewed as abandonment, GE Capital nonetheless benefited from Koch's continued

**3**

insurance, maintenance, and storage of the Freezer and the Deboner, and use of the Deboner, because these actions maintained the value of the Freezer and Deboner. To protect itself, it was at this time Koch demanded that GE Capital remove the Equipment and provide Koch with a release from what Koch believes were extortionate demands of GE Capital After having received no response from GE Capital to its demand that GE Capital remove the Freezer and the Deboner, Koch replaced the Deboner and removed it to its yard in a neat and orderly fashion. If the Court finds that GE Capital continues to own the Deboner, Koch believes that GE Capital's refusal to remove the Deboner, at the very least, constituted trespass and that Koch was therefore entitled to use reasonable force to remove it, and that Koch is not liable for any damage that the removal may have caused the Deboner. GE Capital's counterclaim for conversion is entirely without merit. First, GE Capital did not assert in its counterclaim that Koch converted the Freezer (although it strangely sought summary judgment that the Freezer was converted). Second, GE Capital never instructed Koch to cease using the Deboner, and never asked for possession of the Freezer or Deboner (as opposed to the Ossid Lines, which Koch returned upon request from GE Capital). Thus, Koch's actions were not wrongful. In any event, if the trier of fact needs to determine damages against Koch, the Court should measure damages based on Mr. Dalfonso's (Koch's expert) October 2007 appraisals and disregard Mr. Breakstone's (GE Capital's expert) appraisals. If the trier of fact finds that Koch does not own the Equipment as the fixtures of its Facility and that Koch did not convert the Equipment, GE Capital is liable to Koch for the costs of storing the Equipment for $100.00 per day.

    **(b)**     **The Defendant/Counter-Plaintiff**

On December 29 2005, GE Capital and Sylvest executed the Equipment Lease, pursuant to

which GE Capital leased food processing equipment to Sylvest. Subsequently, Sylvest received and installed - or partially installed - the Deboner and the Freezer at the Facility, which Sylvest leased from Hodges Bonded Warehouse, Inc.. The Equipment Lease provides that the Equipment was to remain the personal property of GE Capital at all times, even though it might be attached to the Facility, and the testimony of Sylvest's former Chief Financial Officer confirms that Sylvest never intended for the Equipment to become fixtures of the Facility.

In April 2006, Sylvest filed a Chapter 11 bankruptcy proceeding, and immediately filed a motion to sell substantially all of its assets to Koch. ~~Before entering into the Asset Purchase Agreement, Koch performed due diligence. As part of this due diligence, Sylvest established a website with an electronic data room. The Equipment Lease was included in the data room, along with other financial statements, contracts, and documents relating to Sylvest's assets and financial obligations.~~

After obtaining approval of the Bankruptcy Court to enter into the Amended Asset Purchase Agreement, Koch purchased certain assets owned by Sylvest, and took possession of the Facility. As part of the sale, Koch also directed Sylvest to reject certain executory contracts and leases, including the Equipment Lease. In August 2006, Koch returned the Ossid Equipment, which had never been installed at the Facility, to GE Capital. Despite rejection of the Equipment Lease, however, Koch did not return the Freezer or the Deboner and instead asserts a claim of ownership over that equipment. Koch's claim of ownership over the Freezer and the Deboner has continued throughout this lawsuit, as attested to by both Koch's Complaint, and by the deposition testimony of the Chief Financial Officer of Koch's parent company and Koch's Rule 30(b)(6) designee. Consistent with its claim of ownership, Koch has paid GE Capital nothing.

Koch suggests it owns the Freezer and the Deboner because they constitute fixtures. Koch is wrong. Both the express language of the Equipment Lease and the manner of installation of the Freezer and the Deboner establish that they are not fixtures. Moreover, Koch knew with certainty at the time it purchased Sylvest's leasehold interest that the Freezer and Deboner were not fixtures.

~~Furthermore, Sylvest specifically desired to lease, and not to own, the Equipment. Sylvest never had any intention to violate the provision of the Equipment Lease which specified that the Equipment would remain GE Capital's personal property, and Sylvest's intent was to honor the terms of the lease for the longevity of the Equipment Lease. Sylvest had an option to purchase the Equipment at the expiration of the Equipment Lease for fair market value, which it never exercised.~~

By unlawfully claiming ownership of the Deboner and the Freezer, Koch has converted them under Alabama law. In addition, Koch admits that it used the Deboner to process well in excess of half a million chickens each week, and that this use continued from May 2006 through April 2007. Indeed, during the transition of the Facility from Sylvest to Koch, the use of the Equipment was ~~seamless, and not a single day of production was missed. Koch's use of the Deboner was continuous from the time that Koch took over the operation of the Facility from Sylvest to the time Koch removed the Deboner from the Facility.~~

~~Koch used the Deboner approximately sixteeen (16) hours a day, five days a week, from May 2006 through April 2007. During the transition of the Facility from Sylvest to Koch, the use of the Equipment was continuous. The Deboner was being used by Koch to process approximately 674,000 chickens a week.~~

