UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KOCH FOODS OF ALABAMA, LLC, an Alabama limited liability company, <br><br>     Plaintiff and Counter-Defendant, <br><br> vs. <br><br> GENERAL ELECTRIC CAPITAL CORPORATION, a Delaware corporation, <br><br>     Defendant and Counter-Plaintiff, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> CIVIL ACTION NO. <br> 2:07 CV 522-MHT |

GE CAPITAL'S RESPONSE TO KOCH FOOD'S OBJECTIONS
TO GE CAPITALS'S DESIGNATION OF EXHIBITS

Defendant and Counter-Plaintiff, General Electric Capital Corporation ("GE Capital"), through its undersigned counsel, and in conformance with the Uniform Scheduling Order entered in the above-captioned proceeding on July 17, 2007 (the "Uniform Scheduling Order") (Doc. No. 14), hereby responds to the Objections to GE Capital's Designation of Exhibits (the "Objection"), filed by Koch Foods of Alabama, LLC ("Koch") in the above-captioned proceeding on March 31, 2008. In conjunction therewith, GE Capital states as follows:

**BACKGROUND**

1.     On April 18, 2006 (the "Petition Date"), Sylvest Farms, Inc. ("Sylvest") filed for protection under chapter 11 of the Bankruptcy Code. On the Petition Date, Sylvest filed a motion to sell a substantial portion of its assets to Koch.

2.     Having been informed that Sylvest intended to reject a master lease and equipment schedule pursuant to which GE Capital leased certain equipment (the "Equipment") to Sylvest, GE Capital began collecting information to assist in the process of remarketing the

Equipment.

3.     In May 2006, GE Capital hired Robert Breakstone ("Mr. Breakstone") of Equipment Exchange Company of America, Inc. ("Equipment Exchange") to perform an appraisal of the Equipment.  In conjunction therewith, Daniel Nicosan ("Mr. Nicosan"), an Equipment Exchange employee, made a personal inspection of the Equipment on May 16, 2006. Mr. Breakstone used notes and photographs from this inspection to draft his first valuation report pertaining to the Equipment, a copy of which is included in the Expert Report of Robert Breakstone served in the instant matter on October 1, 2007 (the "Breakstone Expert Report").  A copy of the Breakstone Expert Report is attached hereto as **Exhibit A**.

4.     On May 25, 2007, Koch filed its Complaint for Declaratory Judgment and for Unjust Enrichment, thereby commencing the instant matter.

5.     On September 24, 2007, Mr. Nicosan again performed a second personal inspection of the Equipment, and photographs from this inspection were incorporated by Mr. Breakstone into a second appraisal, a copy of which is also included in the Breakstone Expert Report.

6.     In conformance with the Uniform Scheduling Order, a copy of the Breakstone Expert Report was served upon Koch on October 1, 2007.  On October 4, 2007, Koch noticed the depositions of Mr. Breakstone and Mr. Nicosan.  For reasons unknown to GE Capital, Koch never took those depositions.

7.     On March 5, 2008, GE Capital filed its List of Witnesses, Deposition Designations, and Exhibits for Trial, pursuant to which it identified the Breakstone Expert Report as one of the exhibits it intends to use at trial.

8.    On March 31, 2007, Koch filed the Objection, thereby objecting to the admissibility of the Breakstone Expert Report on the following bases:

> Mr. Breakstone's opinions in his report are unreliable and misleading and, thus, fail to meet the requirements under Rule 702 of the Federal Rules of Evidence.. . . In addition, the misleading effect of his opinions substantially outweighs their probative value, and, therefore, Mr. Breakstone's report must be excluded under Rule 403. Moreover, Because Mr. Breakstone has no personal knowledge of the equipment, he cannot offer any lay opinion testimony regarding the value of the equipment under Rule 701.

Objection, pp. 1-2.

9.    As established more fully herein, these bases do not constitute a basis for exclusion of the Breakstone Expert Report.

## ANALYSIS

10.    Rule 702 of the Federal Rules of Evidence provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. . . ." *Fed. R. Evid.* 702. "[T]he rejection of expert testimony is the exception rather than the rule." *Gerrard v. A.J. Gerrard & Co.*, 2003 WL 25689968, * 2 (S.D. Ga. 2003).

11.    To determine the admissibility of expert testimony, a trial court must consider if:

> (1) the expert is qualified to testify competently regarding the matters he intends to address;
>
> (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and
>
> (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*U.S. v. Abreu*, 406 F.3d 1304, 1306 (11th Cir. 2005).

12.     Here, through the Objection, Koch challenges the Breakstone Expert Report only with respect to the second prong, namely, whether the information contained in the Breakstone Expert Report is "sufficiently reliable." *See, Objection*, p. 1 ("Koch objects to Mr. Breakstone's report because Mr. Breakstone's opinions in his report are unreliable and misleading and, thus, fail to meet the requirements under Rule 702 of the Federal Rules of Evidence."). Koch's various arguments in support of its position are contrary to controlling authority.

**A.     Overwhelming Authority Establishes That Mr. Breakstone's Opinions Need Not Be Based on a Personal Inspection of the Equipment.**

13.     In the *Motion in Limine to Exclude Robert Breakstone's Testimony, to Exclude Evidence Regarding Other Litigation, and to Exclude Evidence of Conversion of the Spiral Freezer* (the "Motion in Limine") (Doc. No. 107), which Koch references as a basis for the Objection, Koch first asserts that the Breakstone Expert Report must be excluded because it is based on insufficient and untrue assumptions. *Motion in Limine*, p. 3. Koch bases this assertion on the following circumstances:   (i) Mr. Breakstone himself never conducted an on-site inspection of the Equipment, and (ii) Mr. Breakstone's assumptions about the installation and operational date of the Equipment are "completely false." *Id.*, p. 4.

14.     There is no requirement under the Federal Rules of Evidence that an expert witness make a personal inspection of the subject matter of their testimony.   Indeed, this is established in the very case cited by Koch itself. "Unlike an ordinary witness, see Rule 701, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593 (1993); *see also Fed. R. Evid.* 703 ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by *or made known to* the expert at or before hearing.") (*emphasis added*).

15.     Further, the Notes of the Advisory Committee on Rules related to Rule 703 of the Federal Rules of Evidence acknowledge that "[f]acts or data upon which expert opinions are based may, under the rule, be derived from three possible sources." One of the three sources "contemplated by the rule consists of presentation of data to the expert outside of court and other than by his own perception. In this respect the rule is designed to broaden the basis for expert opinions beyond that current in many jurisdictions and to bring the judicial practice into line with the practice of the experts themselves when not in court." *Fed. R. Evid.* 703, *advisory committee note.*

16.     For these reasons, an appropriate measure of whether an expert can reliably testify as to certain subject matter does not hinge on whether he made a personal inspection, but, rather, whether he "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). This point is particularly illustrative in the instant case given the fact that Mr. Breakstone was first retained well in advance of the commencement of litigation – not for the purpose of acting as an expert witness – but, for the primary purpose of appraising the Equipment in order to assist GE Capital in remarketing the same for resale. *See* ¶ 3, *supra.* Thus, the practices followed by Mr. Breakstone constitute those he would normally – and, in fact, did in this case – employ in the context of his business in the equipment appraisal field. For these reasons, the opinions offered by Mr. Breakstone in the Breakstone Expert Report are sufficiently reliable under the standards dictated by the Federal Rules of Evidence, and should not be excluded on the basis that Mr. Breakstone made no personal inspection of the Equipment.

**B.    The Breakstone Expert Report is Based on Accurate Information.**

17.    Second, Koch asserts that the Breakstone Expert Report should be excluded because certain assumptions about the operational date of the Equipment included therein are false. *Motion in Limine*, p. 4.[1] Koch's argument is meritless.

18.    First, Koch assumes that "operational" means "operating." It does not. Rather, "operational" means "functional," which in turn means capable of functioning. The Equipment was thus operational in May 2006 (and, in the case of Deboner, was in fact operating).[2] Merely because the Spiral Freezer was not hooked up to power hardly means that it was not capable of functioning, having been otherwise installed.

19.    Second, assuming, *arguendo*, that the Spiral Freezer could be said to not be "operational," Mr. Breakstone has not been retained to testify regarding the operational date of the Equipment. Instead, his expert testimony is intended to value the Equipment at the time the Equipment was converted.

20.    For this reason, Koch's objections regarding the assumptions made by Mr. Breakstone regarding the operational date of the Equipment affect, if anything, the weight that should be attributed to the testimony, rather than its admissibility. *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002) ("in most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility"); *Wilmington v. J.I. Case Co.*, 793 F.2d 909, 920 (8th Cir. 1986) (same).

---

[1] Koch cites no authority in support of this proposition. *See Motion in Limine*, pp. 4-5.

[2] Koch disingenuously argues not only that was the Spiral Freezer not "operational" because it was not operating, but that the Deboner likewise was not "operational" because the Spiral Freezer was not "operational." *See Motion in Limine*, pp. 3-5 (arguing that appraisal value as to the entirety of Equipment should be barred since Spiral Freezer alone not "operational"). No basis for such an argument exists.

21.    In short, Mr. Breakstone provides a cogent appraisal of the value of the Equipment as of particular dates. His qualifications are unchallenged, and his conclusions will unquestionably assist the jury in determining the value of the Equipment as of the date it was converted. Koch is free to cross-examine Mr. Breakstone, but has failed to provide the Court with a basis to exclude the Breakstone Expert Report.

**C.    Mr. Breakstone's Valuation Methods Do Not Contradict the Facts of This Case.**

22.    In the Motion In Limine, Koch asserts that the Breakstone Expert Report should be excluded from evidence because his "valuation is inflated and unreliable because his application of the valuation methods directly contradicts the undisputed facts in this case." *Motion In Limine*, p. 5. In support of this contention, Koch suggests that "[c]ommon sense is that the Equipment will depreciate over time." *Id.*, at 6.

23.    Koch misreads the Breakstone Expert Report.    The Equipment did not "appreciate" over time. Rather, the value of the Equipment increased when it was unpacked, set in place, and otherwise installed. Indeed, common sense leads to the conclusion that an engineered industrial system is more valuable to a manufacturer up, running, and producing than it is in the box with its ability to produce still untested. It hardly "defies common sense" to recognize that the value of a product to an end-user is higher when it is operational (or, in the case of the Deboner, already operating) than when it is sitting crated on the loading dock.[3]

24.    Koch makes much of Michael Leonard's testimony that he and GE Capital negotiated a sale of the spiral freezer for $50,000 and that this value undermines Mr. Breakstone's valuation at between $240,000 and $280,000. *Motion In Limine*, p. 7.    Koch

---

[3] In an analogy that Koch's own salespersons might appreciate, a chicken generally is considered more valuable when served cooked on a plate in a restaurant than when sitting frozen on a shelf in a grocery store.

ignores the fact that Michael Leonard ("Mr. Leonard") also testified that he sold the spiral freezer to Sylvest for $430,000, that this price was fair, and that the difference between the two was in the cost of deinstallation, refurbishment, and reinstallation. Mr. Leonard's testimony, in its entirety, is completely supportive of Mr. Breakstone's valuation rather than the opposite, as Koch suggests.

25.    Mr. Breakstone has approximately twenty-five years of experience in the machinery and equipment appraisal business, and an equal number of years of experience purchasing and selling equipment and machinery. *Breakstone Expert Report*, p. 3. In arriving at the opinions contained in the Breakstone Expert Report, Mr. Breakstone relied on, *inter alia*, his industry experience. *See Kuhmo Tire Co.*, 526 U.S. at 151 (An expert may base his opinion on "professional study or personal experience.").[4] He understands that in-place equipment has a higher value than crated equipment. Any arguments to the contrary can be explored by Koch in cross-examination.

**D.    The Breakstone Expert Report Should Not Be Excluded Under Rule 403.**

26.    Koch next asserts that the Breakstone Expert Report should be excluded under Rule 403 of the Federal Rules of Evidence because "Breakstone's testimony will undoubtedly mislead the jury because his opinions are based on untrue facts, defy common-sense, and directly contradict the facts in this case. On the other hand, his opinion has little probative value for the same reasons." *Motion In Limine*, p. 8.

---

[4] Indeed, Koch does not appear to contest Mr. Breakstone's qualifications as an expert. *See Objection; Motion In Limine*.

27.    Koch's argument should be overruled for two reasons.  First, as discussed *supra*, the opinions are based on fact and expertise, and will not mislead the jury.  Second, again, Koch is free to cross-examine Mr. Breakstone.

28.    In *Newell P.R. v. Rubbermaid, Inc.*, the court denied a motion to exclude testimony of an expert witnesses under Rule 403, even after that expert had twice sought leave to amend his expert report once he discovered miscalculations in his calculations.  In denying the motion to exclude the testimony, the court reasoned:

> [Defendant] suggests that [the expert's] testimony had the effect of confusing and misleading the jury and should have been excluded under Rule 403.  We disagree.  [The expert] was [plaintiff's] only expert as to damages.  [Plaintiff] was entitled to present witnesses on the issue of damages.  At trial, [defendant] conceded [the expert's] qualifications as an expert in this area.  Juries are often asked to determine complex issues of fact after listening to expert testimony.    [Defendant] was able to cross-examine both [the expert] and [the court's independent expert] as to their testimony and to present testimony by its own expert witness on the issue of damages.  In light of these factors, we do not believe the district court abused its discretion in determining that [the expert's] testimony had substantial probative value that was not outweighed by unfair prejudice and should not be excluded under Rule 403.

