IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


KOCH FOODS OF ALABAMA LLC,   )
an Alabama Limited           )
Liability Co.,               )
                             )
        Plaintiff,           )
                             )        CIVIL ACTION NO.
        v.                   )        2:07cv522-MHT
                             )            (WO)
GENERAL ELECTRIC CAPITAL     )
CORPORATION, a Delaware      )
Corporation,                 )
                             )
        Defendant.           )

OPINION

Plaintiff Koch Foods of Alabama, LLC (Koch Foods)
brought this lawsuit, concerning the ownership of two
pieces of poultry-processing equipment, against defendant
General Electric Capital Corporation (GE Capital).  GE
Capital removed this suit from state court and properly
invoked this court's diversity-of-citizenship
jurisdiction under 28 U.S.C. §§ 1332, 1441.  Koch Foods
sought declaratory judgment on three issues: that the

pieces of poultry-processing equipment are fixtures of the Koch Foods facility; that, as a result, Koch Foods is not liable to GE Capital for rent or unjust enrichment; and that, if the equipment pieces are not fixtures, GE Capital is liable to Koch for storage costs.  Koch Foods also raised a claim for unjust enrichment.  GE Capital filed a counterclaim seeking damages from Koch Foods for conversion of the equipment.

The case is currently before the court on GE Capital's and Koch Foods' motions for summary judgment. GE Capital seeks summary judgment on its conversion counterclaim and on Koch Foods' declaratory-judgment and unjust-enrichment claims, and Koch Foods seeks summary judgment on GE Capital's conversion counterclaim.  For the reasons that follow, GE Capital's motion is denied on its own conversion counterclaim and is granted on Koch Foods' claims for declaratory judgment and unjust enrichment, and Koch Foods' motion is granted on GE

2

Capital's conversion counterclaim, with the result that neither party will take anything from this litigation.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, at which point the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may

not rest upon the mere allegations or denials in the pleadings.  Fed. R. Civ. P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).


## II. FACTS

In December 2005, Sylvest Farms, Inc., a poultry-processing company, entered into a lease for certain large items of poultry-processing equipment--including a chicken deboner, a spiral freezer, and equipment used for shrink-wrapping--with GE Capital.  Sylvest Farms installed the equipment in its facility, although the

4

spiral freezer was never fully installed.  Approximately

four months later, Sylvest Farms filed for bankruptcy,

and Koch Foods purchased substantially all of Sylvest

Farms' assets in May 2006.  Koch Foods did not, however,

assume the equipment lease.

Koch Foods began production in the former Sylvest

Farms facility, using the equipment, in May 2006.  In

approximately June 2006, GE Capital's counsel discussed

with Koch Foods the necessity of relocating the

equipment, and Koch Foods informed GE Capital that the

equipment could remain on-site while GE Capital located

a buyer.  GE Capital sold the shrink-wrapping equipment

in August 2006, but the deboner and spiral freezer

remained in Koch Foods' facility.  In a January 2007

letter from GE Capital's counsel to Koch Foods' counsel,

GE Capital expressed its concern that Koch Foods was

using the equipment without its permission.[*]  It demanded

---

*The letter is dated January 2, 2006, but its content
and the overall timeline of events lead the court to
presume that it was actually sent on January 2, 2007.

rent payments in the amount of $ 237,493.99 and threatened a suit for conversion should Koch Foods fail to pay.

Following that letter, tensions between the parties heightened. In an email dated February 17, 2007, Koch Foods' counsel informed GE Capital's counsel of the price that Koch Foods would be willing to pay for the deboning line. The calculation of that price was influenced by Koch Foods' belief that the line was used; the fact that Koch Foods would have preferred deboning equipment with different specifications; and the convenience of the equipment's already being installed in the facility. The email also noted that, if GE Capital were to decline Koch Foods' offer, "Koch will purchase other equipment and will gladly allow GE to enter Koch's plant at a reasonable and mutually agreeable time to remove the equipment," assuming that "GE agrees to a mutual release and to indemnify Koch for any damage caused to the plant by GE's removal of the equipment." GE Capital objected

to these conditions, and the equipment was not removed. In April 2007, Koch Foods purchased new deboning equipment; the existing deboning equipment was de-installed and placed in the facility's yard.

The next correspondence in the record is another email from Koch Foods' counsel to GE Capital's counsel, dated April 18, confirming that "Koch has declined [GE Capital]'s demand that Koch purchase the equipment ... as well as [pay] rental value for the nearly one-year period that the equipment has been at the site" and again asking GE Capital to arrange to remove its equipment. Discussions apparently broke down on May 21, 2007, when GE Capital announced that it would sue Koch Foods for conversion. Four days later, Koch Foods sued GE Capital in state court, seeking declaratory judgments that it owned the equipment, that it would not be liable to GE Capital for rent or unjust enrichment, and that GE Capital would be liable to it for storage costs. Koch Foods also asserted an alternative claim for unjust

enrichment.  GE Capital removed the case to federal court and filed a counterclaim for conversion.