As of February 14, 2007, Koch asserted that it would return the Deboner and the Freezer to GE Capital if GE Capital agreed to a mutual release and to indemnify Koch for any damages caused to the plant by GE's removal of the equipment.~~In April 2007, Koch removed the Deboner from the Facility and set it out in the parking lot of the Facility. This was done because Koch had purchased~~

6

~~replacement equipment. GE Capital was given no prior notice that the Deboner was removed, or that the Deboner had been placed in Koch's parking lot. The Freezer remained, and remains, inside the Facility. Koch asserts that its ownership of the Deboner and the Freezer commenced in May 2006.~~ Under the circumstances, no demand for return of the Equipment was required, and any demand made by GE Capital would have been futile.

As such, GE Capital is entitled to damages in an amount equal to the value of the Deboner and the Freezer at the time of conversion, which in this case was May 2006. GE Capital's damages expert, Breakstone, establishes in his report that the value of the Deboner and the Freezer aggregated $1,398,068 as of May 2006. This fact is undisputed, for Koch has chosen not to contest this value by offering any rebuttal evidence of the value of the Freezer and the Deboner as of that date.

With respect to Koch's Complaint – Koch has converted, and now owns, the Freezer and the Deboner. Koch's conversion and assumption of ownership commenced in or around May 2006, and continues to the present day. As such, it follows that GE Capital does not owe Koch any amounts for storage, maintenance, or unjust enrichment.

With respect to GE Capital's Counterclaim – Koch has asserted its claim of ownership despite clear provisions in the Equipment Lease and unequivocal controlling law stating otherwise, and with full knowledge that it was not in fact purchasing any of the Equipment from Sylvest. In so doing it has converted the Freezer and the Deboner, and, pursuant to Alabama law, now owes GE Capital its value as of the May 2006 date of conversion, plus interest and punitive damages as provided under Alabama law.

5.   **STIPULATIONS BY AND BETWEEN THE PARTIES:**

**The parties agreed to the following Stipulation of Facts**:

1. In August 2005, Sylvest, as lessee, and Hodges Bonded Warehouse, as lessor, entered into a non-residential real property lease (the "Facility Lease") for a food processing facility located at 4530 Mobile Highway, Montgomery, Alabama (the "Facility").
2. In December 2005, GE Capital and Sylvest entered into an equipment lease (the "Equipment Lease") for certain equipment. The equipment subject to the Equipment Lease included deboning lines (the "Deboner"), a spiral freezer (the "Freezer"), and two Ossid shrink-wrap lines (the "Ossid Lines," collectively with the Freezer and Deboner, the "Equipment"). The Ossid Lines were never installed at the Facility.
3. The Equipment Lease provided that "[t]he Equipment shall remain [GE Capital's] property unless [Sylvest] purchases the Equipment from [GE Capital] and until such time [Sylvest] shall only have the right to use the Equipment as a lessee.. . . All Equipment shall at all times remain personal property of [GE Capital] even though it may be attached to real property. The Equipment shall not become part of any other property by reason of any installation in, or attachment to, other real or personal property."
4. At the end of the Equipment Lease, if Sylvest desired to purchase the Equipment, then it could either pay the residual value or negotiate a better deal with GE Capital. If Sylvest opted to pay the residual value for the Equipment, ownership would pass. Sylvest never purchased the Equipment.
5. Because of the nature of the Deboner and the Freezer, they had to be attached to the Facility regardless of whether they were leased or not. It is customary to attach equipment like the Freezer and the Deboner to a facility in the manner in which the Freezer and the Deboner were attached.
6. Koch replaced and removed the Deboner from the Facility in April 2007. In order to remove the Deboner, someone had to unweld various parts, cut some parts apart, and unbolt some parts from the floor, which caused damage to the epoxy surface of the floor.
7. The Deboner was removed over the course of two weekends, and no production shifts were impacted. Portions of the epoxy floor covering were repaired after the removal of the Deboner, but there was no damage to the underlying concrete. Koch repaired certain of the holes by patching the epoxy surface, while certain holes over which the replacement equipment was to sit were not repaired. No doors or walls were removed in order to take the Deboner outside.
8. The Freezer was installed, at a cost of $100,000, on a special concrete pad at the Facility that was laid down on top of the existing floor. The Freezer was purchased used.
9. The installation of the Freezer required that stainless steel and welded sheets all the way around the inside of the unit with three feet up the walls and, then, that adhesive be applied to the walls and enclosures.
10. The Freezer is about 16.5 feet tall, 15 feet wide, and 28 feet long.
11. Every time the Freezer is installed at a new location, it requires a new enclosure that costs at least $37,000. Every time a freezer is moved, the enclosures that