*Newell P.R. v. Rubbermaid, Inc.*, 20 F.3d 15, 21 (1st Cir. 1994) *rev'd on other grounds as noted in Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998).

29.    Based on the reasoning applied in *Newell*, Rule 403 does not suggest, must less require, excluding the Breakstone Expert Report.  Koch will be given an adequate opportunity to cross-examine Mr. Breakstone as to the content of the Breakstone Expert Report at trial.

30.    Koch's assertion that the information contained in the Breakstone Expert Report will "undoubtedly mislead the jury" not only ignores the accuracy of the grounds for the expert opinions contained therein, but is a slight to the intelligence and capabilities of the jury.  *Motion in Limine*, p. 8.  As stated in *Newell*, "[j]uries are often asked to determine complex issues of fact

after listening to expert testimony." *Newell*, 20 F.3d at 21. Many of those complex issues are, without question, significantly more complex than those at issue here. As such, the conclusions set forth in the Breakstone Expert Report are well within the comprehension of a reasonable jury.

       **E.**    **Mr. Breakstone Is Qualified To Testify As A Lay Witness.**

    31.    Finally, Koch asserts that Mr. Breakstone must be barred from testifying as a lay witness under Rule 701 because he has no personal knowledge about the Equipment. *Motion In Limine*, p. 8. Not surprisingly, Koch cites no authority for this assertion.

    32.    In reality, Mr. Breakstone *does* have personal knowledge about the Equipment. Despite the fact that Mr. Breakstone has never personally performed an on-site inspection of the Equipment, he has, *inter alia*, spoken to his regular employees and others in the industry about the Equipment and has reviewed numerous documents and photographs related to the Equipment. *See Breakstone Expert Report*, p. 2; *see also Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1123 (10th Cir. 2005) (where plaintiff examined certain audit reports, she had personal knowledge of their content; even if plaintiff did not know how the audits were performed, who performed the audits, or the methodology used, these objections would go to the weight of her testimony, not to its admissibility). For these reasons, Koch's assertion that Mr. Breakstone has no personal knowledge of the Equipment is both factually incorrect and legally unsupported. Exclusion of the Breakstone Expert Report under Rule 701 is not warranted.

    WHEREFORE, GE Capital seeks the entry of an order: (a) overruling the Objection; (b) admitting the Breakstone Expert Report as an exhibit at trial in this matter; and (c) granting any further relief that this Court deems to be appropriate under the circumstances.

Dated:  April 7, 2008.          By:        /s/ Rusha C. Smith
                                           Attorney for General Electric Capital
                                           Corporation

OF COUNSEL:
Rusha C. Smith
Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL  35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

OF COUNSEL:
Alexander Terras
Timothy S. Harris
Reed Smith Sachnoff & Weaver
10 South Wacker Drive
Chicago, IL  60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400


## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Thomas G. Mancuso, Esq.
Thomas T. Gallion, III, Esq.
Constance C. Walker, Esq.
Haskell Slaughter Young & Gallion, LLC
305 South Lawrence Street
Montgomery, AL  36103-4660

Eugene J. Geekie, Jr., Esq.
Mike Xu, Esq.
Schiff Hardin LLP
6600 Sears Tower
Chicago IL  60606

                                           /s/ Rusha C. Smith
                                           COUNSEL

# EXHIBIT A

EXPERT REPORT

OF

ROBERT BREAKSTONE

FOR

GENERAL ELECTRIC CAPITAL CORPORATION

IN THE MATTER OF

KOCH FOODS OF ALABAMA, LLC V. GENERAL ELECTRIC
CAPITAL CORPORATION

CASE NO. 07 C 522

October 1, 2007



DEFENDANT'S
EXHIBIT

DX2

**I.      Statement of Opinions**

The opinions on which my testimony will be based are provided in the (a) Appraisal Valuation Report of Sylvest Farms, prepared May 2006, and (b) Appraisal Valuation Report of Sylvest Farms, prepared September 2007 (collectively, the "Appraisal Reports"), copies of which are appended hereto, and incorporated by reference as though set forth fully in this Report.

**II.     Bases for Opinions**

The bases for my opinions are provided in the Appraisal Reports.

**III.    Information Considered in Forming Opinions**

In May 2006, Daniel Nicoson of Equipment Exchange Co. of America, Inc. conducted an on-site inspection of the equipment which is referenced in the Appraisal Reports. During and following this inspection he prepared certain notes and made certain photographs which I consulted in preparing and finalizing the Appraisal Reports. In addition, Mr. Nicosion consulted with me and provided information regarding the preparation and finalization of the Appraisal Report dated June 2006.

In September 2007, Mr. Nicoson and Jim Lott of Mechanical Services Company conducted an on-site inspection of the equipment which is referenced in the Appraisal Report dated September 2007. During and following the inspection they prepared certain notes and made certain photographs which I consulted in preparing and finalizing the Appraisal Reports. In addition, Messrs. Nicoson and Lott consulted with me and provided information regarding the preparation and finalization of the Appraisal Report dated September 2007.

In addition, I have approximately twenty-five (25) years of industry experience purchasing and selling machinery which assisted in the formulation of my opinions as expressed in the Appraisal Reports. In addition, I reviewed certain of the documents produced by Koch in its document production, including vendor quotes and invoices and underlying lease documentation, which assisted in my opinions.

**IV.     Exhibits to be Used as a Summary or Support**

I plan to use all or portions of the Appraisal Reports as a summary of my opinions. I plan to use the photographs included in the Appraisal Reports as support for my opinions.

**V.     Qualifications of the Witness**

**A.     Employment**

Senior Appraiser at Equipment Exchange Co. of America, Inc.
Lake City, Pennsylvania
(1982 to Present)

**B.     Publications Within the Preceding Ten Years**

None

**C.     Education**

Mercyhurst College, in Erie, Pennsylvania, B.A. in Business Administration, B.A.

**D.     Professional Memberships and Affiliations**

Equipment Appraisers Association of North America (EAANA), Certified Senior Appraiser (CSA)
Association of Machinery and Equipment Appraisers (AMEA), Certified Equipment Appraiser (CEA)
American Society of Appraisers (ASA), Candidate Member

**E.     Experience**

I have approximately twenty-five years of experience in the machinery and equipment appraisal business, and an equal number of years of experience purchasing and selling equipment and machinery. As part of my business, I regularly attend auctions where large machinery is sold, and I commonly record pricing data for this equipment, which is maintained in an internal database at the Equipment Exchange Co. of America, Inc. offices in order to track sales information regarding equipment and machinery.

**F.     Additional**

In addition to the qualifications stated here, I have the qualifications attached to those portions of the Appraisal Reports entitled "Appraiser's Qualifications," which, with the rest of the Appraisal Reports, are incorporated by reference as though set forth fully in this Report.

**VI.    Compensation**

Equipment Exchange Co. of America, Inc. and I were provided compensation in the amount of $7,500.00, plus expenses in the amount of $1,477.34, for the June 2006 appraisal of the equipment and preparation of the Appraisal Report dated June 2006.  Equipment Exchange Co. of America, Inc. and I were provided compensation in the amount of $6,000.00, plus expenses which have not yet been calculated at the time of this report, for the September 2007 appraisal of the equipment and preparation of the Appraisal Report dated September 2007.  My compensation for study and testimony going forward shall be $250.00 per hour.

**VII.    Prior Testimony**

I provided deposition testimony in a case involving GE Capital and Koch previously pending in Mississippi.  I provided opinion testimony consisting of appraisals of chicken processing equipment located in a facility in Jackson, Mississippi.

Robert Breakstone

CHILIB-2109943.2-515998-00011

4

INSPECTION AND VALUATION OF

# SYLVEST FARMS

4530 MOBILE HIGHWAY

MONTGOMERY, AL 36108

PREFORMED FOR

# GENERAL ELECTRIC
# CAPITAL CORPORTATION

## COMMERCIAL
## EQUIPMENT FINANCING

BY

# EQUIPMENT EXCHANGE COMPANY
## MAY 2006





# APPRAISAL VALUATION REPORT

OF

## SYLVEST FARMS
4530 MOBILE HWY
MONTGOMERY, AL
36108

## PREPARED JUNE 2006

BY





ASSOCIATION OF MACHINERY AND EQUIPMENT APPRAISERS



# APPRAISER'S OPINION LETTER



**2** — # APPRAISER'S CERTIFICATION & CERTIFICATION OF VALUE



**3** — # SCHEDULE OF DETAILED INVENTORY



**4** — # APPRAISAL PHOTOGRAPHS



**5** — # APPRAISER'S QUALIFICATIONS



**EQUIPMENT EXCHANGE CO. OF AMERICA, INC.**

10042 Keystone Drive • Lake City, PA 16423 • (814)-774-0888 • Fax (814) 774-0880 • info@eeclink.com

## SUMMARY APPRAISAL REPORT
### PRIVATE & CONFIDENTIAL

Subject - Certain Assets of:

### SYLVEST FARMS
### 4530 MOBILE HIGHWAY
### MONTGOMERY, AL 36108

For the Intended Use of:

### GENERAL ELECTRIC CAPITAL
### COMMERCIAL EQUIPMENT FINANCING
### 44 OLD RIDGEBURY ROAD
### DANBURY, CT 06810-5105

### Purpose of Appraisal

The purpose of this appraisal is to provide an independent, professional opinion of the Current Fair Market Value-Removed and Orderly Liquidation Value of certain machinery and equipment located at Sylvest Farms, 4530 Mobile Highway, Montgomery, AL. This report is intended solely for financing and business decisions of General Electric Capital Corporation and assignees. Mr. Daniel Nicoson, Vice President of Equipment Exchange Company of America, Inc. inspected these assets located at Sylvest Farms and Mr. Robert Breakstone, President prepared this report. The effective date of this report is May 16, 2006.

### Intended Use of Appraisal

This report is intended solely for financial and business decisions of General Electric Capital Corporation for financing and business purposes and is not intended for any other use.

There are proper and improper uses for various appraisal concepts. If a particular company or individual determined that, the concept fits a particular need and therefore could use it in a way that would be improper. The American Society of Appraisers has standard definitions for concepts, each concept is specifically defined and indicates a conclusion of value. It is up to the user to determine if the defined concept is correct for its purpose. Users can certainly investigate value concepts to determine their typical and known uses and are not prohibited after their investigation to choose to adapt any known concept to their purpose as considered reasonable by their standards. The appraisal is preformed at the request of a client based upon a requested concept of value. It is not uncommon for Equipment Exchange Company of America, Inc. (EEC) to develop an appraisal using one or more concepts of value. Users of this report must do so with the knowledge of the defined concepts of value being utilized. If a user has any questions as to the intended use, definitions of value or defined concepts they are advised to contact the appraiser.

**EQUIPMENT EXCHANGE CO. OF AMERICA, INC.**

10042 Keystone Drive • Lake City, PA  16423 • (814)-774-0888 • Fax (814) 774-0880 •
info@eeclink.com

Page 2 of 7
GECC/Sylvest Farms

## Scope of Appraisal

To appraise certain personal property of the subject company located at Sylvest Farms and to arrive at certain conclusion of values under the Fair Market Value-Removed and Orderly Liquidation Value.

## Highest and Best Use

The equipment was being used for the purpose as designed and engineered unless otherwise stated. It is the appraisers opinion that the equipment was being utilized: EQUIPMENT PRODUCT LINE: Sylvest Farms are producers of fresh and frozen poultry products.  Equipment includes packaging, freezing, cutting or portioning equipment various material handling conveyors and transportation equipment along with support equipment.  This report does not include all of the equipment and machinery, office furniture, support equipment, material handling equipment, real estate, intangible assets, ect.

## Value Definitions

**FAIR MARKET VALUE- REMOVED (FMV-REMOVED):** The value realized from a retail sale to an end user of equipment removed from its current premises.  The value is a result of a transaction between a willing buyer and willing seller, with no time limitation to sell.  This value assumes the equipment is maintained according to the manufacture's recommendation and performance standards.  Since a physical inspection has to be preformed, the FMV will reflect the actual condition found.

**ORDERLY LIQUIDATION VALUE (OLV):** The value realized from an open market sale between a seller under time duress and a willing buyer who is an end user of the equipment. The buyer time duress is specified in Table 1 below. Both the buyer and the seller have knowledge of the use and purpose for which this equipment is adapted and for which it is capable of being used.  This value also assumes the equipment will be sold "as is condition, where is location" and the buyer assumes the costs to dismantle and remove.  Additionally, this value is not discounted for assembling, cleaning, security, advertising, brokerage, or other disposal costs, if any.

TABLE 1

| Collateral Type | Day to sell Equipment |
|---|---|
| Transportation/Material Handling | 60-90 |
| Construction | 90-120 |
| Machine tools/Plastics/Graphic Computers/Arts/Mining/Telecom/Food/Textil e/FF&E/ | 120-180 |

Value Definitions: provided by General Electric Capital Corporation Letter of Engagement.



**EQUIPMENT EXCHANGE CO. OF AMERICA, INC.**

10042 Keystone Drive • Lake City, PA 16423 • (814)-774-0888 • Fax (814) 774-0880 •
info@eeclink.com

Page 3 of 7
GECC/Syvest Farms

Both stated value considerations represent the normal considerations for the assets being appraised. The stated values are unaffected by special or creative financing or sale considerations granted by anyone associated with a possible sale or any other special or creative terms, service fees, costs or credits.