### III. DISCUSSION

#### A. Koch Foods' Declaratory-Judgment Claim

The court is currently faced with two competing claims: Koch Foods' request for declaratory judgment and GE Capital's counterclaim for conversion.  The Declaratory Judgment Act, 28 U.S.C. § 2201(a), gives courts discretion to hear declaratory judgment actions. Courts are not obligated to adjudicate these claims, because in "the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 288 (1995).  It is evident in the instant case that Koch Foods filed its declaratory judgment claim in anticipation of GE Capital's action for conversion; indeed, the record

8

demonstrates that GE Capital had threatened a conversion
action against Koch Foods.  Not knowing precisely how GE
Capital would bring its conversion action, Koch Foods
took a kitchen-sink approach to its declaratory judgment
action.  Now that GE Capital has brought its conversion
claim, however, there is no need to adjudicate Koch
Foods' alternative declaratory judgment claim.  As such,
this court deems it more prudent to adjudicate GE
Capital's actual action for conversion--as well as Koch
Food's remaining claim for unjust enrichment--rather than
Koch Foods' anticipatory claim for declaratory judgment.


## B. Ownership of the Equipment

Before turning to GE Capital's conversion
counterclaim and Koch Foods' unjust-enrichment claim, the
court must ascertain whether GE Capital was properly the
owner of the equipment.

### 1. <u>W.T. Adams</u>

A 1898 Alabama Supreme Court case, <u>W.T. Adams Mach. Co. v. Interstate Bldg. and Loan Assoc.</u>, 24 So. 857 (Ala. 1898), provides the crucial precedent in the instant case. In <u>W.T. Adams</u>, a landowner purchased heavy equipment, intended to be attached to his property, under an agreement that the seller would retain title of the equipment until all payments had been made. <u>Id</u>. at 857. Meanwhile, the landowner had secured a loan backed by the mortgage of his property. <u>Id</u>. When he defaulted on his loan payments, the lender sought to foreclose on the property and sued the seller to enjoin it from removing the equipment that was "attached to the building." <u>Id</u>. at 857. The Alabama Supreme Court held that the seller retained title to the equipment and could assert that title against the lender, even though the equipment had been affixed to the mortgaged property. <u>Id</u>. The court reaffirmed its decision more than 50 years later in

*Mobile Cab and Baggage Co., Inc. v. Texas Co.*, 74 So.2d 498, 499 (Ala. 1954).

Applied to the instant case, *W.T. Adams* compels the conclusion that the equipment still belongs to GE Capital. GE Capital leased the equipment to Sylvest Farms with the understanding that the equipment would be installed in Sylvest Farms' facility and that Sylvest Farms could purchase the equipment at the termination of the lease. Upon Sylvest Farm's bankruptcy, Koch Foods took title of the property but did not assume the equipment lease. Koch Foods is therefore in a situation analogous to that of the lender in *W.T. Adams*: it rightfully owns the facility but not the equipment installed in it.

## 2. Fixtures

While the court believes that *W.T. Adams* dictates its decision as to the ownership of the equipment, the

parties' disagreement concerning fixtures is worthy of some attention.

A "fixture" is "an article which was once a chattel, but which, by being physically annexed or affixed to the realty, has become accessory to it and part and parcel of it." Milford v. Tenn. River Pulp & Paper Co., 355 So.2d 687, 689-90 (Ala. 1978) (quoting Farmers & Merchants Bank v. Sawyer, 163 So. 657, 658 (Ala. Ct. App. 1935)). In the instant case, Koch Foods contends that while the deboner and spiral freezer were once property that Sylvest Farms leased from GE Capital, their affixation to the property rendered them "part and parcel" of the property and transferred ownership to Koch Foods. Whether an item has morphed from personal property to realty is determined by three well-established criteria: "(1) Actual annexation to the realty or something appurtenant thereto; (2) application to the use or purpose to which that part of the realty with which it is connected is appropriated; (3) the intention of the party

12

making the annexation to make a permanent accession to the freehold." Langston v. State, 11 So. 334, 335 (Ala. 1892).