**8**

     house them need to be destroyed.
12. On April 18, 2006, Sylvest filed for bankruptcy in the Northern District of Alabama. At the time the bankruptcy was filed, Sylvest did not own, and had never owned, the Facility.
13. Pursuant to an order entered by the Bankruptcy Court on May 26, 2006, approving the Amended Asset Purchase Agreement (the "<u>Asset Purchase Agreement</u>") between Koch and Sylvest, Koch purchased assets of Sylvest. The sale closed on or about May 30, 2006.
14. Under the Asset Purchase Agreement, Koch had the right to designate leases which Sylvest would either reject or assume and assign to Koch. Koch did not direct Sylvest to assume and assign the Equipment Lease. Instead, Koch directed Sylvest to reject the Equipment Lease. The Equipment Lease was rejected in July 2007.
15. After the bankruptcy sale, Koch continued to use and insure the Deboner through April 2007, and continues to insure the Deboner to the present time.
16. On or about August 31, 2007, GE Captial sold the Ossid Lines to Peco Foods and Koch surrendered the Ossid lines to GE Capital.

**EXHIBITS**

**The Parties agreed to the following Jointly Admitted Exhibits**:

1. Complaint for Declaratory Judgment and For Unjust Enrichment, dated May 25, 2007.
2. Answer to Complaint for Declaratory Judgment and For Unjust Enrichment and Counterclaim for Conversion, dated June 13, 2007.
3. Real Property Lease Between Hodges Bonded Warehouse, Inc., as landlord, and Sylvest Farms, Inc., as tenant, dated August 25, 2005.
4. Proposal by MTL Services regarding Freezer to Sylvest Farms, Inc., dated October 22, 2005.
5. Master Lease Agreement between GE Capital and Sylvest Farms, Inc., including Lease Schedule 001, dated December 29, 2005.
6. Letter to Eugene Geekie from Ann E. Pille, dated January 2, 2007, attaching GE Capital Master Lease Agreement.
7. Debtors' Motion Pursuant to 11 U.S.C. Sections 105, 363, and 365 for Order Authorizing (i) Sale of Certain Assets of the Estates Free and Clear of Liens, Claims and Interests, (ii) Approval of Designation of Rights Agreement, and (iii) Sale, Assumption and Assignment of Certain Leases and Executory Contracts, dated April 18, 2006.
8. Amended Asset Purchase Agreement, dated April 27, 2006.
9. Appraisal Valuation Report prepared by Robert Breakstone, June 2006.
10. General Electric's Objection to Assumption, Assignment, and Cure Amount with Respect to Executory Contract, dated May 18, 2006.
11. Order on Debtor's Motion Pursuant to 11 U.S.C. Sections 105, 363, and 365 for Order Authorizing (i) Sale of Certain Assets of the Estates Free and Clear of Liens, Claims and Interests, (ii) Approval of Designation of Rights Agreement, and (iii) Sale, Assumption and Assignment of Certain Leases and Executory Contracts, dated May 26, 2006.
12. Appraisal Valuation Report prepared by Robert Breakstone, dated September 2007.
13. Debtor's Motion for Entry of Order Authorizing the Rejection of Certain Unexpired Leases and Executory Contracts, dated June 15, 2006, and Amended Exhibit A to the Rejection Motion, dated June 20, 2006.
14. Amended Exhibit A to the Rejection Motion, dated June 20, 2006.
15. Email from E. Geekie to A. Terras, dated February 14, 2007.
16. Email from E. Geekie to A. Terras, dated April 18, 2007.
17. Order Granting Debtor's Motion for Entry of Order Authorizing the Rejection of Certain Unexpired Leases and Executory Contracts, dated July 6, 2006. (Note that the face of the document indicates it was entered on June 6, 2007, but that the document was entered, in actuality, on July 6, 2007. *See In re Sylvest Farms, Inc et al.,* Case No. 06-40525, pending before the United States Bankruptcy Court for the Northern District of Alabama, Docket No. 375, July 6, 2007.
18. Appraisal report of David Dalfonso, dated October 2007.

It is ORDERED that:

(1) The jury selection and trial of this cause, which is to last three days, are set for April 14, 2008, at 10:00 a.m. at the Frank M. Johnson, Jr. United States Courthouse Complex, Courtroom 2FMJ, One Church Street, Montgomery, Alabama, 36104;

(2) A trial docket will be mailed to counsel for each party approximately two weeks prior to the start of the trial term;

(3) Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the exhibit list and a sufficient number of copies of each photostatically reproducible exhibit for opposing counsel, the courtroom deputy clerk, the law clerk, the jurors, and the judge to each have a set of the exhibits;

(4) Trial briefs are required to be filed by April 9, 2008;

(5) All deadlines not otherwise affected by this order will remain as set forth in the uniform scheduling order (Doc. No. 14) entered by the court on July 17, 2007; and

(6) All understandings, agreements, deadlines, and stipulations contained in this pretrial order shall be binding on all parties unless this order be hereafter modified by Order of the court.

DONE, this the 22nd day of February, 2008.

                                             /s/ Myron H. Thompson
                                             **UNITED STATES DISTRICT JUDGE**