All values stated are in United States Funds as of effective date of this report. Any users of this report must assume that the listed "OLV" is based on the fact that a qualified and experienced broker of the goods is to be used as the marketing agent. It also does not take into account any "costs to sell" that would be involved in liquidating the assets.

### Approaches to Value

In complying with Uniform Standards of Professional Appraisal Practice (USPAP), all three accepted approaches to value must be considered.

1) **Cost Approach:** The appraiser considers the replacement cost (new) of the asset being appraised for the loss in value caused by physical deterioration, functional obsolescence, or economic obsolescence. The cost approach is based on the principle of substitution: a prudent buyer will not pay more for an asset than the cost of acquiring a substitute property of equivalent utility. In its simplest form, the cost approach is the current cost (as if new) less all depreciation.

2) **Sales Comparison Approach:** The appraiser considers (and if not exactly identical) adjusts the prices that have been paid for assets comparable to the asset being appraised, equating the comparables to the subject. This involves analyzing recent sales of properties that are similar to the subject property. If the comparables are not identical, the prices are adjusted to equate the various characteristics of the properties. Equipment Exchange Company of America, Inc. uses an extensive in-house database of sold and brokered equipment, auction-selling prices, and data gathered via the Internet and other used equipment dealers to establish comparables. As in the cost approach, the basis is a prudent buyer will not pay more for an asset than the cost of acquiring a substitute property of equivalent utility.

3) **Income Approach:** The appraiser determines the present value of the future economic benefits of owning the property. This approach is seldom used in valuing personal property and was considered but deemed not applicable in performing this appraisal.

In this summary appraisal and review of assets from Sylvest Farms, the Sales Comparison Approach was employed to arrive at value conclusions. Equipment Exchange Company researched the equipment installed or used at the location. We also paid particular attention to the marketability of these assets in their current geographic location and the effect that location would have in developing their probable value.



**EQUIPMENT EXCHANGE CO. OF AMERICA, INC.**

10042 Keystone Drive • Lake City, PA 16423 • (814)-774-0888 • Fax (814) 774-0880 •
info@eeclink.com

Page 4 of 7
GECC/Sylvest Farms

### Depreciation

Defined as the actual loss in value or worth of a property from all causes including those resulting from physical deterioration, functional obsolescence, and economic obsolescence.

**Physical Deterioration:**
A form of depreciation where the loss in value or usefulness of an asset is attributable solely to physical causes such as wear and tear and exposure to the elements.

**Functional Obsolescence:**
A form of depreciation were the loss in value is due to factors inherent in the property itself and due to changes in design, or process resulting in inadequacy, over capacity, excess construction, lack of functional utility, or excess operating costs.

**Economic Obsolescence:**
A form of depreciation or loss in value, caused by unfavorable external conditions. These can include such things as the economics of the industry, availability of financing, loss of material and labor sources, passage of new legislation, and changes in ordinances.

### Summary of Values Conclusions

Based on our investigations, analysis of data, and the methods as stated and used, it is the opinion of Equipment Exchange Company of America, Inc., considering the stated assumptions, conclusions and limiting conditions, which the Fair Market Value-Remove and Orderly Liquidation Value of the machinery and equipment located at Sylvest Farms, Montgomery, AL.

|  | **FAIR MARKET VALUE-REMOVE** |
|---|---|
| **TOTAL CURRENT OF EQUIPMENT VALUED** | **$1,119,500.00** |
|  | **ORDERLY LIQUIDATION VALUE** |
| **TOTAL CURRENT OF EQUIPMENT VALUED** | **$661,900.00** |

**GENERAL COMMENTS, ASSUMPTIONS, AND STATEMENT OF LIMITING CONDITIONS**

This is a Summary Appraisal Report, which is intended to comply with the reporting requirements set forth under Standards Rule 2-2(b) of the Uniform Standards of Professional Appraisal Practice for a Summary Appraisal Report. As such, it might not include full discussions of the data, reasoning, and analysis that were used in the appraisal process to
develop the appraiser's opinion of value. Supporting documentation concerning the data, reasoning and analyses is retained in the appraiser's file.



**EQUIPMENT EXCHANGE CO. OF AMERICA, INC.**

10042 Keystone Drive • Lake City, PA 16423 • (814)-774-0888 • Fax (814) 774-0880 •
info@eeclink.com

Page 5 of 7
GECC/Sylvest Farms

This appraisal sets forth our findings and conclusions which are based upon an investigation of
conditions affecting value and which are subject to the Assumptions, Statements of Limiting
Conditions, and Definitions contained in the following report. *Without reading the Assumptions
and Statement of Limiting Conditions and Definitions, this report could be erroneously
interpreted.*

The legal description given to the appraisers and used in this report is assumed to be correct. No
responsibility is assumed for matters of a legal nature affecting title to the property nor is an
opinion of title rendered. The title is assumed to be good and marketable.

The appraisers have made no survey of the property and no responsibility is assumed in connection
with such matters. Sketches in this report are included only to assist the reader in visualizing the
property.

In conducting this inspection or in gathering information for this report we have assumed that no
unreported or hidden conditions exist with the equipment that would render it more or less valuable
then reported.

If for some reason we were unable to gather the model number, serial number, age or other
pertinent information we assumed that the equipment was similar to other equipment we have
appraised or that is contained within this report.

Information furnished by others is assumed true, correct, and reliable. A reasonable effort has been
made to verify such information; however, the appraisers assume no responsibility for its accuracy.

All mortgages, liens, encumbrances, leases, and servitudes have been disregarded unless so
specified within the report. The property is appraised as though under responsible ownership and
management. It is assumed that there are no hidden or unapparent conditions of the property,
subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for
such conditions or for engineering, which may be required to discover them.

This report in no way establishes ownership of the detailed property. If property was described as
leased, rented, borrowed or subject to outstanding liens we have either noted this in the body of
the report or not included the specific equipment in the report.

The fee for this report is not contingent upon the values reported. There have not been any
guarantees associated with this fee and no liability can be intimated or assumed in any manner.

It is assumed that there is full compliance with all-applicable federal, state and local environmental
regulations and laws unless noncompliance is stated, defined, and considered in the appraisal.

It is assumed that all applicable zoning and use regulations and restrictions have been complied
with, unless a non-conformity has been stated, defined, and considered in the appraisal report.



**EQUIPMENT EXCHANGE CO. OF AMERICA, INC.**

10042 Keystone Drive • Lake City, PA 16423 • (814)-774-0888 • Fax (814) 774-0880 •
info@eeclink.com

Page 6 of 7
GECC/Sylvest Farms

It is assumed that all required licenses, consents or other legislative or administrative authority from any local, state or national governmental or private entity or organization have been or can be obtained or renewed for any use on which the value estimate contained in this report is based.

The physical condition of the property described herein was not based upon visual inspection by the appraiser. No responsibility is assumed for latent defect of ANY nature whatsoever which may affect its value, nor for any expertise required to disclose such conditions.

The appraiser will not be required to give testimony or to appear in court or any pretrial conference or appearance required by subpoena, with reference to the property in question, unless timely arrangements have been previously made therefore, at prevailing per diem rates.

No environmental impact studies were either requested or made in conjunction with this appraisal, and the appraiser hereby reserves the right to alter, amend, revise or rescind any of the value opinions based upon any subsequent environmental impact studies, research or investigation.

Unless otherwise stated in the report, the appraisers did not observe the existence of hazardous material, which may or may not be present on the property. I have no knowledge of the existence of such materials on or in the property and are not qualified to detect such substances. The presence of substances such as asbestos, urea formaldehyde foam insulation or other potential hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required to discover them. The client is urged to retain an expert in this field, if desired.

The appraiser(s) reserves the right to alter statements, analyses, conclusions, or any value estimate in the appraisal if any new facts pertinent to the process are discovered which were unknown when the appraisal report was prepared.

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for any purpose or any function other than the intended use, as stated in the body of the report.

This appraisal is to be used only in its entirety, and no part is to be used without the whole report. All conclusions and opinions concerning the analysis as set forth in the report were prepared by the appraiser(s) whose signature(s) appear(s) on the appraisal report.

No change of any item in the report shall be made by anyone other than the appraiser(s). The appraiser(s) and the appraisal firm shall bear no responsibility for any such unauthorized changes.

Except as provided for subsequently, neither the appraiser(s) nor the appraisal firm may divulge the analyses, opinions, or conclusions developed in the appraisal report, nor may they give a copy of the report to anyone other then the client or his designee as specified in writing.



**EQUIPMENT EXCHANGE CO. OF AMERICA, INC.**

10042 Keystone Drive • Lake City, PA  16423 • (814)-774-0888 • Fax (814) 774-0880 •
info@eeclink.com

Page 7 of 7
GECC/Sylvest Farms

However, this condition does not apply to any requests made by the Appraisal Institute for
purpose of confidential ethics enforcement.  In addition, this condition does not apply to any order
or request issued by a court of law or any other body with the power of subpoena.

No responsibility is taken for changes in market conditions and no obligation is assumed to revise
this report without adequate compensation, time and procedural requirements that allow due
diligence to reflect events or conditions which occur subsequent to the date thereof.

The appraisers' duty, pursuant to his employment to make the appraisal, is complete upon delivery
and acceptance of the appraisal report.

THE ACCEPTANCE AND/OR USE OF THE APPRAISAL REPORT BY THE CLIENT OF ANY THIRD PARTY
CONSTITUTES ACCEPTANCE OF THE *ASSUMPTIONS AND LIMITING CONDITIONS* SET FORTH IN THE
PRECEDING PARAGRAPHS.  THE APPRAISER'S AND EQUIPMENT EXCHANGE COMPANY OF AMERICA,
INC.  LIABILITY EXTENDS ONLY TO THE SPECIFIED CLIENT, NOT TO SUBSEQUENT PARTIES OR USERS.
THE APPRAISER'S AND EQUIPMENT EXCHANGE COMPANY OF AMERICA INC., LIABILITY IS LIMITED TO
THE AMOUNT OF THE FEE RECEIVED FOR THE SERVICES RENDERED.

Respectfully Submitted,

Robert Breakstone
Certified Equipment Appraiser

**EQUIPMENT EXCHANGE COMPANY OF AMERICA, INC**
**10042 KEYSTONE DRIVE**
**LAKE CITY, PA 16423**

Does

# -Certify-

That on May 16, 2006 that certain property of:

## SYLVEST FARMS
## 4530 MOBILE HIGHWAY
## MONTGOMERY, AL 36108

HAS WELL AND REASONABLE WORTH:

VALUE IS AS FOLLOWS:

| | FAIR MARKET VALUE-REMOVE |
|---|---|
| TOTAL CURRENT OF EQUIPMENT VALUED | $1,119,500.00 |
| | ORDERLY LIQUIDATION VALUE |
| TOTAL CURRENT OF EQUIPMENT VALUED | $661,900.00 |

EFFECTIVE DATE OF APPRAISAL: May 16, 2006

BY:    ROBERT BREAKSTONE, CEA



**EQUIPMENT
EXCHANGE**
CO. OF AMERICA. INC.

10042 Keystone Dr., Lake City, PA 16423

PHONE (814) 774-0888
FAX    (814) 774-0880
Website www.eeclink.com
Email info@eeclink.com

## Appraiser's Certification:

I certify that, to the best of my knowledge and belief:

❖ the statements of facts contained in this report are true and correct.

❖ the report analyses, opinions and conclusions are limited by the accompanying conditions and assumptions and are my personal, impartial and  unbiased analyses, opinions, and conclusions and recommendations.

❖ I have no present or prospective interest in the property that is the subject of this report and no personal or prospective interest with respect to the parties involved with this assignment.

❖ my engagement in this assignment was not contingent upon developing or reporting predetermined results.

❖ my compensation for completing this assignment is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

❖ my analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the *Uniform Standards of Professional Appraisal Practice*.

❖ I have made a personal inspection of the property that is the subject of this report.

❖ no one provided significant professional assistance to the person signing this report.

Signed: _Daniel R. Nicoson_

Daniel R. Nicoson, Report Date:



EQUIPMENT
EXCHANGE
CO. OF AMERICA, INC.

10042 Keystone Dr., Lake City, PA 16423

PHONE (814) 774-0888
FAX    (814) 774-0880
Website www.eeclink.com
Email info@eeclink.com

## Appraiser's Certification:

I certify that, to the best of my knowledge and belief:

❖ the statements of facts contained in this report are true and correct.

❖ the report analyses, opinions and conclusions are limited by the accompanying conditions and assumptions and are my personal, impartial and unbiased analyses, opinions, and conclusions and recommendations.

❖ I have no present or prospective interest in the property that is the subject of this report and no personal or prospective interest with respect to the parties involved with this assignment.

❖ my engagement in this assignment was not contingent upon developing or reporting predetermined results.

❖ my compensation for completing this assignment is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

❖ my analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the *Uniform Standards of Professional Appraisal Practice.*

❖ I have NOT made a personal inspection of the property that is the subject of this report.

❖ no one provided significant professional assistance to the person signing this report.