In the instant case, the court may assume the presence of the first two criteria, as the third and most important criterion, intent, demonstrates that the pieces of equipment are not fixtures. See Langston, 11 So. at 335 ("the intention of the person making the annexation is the controlling factor in determining the character of the article annexed"). The lease executed between GE Capital and Sylvest Farms plainly states the parties' intentions: "All equipment shall at all times remain personal property of [GE Capital] even though it may be attached to real property. The Equipment shall not become part of any other property by reason of any installation in, or attachment to, other real or personal property." Def.'s Ex. C (Doc. No. 45), at ¶ 19(b). Koch Foods contends that this provision was "boilerplate" and not discussed by the parties, but there is no evidence of

13

any intention to the contrary.  See Southland Quality Homes, Inc. v. Williams, 781 So.2d 949, 953 (Ala. 2000) ("If a contract is unambiguous on its face, there is no room for construction and it must be enforced as written."). Additionally, Koch Foods was aware of the agreement between GE Capital and Sylvest Farms, as the lease was included in Sylvest Farms' "data room." Campbell Depo. (Doc. No. 45), at 11.

The only evidence that one of the parties to the contract did intend for the equipment to become fixtures is Sylvest Farms' apparent decision to install the equipment in a "hostile environment"--making it more difficult to remove the equipment--so that GE Capital would give it a more favorable price at the conclusion of the contract.  While this evidence may suggest some bad faith on the part of Sylvest Farms, the evidence is not controlling as to the limited question of to whom the equipment belongs, because the contract states on its face that the equipment will always remain personal

14

property, regardless of the manner in which it is installed.

## C. GE Capital's Conversion Counterclaim

Because the equipment belongs to GE Capital and not Koch Foods, the court may turn to GE Capital's claim for conversion. It is well-established that "[i]n order to constitute conversion, nonconsent to the possession and the disposition of the property by [the owner] is indispensable." Jones v. DCH Health Care Auth., 621 So.2d 1322, 1324 (Ala. 1993) (quoting 89 C.J.S. Trover & Conversion § 5 (1955)). GE Capital therefore cannot recover for conversion because GE Capital clearly consented to Koch Foods' retention and disposition of the equipment.

By January 2007--and perhaps as early as Koch Foods' acquisition of the facility--GE Capital had become aware that Koch Foods was using, and not merely storing, the equipment. Upon acquiring this information, GE Capital

asked not for the return of the equipment but for rental payments. Pl.'s Ex. 9 (Doc. No. 46), at 31-32. GE Capital made no attempts to reclaim the equipment. By not doing so, GE Capital engaged in a course of conduct clearly evincing its consent to Koch Foods' use of the equipment. See McCaig v. Talladega Publ'g Co., 544 So.2d 875, 879 (Ala. 1989) ("[C]onsent may be implied from custom, usage, or conduct."). Similarly, GE Capital had previously requested the surrender of the shrink-wrapping equipment it had leased to Sylvest Farms but had taken no action with respect to the other equipment, which further demonstrates its consent to Koch Foods' use of the other equipment.

Given GE Capital's clear consent to Koch Foods' use of the equipment, Koch Foods "is not liable to the extent that [GE Capital] has effectively consented to the interference with [its] rights." Restatement (Second) of Torts § 252 (2007).

### D. Koch Foods' Unjust-Enrichment Claim

Koch Foods' complaint also included a claim for unjust enrichment based upon its storage and maintenance of the equipment. This claim must fail. To make out a claim of unjust enrichment under Alabama law, a plaintiff must show that "the donor of the benefit ... acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit ... engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship." Jordan v. Mitchell, 705 So.2d 453, 458 (Ala. Civ. App. 1997). Koch Foods makes no such allegations. Indeed, the parties simply took no action to alter the status quo as long as the status quo benefitted them. From the outset of their relationship, Koch Foods and GE Capital contentedly took advantage of each other: Koch Foods' retention of the equipment saved GE Capital the cost of the equipment's removal and storage elsewhere, and GE Capital's failure to remove the equipment saved Koch Foods the cost of purchasing its own

17

equipment. Unjust enrichment is "an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another," Avis Rent A Car Sys., Inc. v. Heilman, 876 So.2d 1111, 1123 (Ala. 2003) (citation omitted), and nothing suggests that the trial court must step in to balance the equities in this case. See id. ("A claim for restitution is equitable in nature, and permits a trial court to balance the equities and to take into account competing principles to determine if the defendant was unjustly enriched.") (citation omitted).

***

For the foregoing reasons, GE Capital's motion for summary judgment is denied on its counterclaim for conversion and is granted on Koch Foods' claims for declaratory judgment and unjust enrichment. Koch Foods' motion for summary judgment is granted on GE Capital's

18

conversion counterclaim.  An appropriate judgment will be entered.

    DONE, this the 8th day of April, 2008.


                                           /s/ Myron H. Thompson
                                 UNITED STATES DISTRICT JUDGE