Signed: _____

Robert Breakstone, CEA, CSA

Private Confidential

6/8/2006

INSPECTION AND VALUATION OF CERTAIN ASSETS LOCATED AT:

## SYLVEST FARMS

4530 MOBILE ROAD, MONTGOMERY, AL 36108

ENGAGED BY: GE CAPITAL COMMERCIAL EQUIPMENT FINANCE

PREPARED BY EQUIPMENT EXCHANGE COMPANY OF AMERICA, INC. - INSPECTION DATE MAY 16, 2006

| QTY | PHOTO # | EQUIPMENT DESCRIPTION | COST AS SHOWN BY INVOICE | CURRENT VALUES | |
|---|---|---|---|---|---|
| | | | | FAIR MARKET VALUE | ORDERLY LIQUIDATION VALUE |
| | | **OSSID PACKAGING EQUIPMENT** | | | |
| | | Ossid Invoice #3295-F, Invoice date 12/19/05, equipment installed in early 2006 and minimal production use. Equipment seemed to be in 'like new' condition. | | | |
| 2 | 1 | Integrated Package infeed conveyors, 10" wide x 87' long, with low-friction conveyor belt, AC variable speed drive. No ID tags, installed 2006 | $23,842.00 | $15,000.00 | $10,700.00 |
| 2 | 2 &3 | WPL Single Head Check-Weigh System, model WPL1500bA, serial# A022I06 & A023I06. Units are capable of belt speeds of up to 35inches/second. Installed 2006 | $125,000.00 | $69,000.00 | $43,800.00 |
| 2 | 4 | SATA Barcode Printers, model M-8485Se, serial# 4L0A0024 & 4L0A0017. Installed 2006. (Invoice shows Md #PA300AT- this replaces) | $35,800.00 | $16,000.00 | $9,000.00 |
| 2 | 5 | ID Technology Top Printers, model M1.5, serial# 57612-02 & 57612-03. Installed 2006. | $15,000.00 | $7,000.00 | $3,800.00 |
| 1 | 7 | Ossid Automatic Indexer (mounted to overwrapper) no separate ID plate, installed 2006. | $20,900.00 | $14,000.00 | $9,400.00 |
| 1 | 6 & 8 | Ossid Overwrap System model 500E, serial# EF 050432.  Unit appears new, possibly ran tests, remains in "like-new" condition. Installed 2006. | $187,308.00 | $122,000.00 | $84,300.00 |
| 1 | 9 | Ossid End Seal Shrink, model ESS 550, sn: A06065-480. Unit appears new, possibly ran tests, remains in 'like-new' condition. | $37,800.00 | $25,000.00 | $17,000.00 |
| 1 | 10 | Cryovac Shrink Tunnel, model 3472G-1317, serial# 060 116155101.  Tunnel includes pneumatic blow-off discharge section. Unit appears new, possibly ran tests, remains in "like-new" condition. | $25,000.00 | $16,000.00 | $11,300.00 |
| 1 | 11 | Ossid Automatic Indexer (mounted to overwrapper) no separate ID plate, installed 2006. | $20,900.00 | $14,000.00 | $9,400.00 |
| 1 | 12 | Ossid Overwrap System model 500E, serial# EF 050431.  Unit appears new, possibly ran tests, remains in "like-new" condition. Installed 2006. | $187,308.00 | $122,000.00 | $84,300.00 |
| 1 | 13 | Ossid End Seal Shrink, model ESS 550, sn: A06065-480. Unit appears new, possibly ran tests, remains in "like-new" condition. | $37,800.00 | $25,000.00 | $17,000.00 |

Page 1 of 5

Private Confidential

6/8/2006

INSPECTION AND VALUATION OF CERTAIN ASSETS LOCATED AT:

# SYLVEST FARMS

4530 MOBILE ROAD, MONTGOMERY, AL 36108

ENGAGED BY: GE CAPITAL COMMERCIAL EQUIPMENT FINANCE

PREPARED BY EQUIPMENT EXCHANGE COMPANY OF AMERICA, INC. - INSPECTION DATE MAY 16, 2006

| QTY | PHOTO # | EQUIPMENT DESCRIPTION | COST AS SHOWN BY INVOICE | CURRENT VALUES FAIR MARKET VALUE | ORDERLY LIQUIDATION VALUE |
|---|---|---|---|---|---|
| 1 | 14 | Cryovac Shrink Tunnel, model 3472G-1317, serial# 051 116032201. Tunnel includes pneumatic blow-off discharge section. Unit appears new, possibly ran tests, remains in "like-new" condition. Installed 2006. | $25,000.00 | $16,000.00 | $11,300.00 |
| | | **Frigoscandia Spiral Freezer** | | | |
| | | A reconditioned Frigoscandia spiral freezer with reconditioning and installation work done by MTL Installation Services, Proposal #051014C, December 8, 2005. Freezer has been completely installed and not used in production. | | | |
| 1 | 15, 16, 17, 18 & 19 | Frigoscandia spiral freezer, model GC-76, project# 10185, Date 6-7-95. Unit has 28' wide self-stacking product belt, 40 tiers, 3" product clearance, 3.25" per tier. Unit has North/South belt orientation, infeed low right, discharge high right, counter-clockwise rotation. Belt cross rods are 1.25" apart, mesh is 1/2" apart. Cabinet is made of 4" thick insulated panels with stainless steel skin inside and out. Cabinet is 16' wide x 28.5' long x 15.5' high. Freezer is installed on a 8" deep insulated floor that could be moved with freezer. Freezer has been installed with most wiring and plumbing completed but freezer has not been run or tested. Evaporator coil capacity is not known. Freezer appears to be in excellent condition. | $490,000.00 | $280,000.00 | $190,000.00 |
| | | D & F Equipment Sales, Inc. Invoice #53128, Invoice date: December 19, 2006. The majority of this equipment in installed and was in operation during inspection. Some items are not installed and noted on individual item. | | | |
| 1 | 28 | SERIAL# 36019-01A, 01B; DOUBLE CONE LINE, DFDC1015 | $63,820.00 | $35,000.00 | $26,000.00 |
| 2 | 32 | SERIAL# 36019-02A, 02B TENDER/FILLET INCLINE CONVEYORS, DFN500 | $10,680.00 | $5,000.00 | $2,000.00 |
| 1 | 35 & 36 | SERIAL# 36019-03A; FINISHED PRODUCT INCLINE CONVEYOR, DFN500 | $3,100.00 | $1,000.00 | $0.00 |
| 1 | 35 & 36 | SERIAL# 36019-03B; FINISHED PRODUCT INCLINE CONVEYOR, DFN500 | $3,100.00 | $1,000.00 | $400.00 |
| 1 | 29 | SERIAL# 36019-X1; TOTE DUMPER, DFTD276 | $4,200.00 | $2,000.00 | $1,000.00 |
| 1 | 29 | SERIAL# 36019-05; DE-ICE BIN, DFDTD276 | $700.00 | $300.00 | $100.00 |

Private Confidential

6/8/2006

INSPECTION AND VALUATION OF CERTAIN ASSETS LOCATED AT:

# SYLVEST FARMS

4530 MOBILE ROAD, MONTGOMERY, AL 36108

ENGAGED BY: GE CAPITAL COMMERCIAL EQUIPMENT FINANCE

PREPARED BY EQUIPMENT EXCHANGE COMPANY OF AMERICA, INC. - INSPECTION DATE MAY 16, 2006

| | | | | CURRENT VALUES | |
| QTY | PHOTO # | EQUIPMENT DESCRIPTION | COST AS SHOWN BY INVOICE | FAIR MARKET VALUE | ORDERLY LIQUIDATION VALUE |
| --- | --- | --- | --- | --- | --- |
| 1 | 34 | SERIAL# 36019-06; LOADING BIN, DFM391, NO IS TAG ON UNIT | $1,100.00 | $600.00 | $200.00 |
| 1 | 45 | SERIAL# 36019-07 FEED CONVEYOR, DFM500 | $9,400.00 | $4,200.00 | $1,500.00 |
| 12 | 53 | SERIAL# 36019-08A; THROUGH DBL ERGO STANDS, DFESFS2100, NO ID TAGS | $4,800.00 | $2,200.00 | $800.00 |
| 1 | 42 | SERIAL# 36019-09 PRODUCT CONVEYOR, DFM500 | $7,000.00 | $3,200.00 | $1,100.00 |
| 1 | 42 | SERIAL# 36019-10-5 PRODUCT CONVEYOR, DFM500 | $5,800.00 | $2,600.00 | $900.00 |
| 1 | 43 | SERIAL# 36019-11 PRODUCT CHUTE, DFC378 (NO ID TAG) | $400.00 | $200.00 | $100.00 |
| 1 | 31 | SERIAL# 36019A-01A, 01B; DOUBLE CONE LINE, DFDC1015 | $63,820.00 | $35,000.00 | $26,000.00 |
| 2 | 30 | SERIAL# 36019A-02A, 02B DOUBLE TOTE DUMPERS, DFTD275 | $15,000.00 | $8,000.00 | $2,800.00 |
| 2 | 30 | SERIAL# 36019A-03A, 03B DE-ICE BINS, DFDT1002 | $1,400.00 | $1,000.00 | $400.00 |
| 1 | 64 & 65 | SERIAL# 36019A-04A-1, 04A-2; RECIRCULATION CONVEYORS, DFM500 | $10,070.00 | $4,500.00 | $1,600.00 |
| 1 | 64 & 65 | SERIAL# 36019A-04B-1, 04B-2; RECIRCULATION CONVEYORS, DFM500 | $10,070.00 | $4,500.00 | $1,600.00 |
| 3 | 61 | SERIAL# 36019A-05A, 05B, 05C; WING TIP INCLINE CONVEYORS, DFM500 | $20,520.00 | $9,200.00 | $3,200.00 |
| 4 | 62 | SERIAL# 36019A-06A, 06B, 06C, 06D WING INCLINE CONVEYORS, DFM500, THESE UNITS ARE NOT INSTALLED, PRESENTLY OUTSIDE | $29,600.00 | $13,300.00 | $4,700.00 |
| 1 | 63 | SERIAL# 36019A-07; WING INCLINE CONVEYOR, DFM500 | $11,100.00 | $5,000.00 | $1,800.00 |
| 1 | 59 | SERIAL# 36019A-08; WING COMMON CONVEYOR, DFM500 | $17,300.00 | $7,800.00 | $2,700.00 |
| 1 | 60 | SERIAL# 36019A-09; WING COMMON CONVEYOR, DFM500 | $14,540.00 | $6,500.00 | $2,300.00 |
| 1 | 52 | SERIAL# 36019-10; SKIN INCLINE CONVEYOR, DFM500 | $9,460.00 | $4,300.00 | $1,500.00 |
| 0 | | SERIAL# 36019A-11A, 11B, 11C, 11D; FLAT TOP TABLES, DFMT382; NEVER RECEIVED | $0.00 | $0.00 | $0.00 |
| 2 | 33 | SERIAL# 36019A-12A, 12B; TENDER/BREAST INCLINE CONVEYOR, DFM500 | $21,360.00 | $9,600.00 | $3,400.00 |
| 1 | 67 | SERIAL# 36019A-13; CARCASS COMMON CONVEYOR, DFM500 | $12,200.00 | $5,500.00 | $1,900.00 |
| 1 | 68 | SERIAL# 36019A-14 TENDER/BREAST INCLINE CONVEYOR, DFM500, (THIS UNIT WAS NOT INSTALLED OR IN USE DURING INSPECTION) | $26,895.00 | $12,100.00 | $4,200.00 |
| 8 | 69 | TENDER/BREAST CONVEYORS, SERIAL# 36019A-15A, 15B, 15C, 15D, 15E, 15F, 15G, 15H | $132,480.00 | $59,600.00 | $20,900.00 |
| 0 | | SERIAL# 36019A-16; FEED CONVEYOR, DFM500, NOT RECEIVED | $0.00 | $0.00 | $0.00 |
| 1 | 46 | SERIAL# 36019A-17; FEED CONVEYOR, DFM500 | $9,400.00 | $4,200.00 | $1,500.00 |

Page 3 of 5

Private Confidential

6/8/2006

## INSPECTION AND VALUATION OF CERTAIN ASSETS LOCATED AT:
## SYLVEST FARMS
### 4530 MOBILE ROAD, MONTGOMERY, AL 36108

ENGAGED BY: GE CAPITAL COMMERCIAL EQUIPMENT FINANCE

PREPARED BY EQUIPMENT EXCHANGE COMPANY OF AMERICA, INC. - INSPECTION DATE MAY 16, 2006

| QTY | PHOTO # | EQUIPMENT DESCRIPTION | COST AS SHOWN BY INVOICE | CURRENT VALUES | |
|---|---|---|---|---|---|
| | | | | FAIR MARKET VALUE | ORDERLY LIQUIDATION VALUE |
| 1 | 71 | SERIAL# 36019A-CHUTE, DFC378 (NO ID TAG) | $430.00 | $200.00 | $100.00 |
| 4 | 72 | SERIAL# 36019A-19A, 19B, 19C, 19D; EMPLOYEE STANDS, DFAPM179 | $24,600.00 | $11,100.00 | $3,900.00 |
| 1 | 70 | SERIAL# 36019A-20; FLAT TOP TABLE, DMFT382 (NO ID TAG) | $1,800.00 | $800.00 | $300.00 |
| 4 | 73 | SERIAL# 36019A-21A, 21B, 21C, 21D; EMPLOYEE CROSSOVER STANDS, DFAPM179 | $7,400.00 | $3,300.00 | $1,200.00 |
| 0 | | SERIAL# 36019A-22, FINISHED PRODUCT INCLINE CONVEYOR, DFH500 NOT RECEIVED | $0.00 | $0.00 | $0.00 |
| 0 | | SERIAL# 36019A-23, FINISHED PRODUCT INCLINE CONVEYOR, DFH500 NOT RECEIVED | $0.00 | $0.00 | $0.00 |
| 1 | 38 | SERIAL# 36019A-24; S-36019-X5; TRIM INCLINE CONVEYOR, DFH500 | $10,580.00 | $4,800.00 | $1,700.00 |
| 12 | 58 | SERIAL# 36019A-25A THROUGH 25L; ERGO STANDS, DFE5F2100, (NO ID TAGS) | $4,800.00 | $2,200.00 | $800.00 |
| 1 | 55 | SERIAL# 36019A-26; FULL BOX CONVEYOR, DFKPC900 | $14,500.00 | $6,300.00 | $2,200.00 |
| 0 | | SERIAL# 36019A-27; FULL BOX INCLINE CONVEYOR, DFKPC900; NOT RECEIVED | $0.00 | $0.00 | $0.00 |
| 1 | 56 | SERIAL# 36019A-28; FULL BOX CONVEYOR, DFKPC900 | $8,930.00 | $4,000.00 | $1,400.00 |
| 1 | 49 | SERIAL# 36019A-29; FULL BOX CONVEYOR, DFKPC900 | $5,220.00 | $2,300.00 | $800.00 |
| 1 | | SERIAL# 36019A-30; FULL BOX CONVEYOR, DFH500, NOT RECEIVED | $0.00 | $0.00 | $0.00 |
| 2 | 50 | SERIAL# 36019A-31A, 31B; FULL BOX CONVEYORS, DFKPC900 | $13,420.00 | $6,000.00 | $2,100.00 |
| 2 | 54 | SERIAL# 36019A-32A, 32B; FULL BOX CONVEYORS, DFKPC900 | $15,640.00 | $7,000.00 | $2,500.00 |
| 0 | | SERIAL# 36019A-33; PORTIONING CONVEYOR, DFH500, NOT RECEIVED | $0.00 | $0.00 | $0.00 |
| 8 | 44 | SERIAL# 36019A-34A, 34B, 34C, 34D, 34E, 34F, 34G, 34H; TOTE STANDS, DFMS380; PERSONNEL WORK STANDS, (NO ID TAGS) | $1,800.00 | $800.00 | $300.00 |
| 7 | 48 | SERIAL# 36019A-35A, 35B, 35C, 35D, 35E, 35F, 35G; GRAVITY CONVEYORS, DFGR50 (NO ID TAGS) | $3,780.00 | $1,700.00 | $600.00 |
| 1 | | SERIAL# 36019A-36 FULL BOX CONVEYOR, DFH500, NOT RECEIVED | $0.00 | $0.00 | $0.00 |
| 1 | 51 | SERIAL# 36019A-37; FULL BOX CONVEYOR, DFH500 | $8,180.00 | $3,700.00 | $1,300.00 |
| 0 | | SERIAL# 36019A-38; FULL BOX SPUR CONVEYOR, DFFB5301, NOT RECEIVED | $0.00 | $0.00 | $0.00 |
| 1 | 57 | SERIAL# 36019A-39; FULL BOX SPUR CONVEYOR, DFFB5301 | $7,500.00 | $3,400.00 | $1,200.00 |
| 0 | | SERIAL# 36019A-40; FULL BOX CONVEYOR, DFKPC900, NOT RECEIVED | $0.00 | $0.00 | $0.00 |
| 0 | | SERIAL# 36019A-41, FULL BOX CONVEYOR, DFKPC900, NOT RECEIVED | $0.00 | $0.00 | $0.00 |

Private Confidential

6/8/2006

INSPECTION AND VALUATION OF CERTAIN ASSETS LOCATED AT:

## SYLVEST FARMS

4530 MOBILE ROAD, MONTGOMERY, AL 36108

ENGAGED BY: GE CAPITAL COMMERCIAL EQUIPMENT FINANCE

PREPARED BY EQUIPMENT EXCHANGE COMPANY OF AMERICA, INC. - INSPECTION DATE MAY 16, 2006

| | | | | CURRENT VALUES | |
|---|---|---|---|---|---|
| QTY | PHOTO # | EQUIPMENT DESCRIPTION | COST AS SHOWN BY INVOICE | FAIR MARKET VALUE | ORDERLY LIQUIDATION VALUE |
| 0 | | SERIAL# 36019A-42, FULL BOX CONVEYOR, DF#PC900, NOT RECEIVED | $0.00 | $0.00 | $0.00 |
| 1 | 39 | SERIAL# 36019A-43, FULL BOX CONVEYOR, DF#PC900 | $14,295.00 | $6,400.00 | $2,200.00 |
| 1 | 40 | SERIAL# 36019A-44, FULL BOX CONVEYOR, DF#PC900 | $17,440.00 | $7,800.00 | $2,700.00 |
| 2 | 74 | SERIAL# 36019A-45A, 45B, 90" GRAVITY CONVEYORS, DFGR50-90 (NO ID TAGS) | $2,200.00 | $1,000.00 | $400.00 |
| | | *ITEMS LISTED BELOW ARE BEING CONSIDERED AS REPLACEMENT OR SUBSTITUTION ITEMS FROM D & K FOR ITEMS LISTED "NOT RECEIVED" ABOVE* | | | |
| 1 | 77 | SERIAL# 36019A-X44 TENDER/BREAST CONVEYOR | $17,275.00 | $7,800.00 | $2,700.00 |
| 2 | 76 | SERIAL# 36019A-X24, EMPLOYEE STANDS | $3,000.00 | $1,400.00 | $500.00 |
| 1 | 37 | SERIAL# 36019-X6-5; NUGGET INCLINE OVER DSI CONVEYOR, DF#500 | $5,900.00 | $2,700.00 | $900.00 |
| 1 | 41 | SERIAL# 36019A-X4-5; FINISHED PRODUCT INCLINE CONVEYOR, DF#500 | $9,700.00 | $4,400.00 | $1,500.00 |
| 4 | 75 | SERIAL# 36019A-X8; WING SAWS, SIGHTED FOUR UNITS | $5,800.00 | $2,600.00 | $900.00 |
| 1 | 78 | SERIAL# 36019A-X43A, X43B DOUBLE CONE LINE FRAME - NO CONES PURCHASED OR INSTALLED (INTENDED TO USE SOME CONES FROM ANOTHER PLANT) | $34,860.00 | $15,700.00 | $5,500.00 |
| 1 | 79 | SERIAL# 36019A-7A; SING INCLINE CONVEYOR | $10,000.00 | $4,500.00 | $1,600.00 |
| 1 | 82 | SERIAL# 36019A-X21; EMPTY BOX CONVEYOR W/TWO 90 DEGREE TURNS | $12,232.50 | $5,500.00 | $1,900.00 |
| 1 | 81 | SERIAL# 36019A-X22, EMPTY BOX CONVEYOR | $14,425.00 | $6,500.00 | $2,300.00 |
| 1 | 83 | SERIAL# 36019A-X23 GRAVITY CONVEYOR | $4,500.00 | $2,000.00 | $700.00 |
| 1 | 80 | SERIAL# 36019A-X20 EMPTY BOX CONVEYOR | $6,000.00 | $2,700.00 | $900.00 |
| 1 | 84 | SERIAL# 36019A-X42 EMPLOYEE STAND | $5,450.00 | $2,500.00 | $900.00 |
| | | TOTAL OF ALL VALUES | $1,982,330.50 | $1,119,580.00 | $661,290.00 |

Page 5 of 5



**EQUIPMENT EXCHANGE CO. OF AMERICA, INC.**

10042 Keystone Drive • Lake City, PA 16423 • (814)-774-0888 • Fax (814) 774-0880 •
info@eeclink.com

# APPRAISAL PHOTOGRAPHS

In this appraisal report the appraiser has included a series of photographs for illustration of the equipment inspected. The appraiser has to the best of his ability properly identified the assets with an item number that corresponds to the Detailed Equipment Inventory included in this report.

While descriptions are believed to be correct, the appraiser make no warranties or guarantees expressed or implied, as to the genuineness, authenticity of, any photographed item identification and will not be held responsible for discrepancies or inaccuracies. No warranties are made as to the merchantability of any items or their fitness for any purpose.











































































































**EQUIPMENT
EXCHANGE
CO. OF AMERICA, INC.**

10042 Keystone Dr., Lake City, PA 16423

PHONE (814) 774-0888
FAX   (814) 774-0880
Website www.eeclink.com
Email info@eeclink.com

# APPRAISER'S QUALIFICATIONS

Robert Breakstone,
President



**Experience:**
Mr. Robert Breakstone, CSA, CEA our Senior Appraiser, has been President of Equipment Exchange Company of America, Inc. since 1989. Our firm has been in the "used equipment" business since 1979. Having "grown up" in the process business, Robert has a wealth of experience in many facets of food production. He has toured many production plants in United States, Provinces of Canada as well as Puerto Rico and Central America.

Equipment Exchange Company specializes in buying, selling and evaluating meat process, baking, beverage, frozen foods, vegetable, dry goods and related food products and equipment. We also have extensive database of sales history for our in-house sales comparisons.

**Education:**
Mr. Robert Breakstone received his Bachelors Degree from Mercyhurst College, Erie, PA in 1982. In 2001, Mr. Breakstone received his Certificate of Achievement for completing the American Society of Appraiser's (ASA) course in *Uniform Standards of Professional Appraisal Practice* (USPAP).

**Memberships:**
Professional Memberships:
1) Equipment Appraisers Association on North America (EAANA) - Status: Certified Senior Appraiser (CSA).
2) Association of Machinery and Equipment Appraisers (AMEA) - Status: Certified Equipment Appraiser (CEA).
3) American Society of Appraisers (ASA) - Status: Candidate Member

Association Memberships:
Equipment Exchange Company of America, Inc. is a current member of Machinery Dealers National Association (MDNA) of the Equipment Leasing Association (ELA) American Meat Institute (AMI) as well as North American Meat Processors (NAAMP) and American Association of Meat Processors (AAMP).

**Certification:**
In 2002, Mr. Breakstone completed and has been accepted by the Association of Machinery and Equipment Appraisers (AMEA) as a Certified Equipment Appraiser (CEA). In 2005, Mr. Breakstone completed the requirements for Certified Senior Appraiser (CSA) status in Equipment Appraisers Association of North America. These certifications require acceptance to conform in all respects to the designated Codes of Ethics, the appropriate Standards and Procedures of Professional Appraisal Ethics and Practice, certification in *Uniform Standards of Professional Appraisal Practice* (USPAP) as well written exams, submittal of an appraisals for review and acceptance, as well as a minimum of five years of appraisal experience. Both designation dictate on-going requirements to maintain accreditation.



# Certified
# Machinery and Equipment
# Appraiser

### Recognition Is Hereby Granted To

# *Robert  Breakstone*

by the
### Association of Machinery and Equipment Appraisers
for the period

## October 1, 2004 — September 30, 2005

_____
President

License Number: _____



# The American Society of Appraisers

555 Herndon Parkway, Suite 125, Herndon, VA 20170

*presents this*

## Certificate of Achievement

*to*

## Robert J. Breakstone

who has attended the class and successfully completed the exam for the American Society of Appraisers' 15-hour course

**SE100: National Uniform Standards of Professional Appraisal Practice (USPAP)**



July 2001
Date

Richard T. Roche, ASA International Education Chair

SSN: _____



Certificate Number
171

EQUIPMENT APPRAISERS ASSOCIATION OF NORTH AMERICA

INCORPORATED UNDER THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA

*Membership Certificate*

THIS IS TO CERTIFY THAT

*Robert Jay Breakstone*

is a member of the above corporation incorporated under the laws of this state and is entitled to the full benefits and privileges of such membership, subject to the duties and obligations, as more fully set forth in the Corporation's By-Laws, Rules and Regulations.

IN WITNESS WHEREOF, the Corporation has caused this certificate to be executed by its duly authorized officers and its corporate seal to be hereunto affixed.

Dated _December 29, 2003_

_____
SECRETARY

_____
TREASURER



# The American Society of Appraisers

555 Herndon Parkway, Suite 125, Herndon, VA 20170

*presents this*

## Certificate of Achievement

*to*

### Robert J. Breakstone

who has taken the class and successfully completed the exam for
the American Society of Appraisers' 30-hour course

**ME201OL- Introduction to Machinery and Equipment
Valuation - Available August and October 2002.**





Robert B. Podwalny, ASA International Education Chair

October 2002
Date

INSPECTION AND VALUATION OF

# KOCH FOODS
# FORMER SYLVEST FARMS

4530 MOBILE HIGHWAY

MONTGOMERY, AL 36108

PREFORMED FOR

# GENERAL ELECTRIC
# CAPITAL CORPORTATION

COMMERCIAL
EQUIPMENT FINANCING

BY

EQUIPMENT EXCHANGE COMPANY
SEPTEMBER 2007







10042 Keystone Drive • Lake City, PA 16423 • (814)-774-0888 • Fax (814) 774-0880 •
info@eeclink.com

APPRAISAL REPORT
PRIVATE & CONFIDENTIAL

Subject - Certain Assets of:

KOCH FOODS/FORMER SYLVEST FARMS
4530 MOBILE HIGHWAY
MONTGOMERY, AL 36108

For the Intended Use of:

GENERAL ELECTRIC CAPITAL
COMMERCIAL EQUIPMENT FINANCING
44 OLD RIDGEBURY ROAD
DANBURY, CT 06810-5105

### Purpose of Appraisal

The purpose of this appraisal is to provide an independent, professional opinion of the Day One,
Year One Fair Market Value-In-Place, Current Fair Market Value-Removed and Orderly Liquidation
Value of certain machinery and equipment located at Koch Foods / Former Sylvest Farms, 4530
Mobile Highway, Montgomery, AL. This report is intended solely for business decisions of General
Electric Capital Corporation and assignees. Mr. Daniel Nicoson, Vice President of Equipment
Exchange Company of America, Inc. inspected these assets located at Koch Foods/former Sylvest
Farms and Mr. Robert Breakstone, President prepared this report. The effective date of this report
is September 24, 2007.

### Intended Use of Appraisal

This report is intended solely for business decisions of General Electric Capital Corporation for
financing and business purposes and is not intended for any other use.

There are proper and improper uses for various appraisal concepts. The American Society of
Appraisers has standard definitions for concepts, each concept is specifically defined and indicates
a conclusion of value. It is up to the user to determine if the defined concept is correct for its
purpose. Users can certainly investigate value concepts to determine their typical and known uses
and are not prohibited after their investigation to choose to adapt any known concept to their
purpose as considered reasonable by their standards. The appraisal is preformed at the request of a
client based upon a requested concept of value. It is not uncommon for Equipment Exchange
Company of America, Inc. (EEC) to develop an appraisal using one or more concepts of value. Users
of this report must do so with the knowledge of the defined concepts of value being utilized. If a
user has any questions as to the intended use, definitions of value or defined concepts they are
advised to contact the appraiser.



**EQUIPMENT EXCHANGE CO. OF AMERICA, INC.**

10042 Keystone Drive • Lake City, PA 16423 • (814)-774-0888 • Fax (814) 774-0880 • info@eeclink.com

Page 2 of 7
Koch Foods

## Scope of Appraisal

To appraise certain personal property of the subject company located at Koch Foods/former Sylvest Farms and to arrive at certain conclusion of values under the Fair Market Value-In Place, Fair Market Value-Removed and Orderly Liquidation Value.

## Highest and Best Use

The equipment was being used for the purpose as designed and engineered unless otherwise stated. It is the appraisers opinion that the equipment was being utilized: EQUIPMENT PRODUCT LINE: Fresh and frozen poultry products. Equipment includes packaging, freezing, and cutting or portioning equipment various material handling conveyors and transportation equipment along with support equipment. This report does not include all of the equipment and machinery, office furniture, support equipment, material handling equipment, real estate, intangible assets, ect.

## Value Definitions

**FAIR MARKET VALUE IN PLACE: (FMV -IN PLACE):** Is defined as the most probable price estimated in terms of money that the items appraised could realize if exposed for sale in the open market allowing a reasonable time to find a purchaser who buys with knowledge of all the uses to which they are adapted and for which they are capable of being used, including the benefit of their present location including all costs to design, acquire, install and make operational. Frequently, it is referred to as the price at which a willing seller would sell and a willing buyer, neither being under abnormal pressure as of a specific date. In this report we are valuing the Fair Market Value in Place as of the actual installation and operational date in Spring 2006. This is a Day One, Year One value or a total cost of project value specific to the items valued and as of a specific date.

**FAIR MARKET VALUE- REMOVED (FMV-REMOVED):** The value realized from a retail sale to an end user of equipment removed from its current premises. The value is a result of a transaction between a willing buyer and willing seller, with no time limitation to sell. This value assumes the equipment is maintained according to the manufacture's recommendation and performance standards. Since a physical inspection was preformed, the FMV will reflect the actual condition found.

**ORDERLY LIQUIDATION VALUE (OLV):** The value realized from an open market sale between a seller under time duress and a willing buyer who is an end user of the equipment. The buyer time duress is specified in Table 1 below. Both the buyer and the seller have knowledge of the use and purpose for which this equipment is adapted and for which it is capable of being used. This value also assumes the equipment will be sold "as is condition, where is location" and the buyer assumes the costs to dismantle and remove. Additionally, this value is not discounted for assembling, cleaning, security, advertising, brokerage, or other disposal costs, if any.

TABLE 1

| Collateral Type | Day to sell Equipment |
|---|---|
| Transportation/Material Handling | 60-90 |
| Construction | 90-120 |
| Machine tools/Plastics/Graphic Computers/Arts/Mining/Telecom/Food/Textile/FF&E/ | 120-180 |

**EQUIPMENT EXCHANGE CO. OF AMERICA, INC.**

10042 Keystone Drive • Lake City, PA 16423 • (814) 774-0888 • Fax (814) 774-0880 •
Info@eeclink.com

Page 3 of 7
Koch Foods

Both stated value considerations represent the normal considerations for the assets being appraised. The stated values are unaffected by special or creative financing or sale considerations granted by anyone associated with a possible sale or any other special or creative terms, service fees, costs or credits.

All values stated are in United States Funds as of effective date of this report. Any users of this report must assume that the listed "OLV" is based on the fact that a qualified and experienced broker of the goods is to be used as the marketing agent. It also does not take into account any "costs to sell" that would be involved in liquidating the assets.

## Approaches to Value

In complying with Uniform Standards of Professional Appraisal Practice (USPAP), all three accepted approaches to value must be considered.

1) **Cost Approach:** The appraiser considers the replacement cost (new) of the asset being appraised for the loss in value caused by physical deterioration, functional obsolescence, or economic obsolescence. The cost approach is based on the principle of substitution: a prudent buyer will not pay more for an asset than the cost of acquiring a substitute property of equivalent utility. In its simplest form, the cost approach is the current cost (as if new) less all depreciation.

2) **Sales Comparison Approach:** The appraiser considers (and if not exactly identical) adjusts the prices that have been paid for assets comparable to the asset being appraised, equating the comparables to the subject. This involves analyzing recent sales of properties that are similar to the subject property. If the comparables are not identical, the prices are adjusted to equate the various characteristics of the properties. Equipment Exchange Company of America, Inc. uses an extensive in-house database of sold and brokered equipment, auction-selling prices, and data gathered via the Internet and other used equipment dealers to establish comparables. As in the cost approach, the basis is a prudent buyer will not pay more for an asset than the cost of acquiring a substitute property of equivalent utility.

3) **Income Approach:** The appraiser determines the present value of the future economic benefits of owning the property. This approach is seldom used in valuing personal property and was considered but deemed not applicable in performing this appraisal.

## Scope of Work Rule

The Scope of Work addresses the Type and Extent of Research and Analysis utilized to develop an Opinion of Value. The Data Collected in the Course of Research and Analysis may include, but is not limited to: market Data from used equipment dealers that sell comparable equipment; conversations with new equipment manufacturer's; consultation with auctioneers, liquidators and equipment brokers of comparable equipment; In-House Data Bases; Industry Data Bases; Trade Journals and Industry Periodicals.



**EQUIPMENT EXCHANGE CO. OF AMERICA, INC.**

10042 Keystone Drive • Lake City, PA. 16423 • (814)-774-0888 • Fax (814) 774-0880 • info@eeclink.com

Page 4 of 7
Koch Foods

In this appraisal and review of assets from Koch Foods/former Sylvest Farms, the Sales Comparison Approach was employed to arrive at value conclusions. Equipment Exchange Company researched the equipment formerly installed or used at the location. We also paid particular attention to the marketability of these assets in their current geographic location and the effect that location would have in developing their probable value.

### Depreciation

Defined as the actual loss in value or worth of a property from all causes including those resulting from physical deterioration, functional obsolescence, and economic obsolescence.

**Physical Deterioration:**
A form of depreciation where the loss in value or usefulness of an asset is attributable solely to physical causes such as wear and tear and exposure to the elements.

**Functional Obsolescence:**
A form of depreciation were the loss in value is due to factors inherent in the property itself and due to changes in design, or process resulting in inadequacy, over capacity, excess construction, lack of functional utility, or excess operating costs.

**Economic Obsolescence:**
A form of depreciation or loss in value, caused by unfavorable external conditions. These can include such things as the economics of the industry, availability of financing, loss of material and labor sources, passage of new legislation, and changes in ordinances.

### Summary of Values Conclusions

Based on our investigations, analysis of data, and the methods as stated and used, it is the opinion of Equipment Exchange Company of America, Inc., considering the stated assumptions, conclusions and limiting conditions, which the Fair Market Value-In-Place, Fair Market Value-Remove and Orderly Liquidation Value of the machinery and equipment located at Koch Foods/former Sylvest Farms, Montgomery, AL.

**FAIR MARKET VALUE-IN-PLACE**

DAY ONE-YEAR ONE OF EQUIPMENT VALUED            $1,398,068.00

**FAIR MARKET VALUE-REMOVE**

TOTAL CURRENT OF EQUIPMENT VALUED            $459,380.00

**ORDERLY LIQUIDATION VALUE**

TOTAL CURRENT OF EQUIPMENT VALUED            $260,890.00



**EQUIPMENT EXCHANGE CO. OF AMERICA, INC.**
10042 Keystone Drive • Lake City, PA. 16423 • (814) 774-0888 • Fax (814) 774-0880 • info@eeclink.com

Page 5 of 7
Koch Foods

## GENERAL COMMENTS, ASSUMPTIONS, AND STATEMENT OF LIMITING CONDITIONS

This appraisal sets forth our findings and conclusions which are based upon an investigation of conditions affecting value and which are subject to the Assumptions, Statements of Limiting Conditions, and Definitions contained in the following report. *Without reading the Assumptions and Statement of Limiting Conditions and Definitions, this report could be erroneously interpreted.*

The legal description given to the appraisers and used in this report is assumed to be correct. No responsibility is assumed for matters of a legal nature affecting title to the property nor is an opinion of title rendered. The title is assumed to be good and marketable.

The appraisers have made no survey of the property and no responsibility is assumed in connection with such matters. Sketches in this report are included only to assist the reader in visualizing the property.

In conducting this inspection or in gathering information for this report we have assumed that no unreported or hidden conditions exist with the equipment that would render it more or less valuable then reported.

If for some reason we were unable to gather the model number, serial number, age or other pertinent information we assumed that the equipment was similar to other equipment we have appraised or that is contained within this report.

Information furnished by others is assumed true, correct, and reliable. A reasonable effort has been made to verify such information; however, the appraisers assume no responsibility for its accuracy.

All mortgages, liens, encumbrances, leases, and servitudes have been disregarded unless so specified within the report. The property is appraised as though under responsible ownership and management. It is assumed that there are no hidden or unapparent conditions of the property, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for such conditions or for engineering, which may be required to discover them.

This report in no way establishes ownership of the detailed property. If property was described as leased, rented, borrowed or subject to outstanding liens we have either noted this in the body of the report or not included the specific equipment in the report.

The fee for this report is not contingent upon the values reported. There have not been any guarantees associated with this fee and no liability can be intimated or assumed in any manner.

It is assumed that there is full compliance with all applicable federal, state and local environmental regulations and laws unless noncompliance is stated, defined, and considered in the appraisal.

It is assumed that all applicable zoning and use regulations and restrictions have been complied with, unless a non-conformity has been stated, defined, and considered in the appraisal report.



**EQUIPMENT**
**EXCHANGE**
**CO. OF AMERICA, INC.**

10042 Keystone Drive • Lake City, PA 16423 • (814)-774-0888 • Fax (814) 774-0880 •
info@eeclink.com

Page 6 of 7
Koch Foods

It is assumed that all required licenses, consents or other legislative or administrative authority from any local, state or national governmental or private entity or organization have been or can be obtained or renewed for any use on which the value estimate contained in this report is based.

The physical condition of the property described herein was not based upon visual inspection by the appraiser. No responsibility is assumed for latent defect of ANY nature whatsoever which may affect its value, nor for any expertise required to disclose such conditions.

The appraiser will not be required to give testimony or to appear in court or any pretrial conference or appearance required by subpoena, with reference to the property in question, unless timely arrangements have been previously made therefore, at prevailing per diem rates.

No environmental impact studies were either requested or made in conjunction with this appraisal, and the appraiser hereby reserves the right to alter, amend, revise or rescind any of the value opinions based upon any subsequent environmental impact studies, research or investigation.

Unless otherwise stated in the report, the appraisers did not observe the existence of hazardous material, which may or may not be present on the property. I have no knowledge of the existence of such materials on or in the property and are not qualified to detect such substances. The presence of substances such as asbestos, urea formaldehyde foam insulation or other potential hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required to discover them. The client is urged to retain an expert in this field, if desired.

The appraiser(s) reserves the right to alter statements, analyses, conclusions, or any value estimate in the appraisal if any new facts pertinent to the process are discovered which were unknown when the appraisal report was prepared.

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for any purpose or any function other than the intended use, as stated in the body of the report.

This appraisal is to be used only in its entirety, and no part is to be used without the whole report. All conclusions and opinions concerning the analysis as set forth in the report were prepared by the appraiser(s) whose signature(s) appear(s) on the appraisal report.

No change of any item in the report shall be made by anyone other than the appraiser(s). The appraiser(s) and the appraisal firm shall bear no responsibility for any such unauthorized changes.

Except as provided for subsequently, neither the appraiser(s) nor the appraisal firm may divulge the analyses, opinions, or conclusions developed in the appraisal report, nor may they give a copy of the report to anyone other than the client or his designee as specified in writing.



10042 Keystone Drive • Lake City, PA 16423 • (814) 774-0888 • Fax (814) 774-0880 •
info@eeclink.com

Page 7 of 7
Koch Foods

However, this condition does not apply to any requests made by the Appraisal Institute for purpose of confidential ethics enforcement. In addition, this condition does not apply to any order or request issued by a court of law or any other body with the power of subpoena.

No responsibility is taken for changes in market conditions and no obligation is assumed to revise this report without adequate compensation, time and procedural requirements that allow due diligence to reflect events or conditions which occur subsequent to the date thereof.

The appraisers' duty, pursuant to his employment to make the appraisal, is complete upon delivery and acceptance of the appraisal report.

THE ACCEPTANCE AND/OR USE OF THE APPRAISAL REPORT BY THE CLIENT OF ANY THIRD PARTY CONSTITUTES ACCEPTANCE OF THE *ASSUMPTIONS AND LIMITING CONDITIONS* SET FORTH IN THE PRECEDING PARAGRAPHS. THE APPRAISER'S AND EQUIPMENT EXCHANGE COMPANY OF AMERICA, INC. LIABILITY EXTENDS ONLY TO THE SPECIFIED CLIENT, NOT TO SUBSEQUENT PARTIES OR USERS. THE APPRAISER'S AND EQUIPMENT EXCHANGE COMPANY OF AMERICA INC., LIABILITY IS LIMITED TO THE AMOUNT OF THE FEE RECEIVED FOR THE SERVICES RENDERED.

Respectfully Submitted,

Robert Breakstone
Certified Equipment Appraiser

EQUIPMENT EXCHANGE COMPANY OF AMERICA, INC
10042 KEYSTONE DRIVE
LAKE CITY, PA 16423

Does

# -Certify-

That on September 24, 2007 that certain property of:

## KOCH FOODS
## FORMER SYLVEST FARMS
## 4530 MOBILE HIGHWAY
## MONTGOMERY, AL 36108

HAS WELL AND REASONABLE WORTH:

VALUE IS AS FOLLOWS:

FAIR MARKET VALUE-IN PLACE

DAY ONE-YEAR ONE OF EQUIPMENT VALUED          $1,398,068.00

FAIR MARKET VALUE-REMOVE

TOTAL CURRENT OF EQUIPMENT VALUED          $459,380.00

ORDERLY LIQUIDATION VALUE

TOTAL CURRENT OF EQUIPMENT VALUED          $260,890.00

EFFECTIVE DATE OF APPRAISAL: SEPTEMBER 24, 2007

BY:    ROBERT BREAKSTONE, CEA, CSA



**EQUIPMENT
EXCHANGE
CO. OF AMERICA, INC.**

10042 Keystone Dr., Lake City, PA 16423

PHONE (814) 774-0888
FAX   (814) 774-0880
Website www.eeolink.com
Email info@eeolink.com

## Appraiser's Certification:

I certify that, to the best of my knowledge and belief:

❖ the statements of facts contained in this report are true and correct.

❖ the report analyses, opinions and conclusions are limited by the accompanying conditions and assumptions and are my personal, impartial and unbiased analyses, opinions, and conclusions and recommendations.

❖ I have no present or prospective interest in the property that is the subject of this report and no personal or prospective interest with respect to the parties involved with this assignment.

❖ my engagement in this assignment was not contingent upon developing or reporting predetermined results.

❖ my compensation for completing this assignment is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

❖ my analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the *Uniform Standards of Professional Appraisal Practice.*

❖ I have NOT made a personal inspection of the property that is the subject of this report.

❖ no one provided significant professional assistance to the person signing this report.

Signed: Robert Breakstone, CEA, CSA



**EQUIPMENT
EXCHANGE
CO. OF AMERICA, INC.**

10042 Keystone Dr., Lake City, PA 16423

PHONE (814) 774-0888
FAX    (814) 774-0880
Website www.ceaolink.com
Email info@ceaolink.com

**Appraiser's Certification:**

I certify that, to the best of my knowledge and belief:

* the statements of facts contained in this report are true and correct.

* the report analyses, opinions and conclusions are limited by the accompanying conditions and assumptions and are my personal, impartial and unbiased analyses, opinions, and conclusions and recommendations.

* I have no present or prospective interest in the property that is the subject of this report and no personal or prospective interest with respect to the parties involved with this assignment.

* my engagement in this assignment was not contingent upon developing or reporting predetermined results.

* my compensation for completing this assignment is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

* my analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the *Uniform Standards of Professional Appraisal Practice.*

* I have made a personal inspection of the property that is the subject of this report.

* no one provided significant professional assistance to the person signing this report.

Signed: _Daniel R. Nicoson_   9-24-2007

Daniel R. Nicoson, Report Date:

Private Confidential

9/27/2007

### INSPECTION AND VALUATION OF CERTAIN EQUIPMENT LOCATED AT

# KOCH FOOD - FORMER SYLVEST FARMS

### 4530 MOBILE ROAD, MONTGOMERY, AL 36108
### INSPECTION DATE: SEPTEMBER 24, 2007
### INSPECTED BY EQUIPMENT EXCHANGE COMPANY OF AMERICA, INC.

| QUANTITY | PHOTO NUMBER | EQUIPMENT DESCRIPTION | INSPECTION NOTES | COST AS SHOWN BY INVOICE | FAIR MARKET VALUE - INSTALLED DAY ONE YEAR ONE | FAIR MARKET VALUE | ORDERLY LIQUIDATION VALUE |
|---|---|---|---|---|---|---|---|
| | | **Frigoscandia Spiral Freezer** | | | | | |
| | | A reconditioned Frigoscandia spiral freezer with reconditioning and installation work done by ATL Installation Services, Proposal #0510146, December 6, 2005. Freezer has been completely installed and not used in production. | | | | | |
| 1 | 4773 - 4780 | Frigoscandia spiral freezer, model GC-76, project# 10185; Date 6-7-95. Unit has 28" wide self-stacking product belt, 40 tiers, 3" product clearance, 3.25" per tier. Unit has North/South belt orientation, infeed low right, discharge high right, counter-clockwise rotation. Belt cross rods are 1.25" apart, mesh is 1/2" apart. Cabinet is made of 4" thick insulated panels with stainless steel skin inside and out. Cabinet is 16' wide x 26.5' long x 15.5' high. Freezer is installed on a 6" deep insulated floor that could be moved with freezer. Freezer has been installed with most wiring and plumbing completed but freezer has not been run or tested. Evaporator coil capacity is not known. Freezer appears to be in excellent condition but noting that electrical control panel is incomplete as it was in 2006. | Freezer was still in place; no change from 2006 inspection | $430,000.00 | $473,000 | $240,000 | $150,000 |
| | | D & F Equipment Sales, Inc. Invoice #53128, Invoice date: December 19, 2006. Inspection of this equipment on September 24, 2007 determined that all equipment has been disassembled and removed from operation, presently stored outside with belting removed and stored outside. | | | | | |
| | 4784 | Pallets of plastic food grade belting removed from D & F Equipment sales Conveyor System | Multiple pallets of plastic belting from the various conveyors. No way of knowing if all the belting is present or actual condition of belting. Belting has been used and has been taken off conveyors when system disassembled. It has been stored outside without protection for undetermined time. | Included in costs and values of conveyors below | Included in costs and values of conveyors below | $0 | $0 |
| 1 | 4858 - 4862 | SERIAL# 36019-01A: DOUBLE CONE LINE, DFOC1015, REMOVED FROM OPERATION, BELTS REMOVED | | $63,820.00 | $73,000 | $22,000 | $11,000 |
| 2 | 4800 | SERIAL# 36019-02A, 02B TENDER/FILLET INCLINE CONVEYORS, DFM500 | | $10,580.00 | $12,000 | $2,700 | $1,400 |
| 1 | 4814 | SERIAL# 36019-03A: FINISHED PRODUCT INCLINE CONVEYOR, DFM500 | | $3,100.00 | $4,000 | $800 | $400 |
| 1 | 4814 | SERIAL# 36019-03B: FINISHED PRODUCT INCLINE CONVEYOR, DFM500 | | $3,100.00 | $4,000 | $800 | $400 |
| 1 | 4795 | SERIAL# 36019-X1: TOTE DUMPER, DFTD276 | | $4,200.00 | $5,000 | $1,000 | $500 |
| 1 | 4863 | SERIAL# 36019-05: DE-ICE BIN, DFDT0276 | | $700.00 | $1,000 | $180 | $90 |
| 1 | | SERIAL# 36019-06: LOADING BIN, DFM291, NO IS TAG ON UNIT | Not Found | $1,100.00 | $1,000 | | |
| 1 | 4869 | SERIAL# 36019-07 FEED CONVEYOR, DFM500 | 2-sections of horizontal conveyor | $9,400.00 | $11,000 | $2,400 | $1,200 |

Private Confidential                                                                                         9/27/2007

| | | INSPECTION AND VALUATION OF CERTAIN EQUIPMENT LOCATED AT | | | | | |
|---|---|---|---|---|---|---|---|
| | | **KOCH FOOD - FORMER SYLVEST FARMS** | | | | | |
| | | 4530 MOBILE ROAD, MONTGOMERY, AL 36108 | | | | | |
| | | INSPECTION DATE: SEPTEMBER 24, 2007 | | | | | |
| | | INSPECTED BY EQUIPMENT EXCHANGE COMPANY OF AMERICA, INC. | | | | | |
| QUANTITY | PHOTO NUMBER | EQUIPMENT DESCRIPTION | INSPECTION NOTES | COST AS SHOWN BY INVOICE | FAIR MARKET VALUE - INSTALLED DAY ONE YEAR ONE | FAIR MARKET VALUE | ORDERLY LIQUIDATION VALUE |
| 12 | 4851, 4852 | SERIAL# 36019-08A; THROUGH 08L ERGO STANDS, DFESF3100, NO ID TAGS | Quantity and condition of grating for stands not confirmed | $4,800.00 | $5,000 | $1,200 | $600 |
| 12 | 4851, 4852 | SERIAL# 36019A-25A THROUGH 25L; ERGO STANDS, DFESF2100, (NO ID TAGS) | Quantity and condition of grating for stands not confirmed | $4,800.00 | $5,000 | $1,200 | $600 |
| 1 | 4829 | SERIAL# 36019-09 PRODUCT CONVEYOR, DFM500 | Base frame for 36019 10-5 | $7,000.00 | $8,000 | $1,800 | $900 |
| 1 | 4829 | SERIAL# 36019-10-5 PRODUCT CONVEYOR, DFM500 | Mounted on 36019-09 | $5,800.00 | $7,000 | $1,500 | $800 |
| 1 | 4796 | SERIAL# 36019-11 PRODUCT CHUTE, DFC378 (NO ID TAG) | | $400.00 | $440 | $100 | $50 |
| 1 | 4858 - 4862 | SERIAL# 36019A-01B; DOUBLE CONE LINE, DFDC1015 | | $63,820.00 | $73,000 | $22,300 | $11,200 |
| 2 | 4793, 4794 | SERIAL# 36019A-02A, 02B DOUBLE TOTE DUMPERS, DFTD275 | | $15,000.00 | $17,000 | $5,300 | $2,700 |
| 2 | 4864, 4866 | SERIAL# 36019A-03A; 03B DE-ICE BINS, DFDT1002 | | $1,400.00 | $2,000 | $400 | $200 |
| 1 | 4788 | SERIAL# 36019A-04A-1, 04A-2; recirculation CONVEYORS, DFM500 | | $10,070.00 | $12,000 | $2,500 | $1,100 |
| 1 | 4789 | SERIAL# 36019A-04B-1, 04B-2; RECIRCULATION CONVEYORS, DFM500 | | $10,070.00 | $12,000 | $2,500 | $1,300 |
| 3 | 4816 | SERIAL# 36019A-05A, 05B; 05C; WING TIP INCLINE CONVEYORS, DFM500 | | $20,520.00 | $24,000 | $5,100 | $2,600 |
| 4 | 4799 | SERIAL# 36019A-06A, 06B, 06C; 06D WING INCLINE CONVEYORS, DFM500 | | $29,600.00 | $34,000 | $7,400 | $3,700 |
| 1 | 4800 | SERIAL# 36019A-07 and 36019A-07A; WING INCLINE CONVEYORS, DFM500 | | $11,100.00 | $13,000 | $2,800 | $1,400 |
| 1 | 4867 | SERIAL# 36019A-08; WING COMMON CONVEYOR, DFM500 | 3 sections | $17,300.00 | $20,000 | $4,300 | $2,200 |
| 1 | 4826, 4812 | SERIAL# 36019A-09; WING COMMON CONVEYOR, DFM500 | 3 sections | $14,540.00 | $17,000 | $3,600 | $1,800 |
| 1 | 4853 | SERIAL# 36019-10; SKIN INCLINE CONVEYOR, DFM500 | 2 sections | $9,460.00 | $11,000 | $2,400 | $1,200 |
| 2 | 4823 | SERIAL# 36019A-12A, 12B; TENDER/BREAST INCLINE CONVEYOR, DFM500 | | $21,360.00 | $25,000 | $5,300 | $2,700 |
| 1 | 4809 - 4811 | SERIAL# 36019A-13; CARCASS COMMON CONVEYOR, DFM500 | | $12,200.00 | $14,000 | $3,100 | $1,600 |
| 1 | 4813 | SERIAL# 36019A-14 TENDER/BREAST INCLINE CONVEYOR, DFM500 | Photo shows 36019A-14 which is one incline and two S-curves, also shows 36019A-X44 incline | $26,845.00 | $31,000 | $6,700 | $3,400 |
| 8 | 4820 - 4821 & 4835 | TENDER/BREAST CONVEYORS, SERIAL# 36019A-15A, 15B, 15C, 15D, 15E, 15F, 15G, 15H | This line item represents 8 conveyor lines when installed. (22) segments on site. | $133,480.00 | $152,000 | $33,100 | $16,600 |
| 1 | 4801 | SERIAL# 36019A-17; FEED CONVEYOR, DFM500 | 2 sections | $9,400.00 | $15,000 | $2,400 | $1,200 |
| 1 | | SERIAL# 36019A-CHUTE, DFC378 (NO ID TAG) | Not Found | $430.00 | $470 | | |
| 4 | 4831 | SERIAL# 36019A-19A; 19B, 19C, 19D; EMPLOYEE STANDS, DFMP4179 | | $24,600.00 | $27,000 | $6,200 | $3,100 |
| 1 | 4854 | SERIAL# 36019A-20; FLAT TOP TABLE, DMFT382 (NO ID TAG) | | $1,800.00 | $2,000 | $500 | $300 |

Private Confidential

9/27/2007

## INSPECTION AND VALUATION OF CERTAIN EQUIPMENT LOCATED AT
# KOCH FOOD - FORMER SYLVEST FARMS
### 4530 MOBILE ROAD, MONTGOMERY, AL 36108
### INSPECTION DATE: SEPTEMBER 24, 2007
INSPECTED BY EQUIPMENT EXCHANGE COMPANY OF AMERICA, INC.

| QUANTITY | PHOTO NUMBER | EQUIPMENT DESCRIPTION | INSPECTION NOTES | COST AS SHOWN BY INVOICE | FAIR MARKET VALUE INSTALLED DAY ONE YEAR ONE | FAIR MARKET VALUE | ORDERLY LIQUIDATION VALUE |
|---|---|---|---|---|---|---|---|
| 4 | 4818, 4819 | SERIAL# 36019A-21A; 21B; 21C; 21D; EMPLOYEE CROSSOVER STANDS, DFMPM179 | | $7,400.00 | $8,000 | $1,900 | $1,000 |
| 1 | 4804, 4805 | SERIAL# 36019A-24; S-36019-X5; TRIM INCLINE CONVEYOR, DFM500 | | $10,590.00 | $12,000 | $2,600 | $1,300 |
| | 4844, 4838, 4843 | | FULL BOX CONVEYORS, there were 11 sections of the Full Box Conveyor on hand. Many sections do not have a manufacturer ID plate installed | | | | |
| 1 | 4825 | SERIAL# 36019A-26; FULL BOX CONVEYOR, DFKPC900 | 2 sections | $14,100.00 | $16,000 | $2,800 | $1,400 |
| 1 | | SERIAL# 36019A-28; FULL BOX CONVEYOR, DFKPC900 | No ID plate found | $8,930.00 | $10,000 | $1,800 | $900 |
| 1 | 4830 | SERIAL# 36019A-29; FULL BOX CONVEYOR, DFKPC900 | 2 sections | $5,220.00 | $6,000 | $1,000 | $500 |
| 2 | 4839 | SERIAL# 36019A-31A; 31B; FULL BOX CONVEYORS, DFKPC900 | | $13,420.00 | $15,000 | $2,700 | $1,400 |
| 2 | 4837 | SERIAL# 36019A-32A; 32B; FULL BOX CONVEYORS, DFKPC900 | | $15,640.00 | $18,000 | $3,100 | $1,600 |
| 1 | | SERIAL# 36019A-37; FULL BOX CONVEYOR, DFM500 | No ID plate found | $8,180.00 | $9,000 | $1,600 | $800 |
| 1 | 4841 | SERIAL# 36019A-39; FULL BOX SPUR CONVEYOR, DFT9530L | | $7,600.00 | $9,000 | $1,500 | $800 |
| 1 | 4840 | SERIAL# 36019A-43; FULL BOX CONVEYOR, DFKPC900 | | $14,298.00 | $16,000 | $2,800 | $1,500 |
| 1 | 4827 | SERIAL# 36019A-44; FULL BOX CONVEYOR, DFKPC900 | | $17,440.00 | $20,000 | $3,500 | $1,800 |
| 8 | 4848 - 4850 | SERIAL# 36019A-34A; 34B; 34C; 34D; 34E; 34F; 34G; 34H; TOTE STANDS, DFM5380; PERSONNEL WORK STANDS, (NO ID TAGS) | complete with the yellow plastic grate surfaces | $1,800.00 | $2,000 | $500 | $200 |
| 7 | 4855 | SERIAL# 36019A-35A; 35B; 35C; 35D; 35E; 35F; 35G; GRAVITY CONVEYORS, DFGR50 (NO ID TAGS) | Only (5) conveyors were found. | $3,780.00 | $4,000 | $1,100 | $600 |
| 2 | | SERIAL# 36019A-45A; 45B; 90? GRAVITY CONVEYORS, DFGR50-90 (NO ID TAGS) | Not Found | $2,200.00 | $3,000 | | |
| 1 | 4813 | SERIAL# 36019A-X44 TENDER/BREAST CONVEYOR | | $17,375.00 | $20,000 | $5,200 | $2,600 |
| 2 | 4842, 4847 | SERIAL# 36019A-X24; EMPLOYEE STANDS | | $2,000.00 | $3,000 | $900 | $500 |
| 1 | 4828 | SERIAL# 36019-X4-5; NUGGET INCLINE OVER DSI CONVEYOR, DFM500 | 2 sections | $5,900.00 | $7,000 | $1,800 | $900 |
| 1 | 4806, 4807 | SERIAL# 36019-X4-5; FINISHED PRODUCT INCLINE CONVEYOR, DFM500 | 2 sections | $9,700.00 | $11,000 | $2,900 | $1,500 |
| 4 | 4845 | SERIAL# 36019A-X8; WING SAWS | Two units are missing their motors. | $5,800.00 | $7,000 | $1,200 | $600 |
| 1 | 4856, 4857 | SERIAL# 36019A-X43A; X43B DOUBLE CONE LINE FRAME - NO CONES PURCHASED OR INSTALLED | 3 sections | $34,460.00 | $40,000 | $12,200 | $6,000 |
| 1 | 4868 | SERIAL# 36019A-7A; 7B INCLINE CONVEYOR | | $10,000.00 | $12,000 | $3,000 | $1,500 |
| 1 | 4834, 4836 | SERIAL# 36019A-X21; EMPTY BOX CONVEYOR W/ TWO 90 DEGREE TURNS, (5) STRAIGHT SECTIONS | This equipment was never installed. Plastic belting has been outside since at least spring of 2006. | $12,232.10 | $12,233 | $2,700 | $1,900 |

Private Confidential

9/27/2007

| | | INSPECTION AND VALUATION OF CERTAIN EQUIPMENT LOCATED AT | | | | | |
|---|---|---|---|---|---|---|---|
| | | **KOCH FOOD - FORMER SYLVEST FARMS** | | | | | |
| | | 4530 MOBILE ROAD, MONTGOMERY, AL 36108 | | | | | |
| | | INSPECTION DATE: SEPTEMBER 24, 2007 | | | | | |
| | | INSPECTED BY EQUIPMENT EXCHANGE COMPANY OF AMERICA, INC. | | | | | |
| QUANTITY | PHOTO NUMBER | EQUIPMENT DESCRIPTION | INSPECTION NOTES | COST AS SHOWN BY INVOICE | FAIR MARKET VALUE - INSTALLED DAY ONE YEAR ONE | FAIR MARKET VALUE | ORDERLY LIQUIDATION VALUE |
| 1 | 4832 | SERIAL# 36019A-X22, EMPTY BOX CONVEYOR | This equipment was never installed. Plastic belting has been outside since at least spring of 2006. | $14,425.00 | $14,425 | $6,300 | $2,200 |
| 1 | 4832 | SERIAL# 36019A-X23 GRAVITY CONVEYOR | This equipment was never installed. Plastic belting has been outside since at least spring of 2006. | $4,500.00 | $4,500 | $1,400 | $700 |
| 1 | 4833 | SERIAL# 36019A-X20 EMPTY BOX CONVEYOR | This equipment was never installed. Plastic belting has been outside since at least spring of 2006. | $6,000.00 | $6,000 | $1,800 | $900 |
| 1 | 4846 | SERIAL# 36019A-X42 EMPLOYEE STAND | | $5,450.00 | $6,000 | $1,600 | $800 |
| | | TOTAL OF ALL VALUES | | $1,240,672.50 | $1,198,067.50 | $419,580 | $260,440 |

Page 4 of 4



**EQUIPMENT EXCHANGE CO. OF AMERICA, INC.**

10042 Keystone Drive • Lake City, PA. 16423 • (814)-774-0888 • Fax (814) 774-0880 •
info@eeclink.com

# APPRAISAL PHOTOGRAPHS

In this appraisal report the appraiser has included a large series of photographs for illustration of the equipment inspected. The appraiser has to the best of his ability properly identified the assets with an item number that corresponds to the Detailed Equipment Inventory included in this report.

While descriptions are believed to be correct, the appraiser make no warranties or guarantees expressed or implied, as to the genuineness, authenticity of, any photographed item identification and will not be held responsible for discrepancies or inaccuracies. No warranties are made as to the merchantability of any items or their fitness for any purpose.





















































































































**EQUIPMENT**
**EXCHANGE**
**CO. OF AMERICA, INC.**

10042 Keystone Dr., Lake City, PA 16423

PHONE (814) 774-0888
FAX    (814) 774-0890
Website www.eeclink.com
Email info@eeclink.com

# APPRAISER'S QUALIFICATIONS

Robert Breakstone,
President



**Experience:**
Mr. Robert Breakstone, CSA, CEA our Senior Appraiser, has been President of Equipment Exchange Company of America, Inc. since 1989. Our firm has been in the "used equipment" business since 1979. Having "grown up" in the process business, Robert has a wealth of experience in many facets of food production. He has toured many production plants in United States, Provinces of Canada as well as Puerto Rico and Central America.

Equipment Exchange Company specializes in buying, selling and evaluating meat process, baking, beverage, frozen foods, vegetable, dry goods and related food products and equipment. We also have extensive database of sales history for our in-house sales comparisons.

**Education:**
Mr. Robert Breakstone received his Bachelors Degree from Mercyhurst College, Erie, PA in 1982. In 2001, Mr. Breakstone received his Certificate of Achievement for completing the American Society of Appraiser's (ASA) course in *Uniform Standards of Professional Appraisal Practice* (USPAP) and as per AMEA's regulations Mr. Breakstone successfully completed the 7-hour USPAP Course in October 2006.

**Memberships:**
Professional Memberships:
1) Equipment Appraisers Association on North America (EAANA) - Status: Certified Senior Appraiser (CSA).
2) Association of Machinery and Equipment Appraisers (AMEA) - Status: Certified Equipment Appraiser (CEA)
3) American Society of Appraisers (ASA) - Status: Candidate Member

Association Memberships:
Equipment Exchange Company of America, Inc. is a current member of Machinery Dealers National Association (MDNA) of the Equipment Leasing Association (ELA) American Meat Institute (AMI) as well as North American Meat Processors (NAAMP) and American Association of Meat Processors (AAMP).

**Certification:**
In 2002, Mr. Breakstone completed and has been accepted by the Association of Machinery and Equipment Appraisers (AMEA) as a Certified Equipment Appraiser (CEA). In 2005, Mr. Breakstone completed the requirements for Certified Senior Appraiser (CSA) status in Equipment Appraisers Association of North America. These certifications require acceptance to conform in all respects to the designated Codes of Ethics, the appropriate Standards and Procedures of Professional Appraisal Ethics and Practice, certification in *Uniform Standards of Professional Appraisal Practice* (USPAP) as well written exams, submittal of an appraisals for review and acceptance, as well as a minimum of five years of appraisal experience. Both designations dictate on-going requirements to maintain accreditation.



Certificate of Completion

for

**Robert Breakstone**

who attended the class and successfully completed the AMEA 7 Hour Refresher Course

<u>Uniform Standards of Professional Appraisal Practice (USPAP)</u>

October 13, 2006
Detroit, Michigan

AMEA President



# Certified
# Machinery and Equipment
# Appraiser

Recognition Is Hereby Granted To

## Robert  Breakstone

by the
**Association of Machinery and Equipment Appraisers**
for the period

October 1, 2004 — September 30, 2005

_____
President



License Number: _____

The American Society of Appraisers

555 Herndon Parkway, Suite 125, Herndon, VA 20170

presents this

*Certificate of Achievement*

to

Robert J. Breakstone

who has attended the class and successfully completed the exam for
the American Society of Appraisers' 15-hour course.

SE100: National Uniform Standards of Professional
Appraisal Practice (USPAP)



Richard I. Roche, ASA International Education Chair

July 2001
Date

SSN: _____



Certificate Number
171

INCORPORATED UNDER THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA

EQUINE APPRAISERS ASSOCIATION OF NORTH AMERICA

*Membership Certificate*

THIS IS TO CERTIFY THAT

*Robert Jay Breakstone*

is a member of the above corporation incorporated under the laws of this state and is entitled to the full benefits and privileges of such membership, subject to the duties and obligations, as more fully set forth in the Corporation's By-Laws, Rules and Regulations.

IN WITNESS WHEREOF, the Corporation has caused this certificate to be executed by its duly authorized officers and its corporate seal to be hereunto affixed

Dated *December 29, 2003*

SECRETARY

TREASURER



# The American Society of Appraisers

555 Herndon Parkway, Suite 125, Herndon, VA 20170

*presents this*

## Certificate of Achievement

*to*

### Robert J. Breakstone

who has taken the class and successfully completed the exam for the American Society of Appraisers 30-hour course

**ME201OL - Introduction to Machinery and Equipment Valuation - Available August and October 2002.**





Robert B. Podwalny, ASA International Education Chair

October 2002
Date